CHRISTINA V. KAZHE (BAR NO. 192158)
JOHN NYHAN (BAR NO. 51257)
ROSE M. WECKENMANN (BAR NO. 248207)
**FREDERICKS & PEEBLES LLP**
1001 Second Street
Sacramento, California 95814
Telephone:     (916) 441-2700
Facsimile:      (916) 441-2067
Email:          jnyhan@ndnlaw.com

Attorneys for Plaintiffs,
WILTON MIWOK RANCHERIA
and ITS MEMBERS; and DOROTHY ANDREWS



## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILTON MIWOK RANCHERIA, a formerly
federally-recognized Indian Tribe, ITS
MEMBERS and DOROTHY ANDREWS,

        Plaintiffs,

       v.

DIRK KEMPTHORNE, Secretary of the
Department of the Interior; CARL J. ARTMAN,
Assistant Secretary for Indian Affairs of the
United States Department of Interior; the
UNITED STATES DEPARTMENT OF THE
INTERIOR; MICHAEL O. LEAVITT, Secretary
of the United States Department of Health and
Human Services; the UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendants.

Case No. C07 02681 PVT

**COMPLAINT**

(Declaratory and Injunctive Relief)

## NATURE OF THE ACTION

1.     This action is brought by the Wilton Miwok Rancheria ("Tribe"), a formerly federally-recognized Indian Tribe and by individual members of the Wilton Miwok Rancheria against various federal officials for the unlawful termination of the Wilton Miwok Rancheria under the California Rancheria Act of 1958 ("Rancheria Act"), Pub. L. No. 85-671, 72 Stat. 619, *amended by* Pub. L. No. 88-419, 78 Stat. 390. Plaintiffs seek to remedy the failure of the Secretary of the United States

1   Department of Interior ("Secretary") to fulfill statutory obligations owed to the Indian people of the

2   Wilton Miwok Rancheria prior to the distribution in 1961 of the assets of the Wilton Miwok Rancheria,

3   including the failure of the United States Department of Interior's Bureau of Indian Affairs ("BIA") to

4   install water facilities and sanitation systems that met Sacramento County requirements; knowing

5   violations of Sacramento County standards for road construction of sub-division plats; and failure to

6   provide any agricultural development, training or irrigation facilities to the Tribe, as required by the

7   Rancheria Act. Plaintiffs also seek to remedy the Secretary's breach of the fiduciary obligations owed

8   by the United States to the people of the Wilton Miwok Rancheria in the formulation and

9   implementation of the Plan for Distribution of the Assets of the Wilton Rancheria, approved August

10  18, 1958, in that the BIA failed to disclose facts that, if known to Plaintiffs, would have affected their

11  decision to approve the Distribution Plan; the BIA used undue influence in obtaining Plaintiffs'

12  consent to termination; and the BIA acted unlawfully in failing to meet Sacramento County standards

13  for water, roads and housing. Plaintiffs also seek to remedy the failure of the Secretary of Health,

14  Education and Welfare (now known as the Secretary of Health and Human Services) to fulfill statutory

15  obligations owed to the Tribe and those Indian members and distributees affected by the Ranchreia Act

16  prior to the distribution of the assets of the Wilton Miwok Rancheria, including the Secretary of

17  Health, Education and Welfare's failure to construct, install, or otherwise provide a sanitation system

18  for the Wilton Miwok Rancheria.

19          2.      Plaintiffs were members of the class of plaintiffs certified in the matter captioned *Tillie*

20  *Hardwick, et al. v. United States of America, et al.*, No. C-79-1710 (N.D. Cal.) ("*Hardwick*"), in which

21  this Court sought to remedy the unlawful termination and distribution of the lands located within

22  several Rancherias located in the State of California, pursuant to the Rancheria Act. Class members,

23  including members of Plaintiff Tribe had been included as members of the class certified by the Court

24  (Order re Class Certification filed February 28, 1980), but were dismissed from the *Hardwick* case

25  pursuant to the Order Approving Entry of Final Judgment entered on December 27, 1983 in accordance

26  with the Stipulation of the Parties for Entry of Judgment. That Stipulation provided for the recognition

27  of seventeen (17) tribes and the dismissal without prejudice of the members of twelve (12) other tribes,

28

1   including members of plaintiff Wilton Miwok Rancheria, from the *Hardwick* case. The Certificate of

2   Counsel (for plaintiff class members) Re: Hearing on Approval of Settlement of Class Actions, filed on

3   November 17, 1983 states:

4        Class members from twelve (12) of the remaining seventeen rancherias represented in
         this action would be dismissed from this action without prejudice to their right to re-file
5        another action or other actions on their behalf. No class member from these rancherias
         currently owns real property within the original rancheria boundaries. The property was
6        either sold to non-Indians when the rancheria was terminated and the proceeds of these
         sales distributed to rancheria members in lieu of deeds to individual parcels of property
7        or all of the property originally distributed was subsequently sold to non-Indians.

8        In either case the federal defendants are unwilling to re-assume responsibility for any of
9        these rancherias without a final judicial determination of their obligation to do so.
         Plaintiffs attorneys do not concede that the sale of rancheria property precludes
10       distributees from obtaining judicial relief for wrongful termination (in some cases these
         class members may have the most significant damages claims). However, plaintiffs
11       believe that these rancherias do present unique considerations and that it does not make
         sense to delay relief for those rancherias upon which class members still reside, while
12       the parties litigate these other issues. Accordingly, plaintiffs attorneys believe that it
         serves the interests of the entire class to severe these claims from those of the seventeen
13       rancherias and to dismiss those claims from this action without prejudice.
14

15       Fn. 1 Alexander Valley would have been the thirteenth rancheria in this category but by
         oversight was omitted from the stipulation for entry of judgment and notice of
16       settlement to the class. The parties propose to file a supplemental stipulation after the
         Court approves the current one and to obtain approval after notice to class members
17       from Alexander Valley.
18

19  Contrary to the above statement, as is more particularly alleged hereafter, at the time the Stipulation

20  was entered in 1983, several members of the Wilton Miwok Rancheria, including Plaintiff Dorothy

21  Andrews, owned property within the boundaries of the Rancheria which had been distributed to tribal

22  members in conjunction with the Tribe's unlawful termination in 1964. As a remedy for the Tribe's

23  unlawful termination, Plaintiffs seek to be restored as a federally-recognized Indian tribe.

24                                      **JURISDICTION**

25       3.      This Court has jurisdiction (a) under 28 U.S.C. § 1331 in that this action arises under the

26  Constitution and laws of the United States; (b) under 28 U.S.C. § 1361 in that Plaintiffs seek to compel

27  officers and employees of the United States and its agencies to perform duties owed to Plaintiffs; and

28  (c) under 28 U.S.C. § 1362 in that that this is an action brought by an Indian Tribe or band based on

1  claims arising under the Constitution and laws of the United States including U.S. Const. Art. II, § 8,

2  cl. 3 (Indian Commerce Clause), the Rancheria Act, and federal common law.

3                                      **VENUE**

4      4.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)

5  and pursuant to the Order Approving Entry of Final Judgment in Action entered on December 27,

6  1983, in *Hardwick* wherein this Court retained jurisdiction of the *Hardwick* case.

7

8                                     **PARTIES**

9      5.      Plaintiff Wilton Miwok Rancheria is a Native American Tribe consisting of the Indian

10  members and their Indian successors in interest, for whose benefit the United States acquired and

11  created the Wilton Miwok Rancheria.  The Tribe was a federally recognized Indian Tribe until it was

12  unlawfully terminated on September 22, 1964.

13     6.      Plaintiff Dorothy Andrews is an original distributee of the land distributed to members

14  of the Tribe at the time it was terminated.  At all times material hereto, she was and is a resident of a

15  parcel of land which was distributed to a tribal member in fee simple title as a result of the purported

16  termination of the Wilton Rancheria.  She resides at 9418 Rancheria Drive, Wilton, CA 95693, which

17  is located within the boundaries of the former Wilton Rancheria.

18     7.      Defendant Dirk A. Kempthorne is the Secretary of the United States Department of

19  Interior.

20     8.      Defendant Carl J. Artman is the Assistant Secretary for Indian Affairs of the United

21  States Department of Interior.

22     9.      Defendant the United States Department of Interior is the cabinet level department of

23  the United States government which is administered by the Secretary of the United States Department

24  of Interior.

25     10.     Defendant Michael O. Leavitt is the Secretary of the United States Department of

26  Health and Human Services.

27

28

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

11.    Defendant the United States Department of Health and Human Services is the cabinet level department of the United States government which is administered by the Secretary of the United States Department of Health and Human Services.  Prior to 1979, the Department of Health and Human Services was named the Department of Health, Education, and Welfare.

12.    Defendants are officers or employees of the United States and have direct or delegated statutory duties in carrying out the provisions of the Rancheria Act as amended and for fulfilling the trust responsibilities of the United States toward Indian people.

## FACTUAL ALLEGATIONS

### A.    Historical Background of the Wilton Miwok Rancheria.

13.    Plaintiff Tribal members are descendants of the Plains Mewok who lived and prospered in the Sacramento Valley since time immemorial.  The Cosumnes River borders Wilton Miwok land and provided a rich bottomland for agriculture and subsistence.  The reservation lands of the Wilton Miwok Rancheria, comprising a tract of 38.81 acres located in Sacramento County approximately twenty-four (24) miles south of Sacramento, California, were purchased and taken into trust by the United States on behalf of Plaintiffs in 1927, through funds appropriated for that purpose.  34 Stat. 325, 333 (1906); 35 Stat. 70, 76 (1908).  The members of the federally recognized Wilton Miwok Rancheria later voted to organize themselves under the provisions of the Indian Reorganization Act (48 Stat. 985) on June 15, 1935 and subsequently, on December 7, 1935 adopted a Constitution and Bylaws.  On January 15, 1936, the Secretary of the Interior approved the Tribe's Constitution and Bylaws (amended May 21, 1940).

### B.    Federal Termination Policy and the Rancheria Act.

14.    During the 1950's, due to pressure from non-Indians who desired to develop tribal land and resources, the United States pursued a policy of "Termination" in respect to Indian Tribes.  On August 1, 1953, Congress adopted House Concurrent Resolution 108 ("HCR 108"), H.R. Con. Res 108, 83d Cong., 1st Sess., 67 Stat. B132 (1953).  Although HCR 108 was merely a general policy statement it set the tone for the federal government's approach to Indian affairs during the 1950's and 1960's.  HCR 108 provided:

FREDERICKS &
FEDRIKS, LLP
1001 SECOND ST.
SACRAMENTO, CA

Whereas it is the policy of Congress, as rapidly as possible, to make the Indians within territorial limits of the United States subject to the same laws and entitled to the same privileges and responsibilities as are applicable to other citizens of the United States, to end their status as wards of the United States, and to grant them all of the rights and prerogatives pertaining to American citizenship, and

Whereas the Indians within the territorial limits of the United States should assume their full responsibilities as American citizens: Now, therefore, be it Resolved by the House of Representatives (the Senate concurring), That it is declared to be the sense of Congress that, at the earliest possible time, all of the Indian tribes and the individual members thereof located within the states of California, Florida, New York and Texas, and all of the following named Indian tribes and individual members thereof, should be freed from Federal supervision and control and from all disabilities and limitations specially applicable to Indians[.]

After Congress passed HCR 108, the United States rapidly pursued the stated termination policy through specific legislative enactments. Tribes strongly opposed termination, however, tribal consent was often not considered necessary to the implementation of the termination policy.

15.    On August 18, 1958, as part of the United States' general termination policy, Congress enacted the California Rancheria Act ("Rancheria Act"), P.L. 85-671, 72 Stat. 619, amended by the Act of Aug. 1, 1964, P.L. 88-419, 78 Stat. 390. Section 1 of the Rancheria Act provided that the assets of 41 named Rancherias (including the Wilton Miwok Rancheria) "shall be distributed in accordance with the provisions of this Act." Section 2(a) of the Rancheria Act required that either the Indians of each Rancheria or the Secretary of the United States Department of the Interior, after consultation with the Indians, prepare a distribution plan for each Rancheria. Section 3 of the Rancheria Act required the Secretary to undertake certain actions with respect to each Rancheria prior to distributing the land pursuant to the distribution plans and removing them from trust status. Section 3 of the Rancheria Act provided:

Sec. 3. Before making the conveyances authorized by this Act on any rancheria or reservation, the Secretary of the Interior is directed:

(a) To cause surveys to be made of the exterior or interior boundaries of the lands to the extent that such surveys are necessary or appropriate for the conveyance of marketable and recordable titles to the lands.

(b) To complete any construction or improvement required to bring Indian Bureau roads serving the rancherias or reservations up to adequate standards comparable to standards for similar roads of the State or subdivision thereof. The Secretary is authorized to contract with the State of California or political subdivisions thereof for the construction

or improvement of such roads and to expend under such contracts moneys appropriated by Congress for the Indian road system. When such roads are transferred to the State or local government the Secretary is authorized to convey rights-of-way for such roads, including any improvements thereon.

(c) To install or rehabilitate such irrigation or domestic water systems as he and the Indians affected agree, within a reasonable time, should be completed by the United States.

(d) To cancel all reimbursable indebtedness owing to the United States on account of unpaid construction, operation, and maintenance charges for water facilities on the reservation or rancheria.

(e) To exchange any lands within the rancheria or reservation that are held by the United States for the use of Indians which the Secretary and the Indians affected agree should be exchanged before the termination of the Federal trust for non-Indian lands and improvements of approximately equal value.

16.    Section 8 of the Rancheria Act required that prior to the termination of a rancheria, the Secretary of the Interior was to "protect the rights of individual Indians who are minors, *non compos mentis*, or in the opinion of the Secretary in need of assistance in conduct of their affairs. . . ."

17.    Section 9 of the Rancheria Act required that prior to the termination of a rancheria, the Secretary of the Interior was to implement education and vocational training programs for the benefit of the Rancheria Indians.

18.    Pursuant to the Rancheria Act, once the Secretary of the Interior had satisfied his duties under Section 3 and after the "plan for distribution of the assets of a rancheria or reservation" was approved and the distribution plan was final, Section 10(b) of the Rancheria Act provided:

the Indians who receive any part of such assets, and the dependant members of their immediate families who are not members of any other tribe or band of Indians, shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians all restrictions and tax exemptions applicable to trust or restricted land or interests therein owned by them are terminated, all statutes of the United States which affect Indians because of their status as Indians shall be inapplicable to them, and the laws of the several States shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction.

19.    The Rancheria Act was amended on August 11, 1964. Pub.L.No. 88-419, 78 Stat. 390. Specifically, Section 3 was amended to direct that the Secretary of Interior was to "contruct, improve,

1   install, extend, or otherwise provide, by contract or otherwise . . . . irrigation facilities for Indian homes,

2   communities, and lands" *prior to* distributing title to Rancheria lands.

3       20.     The 1964 amendments to the Rancheria Act also specified that the Secretary of Health,

4   Education, and Welfare was to "construct, improve, install extend, or otherwise provide . . . sanitation

5   facilities (including domestic and community water supplies and facilities, drainage facilities, and

6   sewage and waste disposal facilities, together with necessary appurtenances and fixtures) . . . in

7   accordance with the provisions of section 7 of the Act of August4, 1954 (58 Stat. 674), as amended (42

8   U.S.C. 2004a)."

9   C.    **Purported Termination of Plaintiff Wilton Rancheria**

10      21.     In August, 1958, pursuant to Section 10(a) of the Rancheria Act, the Secretary of the

11  Interior made effective a document entitled "A Plan For The Distribution Of The Assets Of The Wilton

12  Rancheria" ("Distribution Plan"). Pursuant to the Distribution Plan, the Secretary of the Interior

13  intended to distribute the Tribe's roughly 38.81 acre reservation to eleven (11) individual Tribal

14  members and the dependent members of their immediate families, with two additional lots to be held as

15  community property. Pursuant to Section 3 of the Rancheria Act, in exchange for their agreement to

16  the Distribution Plan, the Distribution Plan specifically provided that the eleven (11) distributees

17  specifically requested that the Bureau of Indian Affairs:

18          1. Make such surveys as are necessary to convey merchantable and recordable title.

19          2. Rehabilitate the present domestic water system by replacing all leaky, defective
20          water pipes and providing water connections to all occupied residences or other
            residences constructed or in the course of construction and more than fifty percent
21          completed within a ninety (90) day period after approval of this plan by the Indians of
            the Wilton Rancheria.
22
            3. Construct a road at the location shown on the attached map that will meet the
23          minimum specifications of the Sacramento County Road Department and turn this road
            over to the County for operation and maintenance.
24
            4. Cancel all reimbursable indebtedness owing to the United States on account of
25          unpaid construction and/or operation and maintenance changes for water facilities.
26
            5. Furnish each distributee with the approximate value of his lot at the time of the
27          conveyance.
28

6.   Convey to individual Indians according to this plan, and the map attached hereto which is part of this plan, unrestricted title to lands constituting the Wilton Rancheria. The attached sketch map indicates generally the location of lots to be conveyed. Title will be subject to existing rights-of-way, easements or leases and will include such mineral and water rights as are now vested in the United States.

22.    Pursuant to Section 3 of the Rancheria Act, the action that the distributees requested the Bureau of Indian Affairs to take was mandatory and the Tribe could not be terminated and Tribal assets could not be distributed and stripped of their protected trust status until such time as the United States satisfied these mandatory obligations. Once satisfied the termination and distribution would be complete, title could be lawfully conveyed to the distributees, the United States would no longer owe any fiduciary duty to the distributees and the distributees and the distributed land would no longer be exempt from any state and local laws, ordinances, or regulations.

23.    Throughout the history of the Wilton Rancheria, the Miwok people faced problems with sanitation facilities and domestic water supply. In 1949, a letter from the California Indian Agency to the Acting Director of Irrigation, Office of Indian Affairs, states that:

Of the many reservations and rancherias in Northern California badly in need of water, there are two . . . these places are the Wilton Rancheria, near Sacramento and Norton Field on the Hoopa Reservation.

At Wilton the well has sanded up and it will be necessary to drill and case a new 12 inch well. There is no other water available on the rancheria and the Indians must haul their water from neighboring ranches. There is insufficient water for the school children to bathe and on October 14 the County School Superintendent's office called asking that something be done. Today, the County Health Office called us and asked what could be done to remedy this deplorable situation.

24.    The Bureau of Indian Affairs failed to install water facilities and sanitation systems for the Wilton Miwok Rancheria that met County requirements as shown in a letter from Sacramento County regarding sanitation facilities at the Wilton Rancheria:

It is the decision of the Sacramento County Department that approval cannot be granted to this subdivision because evidence has not been presented to indicate:

1.    The presently undeveloped lots could be adequately sewered with individual sewage disposal systems when homes are constructed.

2.    That the sewage disposal systems on the developed lots could be adequately repaired should failures occur.

Relative to the second point above, a field investigation revealed that eight of the nine existing dwellings are discharging sewage onto the surface of the ground which constitutes a health hazard and a violation of Section 5, Sacramento County Ordinance No. 378. Eight of the existing dwellings are also using unsanitary privies which are health hazards violating County Ordinance No. 450, Section 2. Nowhere in your plan for subdivision is provision made for the abatement of these health hazards . . .

25.    The Bureau of Indian Affairs knowingly violated county standards for road construction within sub-divisions. The BIA avoided meeting the County standard of "Class A" roads (Sacramento County Ordinance No. 390) for sub-divisions of more than three residential lots, by filing the plat with the BLM instead of with Sacramento County. By doing this, the BIA avoided constructing the required "Class A" roads and instead contracted to construct "Class B" roads. "Class A" roads are 40 ft. in width with curbs and sidewalks. The roads that the government constructed at Wilton had internal rights-of-way of 42 ft. and access road right-of-way of 60 ft.; with no curbs or sidewalks.

26.    The Bureau of Indian Affairs implemented no vocational or educational training programs for the benefit of the Indians of the Wilton Miwok Rancheria.

27.    On May 19, 1961, John M. Kelly, Assistant Secretary of the Interior issued a letter indicating that the requirements of the Rancheria Act had been satisfied and revoking the Constitution and Bylaws of the Wilton Miwok Rancheria.

28.    On September 22, 1964, then Interior Secretary Stewart L. Udall published in the Federal Register the following official notice of the termination of the Wilton Miwok Rancheria:

Notice is hereby given that the Indians named under the Rancheria listed below are no longer entitled to any of the services performed by the United States for Indians because of their status as Indians, and all statutes of the United States which affect Indians because of their status as Indians, shall be inapplicable to them and the laws of the several States shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction. Title to the lands on this Rancheria has passed from the United States Government under the distribution plan of the Rancheria.

[Names of individuals omitted]

The Wilton Rancheria, 38 and 31/100 acres, is located north of the Wilton Post Office and general store, about twenty-four miles southeast of Sacramento, California, in Sacramento County.

FREDERICKS & PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

> This notice is issued pursuant to the Act of August 18, 1958 (72 Stat. 619), and becomes effective as of the date of publication in the FEDERAL REGISTER.

29 Fed. Reg. 13,146 (Sept. 22, 1964).

29. The immediate effect of the termination of the Tribe and distribution of the Wilton Miwok Rancheria was that: 1) there were fundamental changes in land ownership as land passed from the Tribe to individuals; 2) the trust relationship between the United States and the Tribe, and the United States and the reservation lands was terminated; 3) state and local legislative jurisdiction was imposed; 4) state judicial authority was imposed; 5) exemptions from state and local taxing authority was ended; 6) federal programs to the Tribe and its individual members was terminated; 7) tribal sovereignty and tribal jurisdictional prerogatives were effectively, though not technically ended as elements of tribal sovereignty generally cannot be practically implemented by tribes that do not have a land base over which to exercise sovereignty.

30. Following termination, the United States distributed Plaintiffs' tribal landholdings to the adult members of the Wilton Miwok Rancheria, including Plaintiff Dorothy Andrews. *See* List of Wilton Miwok Rancheria Distributees (attached hereto as Exhibit A).

31. The long term effect of the termination under the Rancheria Act, in addition to those effects set forth in paragraph 29, was that a significant portion of tribal lands in California were transferred out of tribal and Indian ownership as non-Indians purchased the land through direct purchases, or through foreclosure actions and tax sales. In regard to the Tribe specifically, the long term effect of the Rancheria Act has been that approximately fifty percent (50%) of the Tribe's land has passed out of tribal and Indian ownership into non-Indian ownership.

## D.    The *Tillie Hardwick* Litigation.

32. On July 10, 1979, in a case directly related to this action, a number of distributees from 34 Rancherias that were terminated by the Rancheria Act brought suit against the United States and county tax assessors and collectors for counties where Rancheria lands were located. In *Hardwick,* the plaintiffs asserted that the United States violated the Rancheria Act in its efforts to rapidly terminate forty-one (41) Rancherias (including the Wilton Miwok Rancheria) under the Rancheria Act.

Specifically, the plaintiffs asserted that the United States failed to properly inform the distributees of the legal effect of termination and that the distributees lands would be subject to state and local taxation and regulation and that the distributees would no longer have access to federal programs and protections. In addition, the plaintiffs in *Hardwick* asserted that the United States misrepresented to the distributees that termination was mandatory when in fact the Rancheria Act required the agreement of the distributees. Additionally, the plaintiffs asserted that the United States further violated the Rancheria Act because the United States did not satisfy its obligations under Section 3 of the Rancheria before terminating the tribes and distributing tribal lands and assets by conveying them to the distributees.

33.    On February 28, 1980, the distributees of the Wilton Miwok Rancheria were certified as members of the plaintiff class in the *Hardwick* litigation. *See* Order Re: Class Certification (Feb. 28, 1980), (attached hereto as Exhibit B).

34.    The plaintiffs' purpose in the *Hardwick* litigation was to undo all of the effects of the unlawful application of the Rancheria Act and to fully restore the tribes and the tribal reservations to the status they held before the unlawful termination. Thus, the plaintiffs sought a declaration stating that:

1.    The tribes and the tribal reservations were not lawfully terminated;

2.    The Termination Proclamation of each of the subject Rancherias was unlawfully published and that the Secretary of the Interior was under an obligation to declare the notices to be unlawful and rescind them;

3.    The Secretary of the Interior was under a duty to "unterminate" each of the subject rancherias, and to offer to repurchase at fair market value the lands originally conveyed to Indian distributees that had passed into non-Indian ownership and to return all such lands to into trust for the benefit of the tribes;

4.    The United States had a duty to treat the restored Rancherias as Indian reservations in all respects and to afford the tribes and individual tribal members of the Rancherias all the rights and privileges and immunities ordinarily accorded to Indian tribes, bands and communities;

5.    That the subject Rancherias were to be treated as Indian reservations in all aspects;

6.      That all of the lands of the subject Rancherias were not subject to the jurisdiction of counties where the lands were situated, and further that the lands would not be subject to county regulation and taxation until such time as the lands were lawfully conveyed to individual distributees and removed from trust in full compliance with all of the provisions of the Rancheria Act.

35.    The plaintiffs in the *Hardwick* litigation also sought to void the distribution plans, restore the federal government's trust obligations to the plaintiffs, and to declare null and void the purported termination of the rancherias.

36.    On January 31, 1986, the *Hardwick* plaintiffs amended their complaint. The amendment allowed a number of tribes that had reconstituted their formal federally recognized governments to intervene directly in the *Hardwick* litigation. In addition, the amendment dropped as defendants a number of counties that had voluntarily resolved their issues with the tribes located in the specific counties.

37.    The plaintiff class in *Hardwick* consisted of all persons who received assets of the named rancherias pursuant to distribution plans prepared under the Rancheria Act. In addition to the distributees, their heirs and legatees and all Indian successors in interest to the real property distributed under the Rancheria Act were also parties to the litigation.

38.    Both prior to and subsequent to the filing of the *Hardwick* litigation, which addressed the rights of unlawfully terminated Indian tribes and their distributees, federal courts in California and the District of Columbia resolved disputes identical to those raised in the *Hardwick* litigation. *See, e.g., Smith v. United States*, 515 F.Supp. 56 (N.D. Cal 1975); *Duncan v. Andrus*, 517 F.Supp 1 (N.D. Cal. 1977); *Duncan v. United States*, 667 F.2d 36 (Ct.Cl. 1981). In those actions, the courts ruled that the termination of Hopland Rancheria and the Pomo Indians of the Robinson Rancheria and their reservations were unlawful. The courts further ruled that the Rancheria reservation lands were never lawfully subjected to state and local regulation. The courts ordered the tribes and their reservations restored to the status they held immediately before the unlawful termination and directed that the reservation lands were to be treated as Indian country and subject to all of the privileges and protections that they were afforded under federal law prior to the unlawful termination.

39.    On July 15, 1983, with knowledge of the decisions rendered in *Smith v. United States*, 515 F.Supp. 56 (N.D. Cal 1975), and *Duncan v. Andrus*, 517 F.Supp 1 (N.D. Cal. 1977), and the pendancy of similar actions in *Duncan, et al. v. United States*, No. 19-75 (Ct.Cl.), and *Table Bluff Band, et al. v. Andrus*, No. C-75-2525 (N.D. Cal.), the remaining parties in the *Hardwick* litigation entered into a Stipulated Judgment.  The Stipulation for Entry of Judgment, entered August 8, 1983 ("1983 Judgment"), restored the remaining class member tribes to their former tribal status by providing in paragraph 4 that:

> The Secretary of the Interior shall recognize the Indian Tribes, Bands, Communities or groups of the seventeen Rancherias listed in paragraph 1 as Indian entities with the same status as they possessed prior to the distribution of the assets of those Rancherias under the California Rancheria Act and said Tribes, Bands, Communities, or groups shall be included on the Bureau of Indian Affairs Federal Register list of recognized tribal entities pursuant to 25 C.F.R. section 83.6(b).  Said Tribes, Bands, Communities, or groups shall be relieved of section 11 of the California Rancheria Act and shall be deemed entitled to any of the benefits or services provided or performed by the United States for Indian Tribes, Bands, Communities, or groups because of their status as Indian Tribes, Bands, Communities, or groups.

Pursuant to Paragraph 12 of the Stipulation for Entry of Judgment, the parties agreed that the United States District Court for the Northern District of California would retain jurisdiction over the *Hardwick* case.

40.    The Order Approving Entry of Final Judgment in Action was entered on Dec. 27, 1983, (attached hereto as Exhibit C).  By virtue of its dismissal from the case, Plaintiff Wilton Miwok Rancheria was excluded from the seventeen Rancherias listed in the 1983 Judgment whose tribal status was restored.

### E.    Wilton Rancheria Was Erroneously Omitted From The *Tillie Hardwick* Restoration Judgment.

41.    The members of the Wilton Miwok Rancheria were dismissed from the plaintiff class on the erroneous premise that "[n]o class member from these rancherias currently owns property within the original rancheria boundaries."  *See* Certificate of Counsel Re Hearing on Approval of Settlement of Class Actions (Nov. 16, 1983), page 9 (attached hereto as Exhibit D).  It was mistakenly believed that at termination, the tribal members of Wilton Rancheria had either sold the rancheria property to

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

1    non-Indians or distributed it to rancheria members who subsequently sold it to non-Indians. *See*

2    Stipulation for Entry of Judgment (July 19, 1983), ¶ 14 (attached hereto as Exhibit E). In any event, it

3    was erroneously believed that the dismissed Wilton Rancheria members of the plaintiff class no longer

4    owned any of the property that made up the former rancheria. *See* Exhibit D, page 9.

5        42.    In fact, at the time several members of the Wilton Miwok Rancheria owned and resided

6    upon ten (10) of the twelve (12) residential parcels distributed within the boundaries of the Rancheria,

7    either as original distributees or as the heirs or legatees of original distributees. *See* Map Showing

8    Lands of Wilton Miwok Rancheria Distributed at Termination (attached hereto as Exhibit F). Jane

9    Martinez Brown, the original distributee of Lot One who then still owned and resided on the same,

10   attended and desired to present a statement at the hearing convened by the *Hardwick* court on whether

11   to approve the class action settlement. Ms. Brown terminated her statement when she was informed

12   that the Wilton Miwok Rancheria was not included in the proposed settlement. *See* Findings and

13   Recommendation of Magistrate J. S. Brennan, filed Dec. 15, 1983, pages 3-4 (attached hereto as

14   Exhibit G). Moreover, at least one original distributee, Plaintiff Dorothy Andrews, and numerous heirs

15   and legatees of other distributees continue to own land and reside on Wilton Rancheria today. *See*

16   Lands Within the Original Boundaries of the Wilton Miwok Rancheria Presently Owned by the

17   Distributees, Dependent Members, Their Heirs, or Legatees (attached hereto as Exhibit H).

18       43.    Jane Brown and the other distributees did not understand and know the specifics of the

19   *Hardwick* proceedings. As a result of the mistaken dismissal as members of the plaintiff class in

20   *Hardwick*, Plaintiffs have been unfairly denied restoration of their status as an Indian Tribe under the

21   laws of the United States, a status unlawfully taken from Plaintiffs by the California Rancheria Act of

22   1958. Plaintiffs have continued to suffer the social and economic consequences of termination, which

23   has made it difficult, if not impossible, for Plaintiffs to pursue their rights in the intervening years.

24   **F.    Wilton Rancheria Has Been Working For Many Years to Restore Its Federal**
25   **Recognition.**

26       44.    Restoration has been at the forefront of Plaintiffs' concerns, transcending any internal

27   political differences that may have arisen among the Tribe's members. Knowing that restoration

28   required the cooperation of all tribal members, the families worked together with the Bureau of Indian

1  Affairs, Superintendent Dale Risling of the Central California Agency and the Indian Dispute

2  Resolution Services to reach a consensus on a strategy for restoration. On November 22, 1999, tribal

3  members agreed to create an Interim Tribal Council to govern the Wilton Miwok Rancheria. *See*

4  Mediation Agreement dated November 22, 1999 (attached hereto as Exhibit I). This is the current

5  governing body of the Wilton Miwok Rancheria. *See* Letters From United States Department of the

6  Interior, BIA dated August 24, 2004, September 17, 2004, June 14, 2006 and September 12, 2006

7  (attached hereto as Exhibit J). The Interim Tribal Council represents over three hundred (300) tribal

8  members of the Wilton Miwok Rancheria.

9       45.    Termination has not prevented members of the Wilton Miwok Rancheria from

10  continuing to exercise their tribal rights and from working together as an Indian community. Today the

11  Wilton Miwok Rancheria continues to consist of the same large families, a majority of whose members

12  live and work in Sacramento County. Each of these historic families is represented on the Interim

13  Tribal Council for the Wilton Miwok Rancheria. Those members who live away from the Rancheria

14  maintain continuing social and political ties with members and their families who remain on the former

15  Rancheria.

16       46.    The Wilton Miwok Rancheria has not had to work alone in seeking restoration of its

17  federally recognized status. In 1992, Congress established the Advisory Council on California Indian

18  Policy ("ACCIP"), a statewide Indian Council consisting of representatives of California's federally

19  recognized, terminated and unacknowledged tribes. 106 Stat. 2131, as amended by 110 Stat. 766. The

20  ACCIP's mandate included the submission of recommendations to Congress for addressing the needs

21  of California's Indian tribes. In its September 1997 report to Congress, the ACCIP recommended that

22  federal recognition of the Wilton Miwok Indian Community be immediately restored. *See* ACCIP

23  Final Report and Recommendations to the Congress of the United States, page 18 (attached hereto as

24  Exhibit K).

25       47.    In 1998, tribal members began a vigorous pursuit of Congressional support for their

26  restoration. Plaintiffs worked with the ACCIP and other California tribes seeking restoration,

27  culminating in discussions with legislative staff of the House Resources Committee to discuss

28

development of an omnibus California bill to provide for the restoration of Wilton and other terminated rancherias. In April 2000, a final bill, sponsored by House Representative George Miller, was drafted that would have restored federal recognition to six California tribes including the Wilton Miwok Rancheria. However, the Wilton Miwok Rancheria was not included in the final bill. Since that time, the Wilton Miwok Rancheria has continued to seek and to receive support from the local community for its restoration efforts. Superintendent Dale Risling, Sr provided letters of support for the restoration of Wilton Rancheria. *See* Exhibit J.

48.    The strain and impact of the termination left the Tribe struggling for many years to continue and maintain its governance. This was extremely difficult and time consuming because the Tribe has few resources. Plaintiffs are one of a handful of terminated California tribes that remains unrecognized by the federal government. *See* Status of California Rancherias Terminated Pursuant to the Rancheria Act (attached hereto as Exhibit L).

49.    The stipulated judgment entered in *Hardwick* makes clear the continuing right of those members of the rancherias dismissed from the plaintiff class to seek restoration of their Indian status. Under its terms, the claims of the Wilton Miwok Rancheria were dismissed "without prejudice to their being refiled in another action." *See* Exhibit E ¶ 14. Further, in the event the members of the Wilton Miwok Rancheria did refile their claim, the United States stipulated that it would not "assert any laches defense to any such subsequent action" if it could not have been asserted prior to *Hardwick* being filed. *Id.*

**FIRST CLAIM FOR RELIEF**
**(Breach of Rancheria Act Against All Defendants except Michael O. Leavitt and the United States Department of Health and Human Services)**

50.    Plaintiffs re-allege paragraphs 1 through 49 and incorporate those paragraphs herein as if set forth in full.

51.    Under Section 3 of the Rancheria Act, the Secretary of Interior was required to complete construction or improvement to bring roads serving the Rancheria up to adequate standards for similar roads of the State or subdivision thereof prior to terminating the Rancheria and its members.

52.    Despite these specific obligations, Defendants wrongfully terminated Plaintiffs by developing distribution plans and conveying deeds to parcels of the Rancheria before and/or without providing roads that were up to adequate standards for subdivision roads within the County of Sacramento.

53.    Under Section 3 of the Rancheria Act, the Secretary of Interior was required to install and/or rehabilitate Rancheria irrigation and domestic water and sanitation systems so that said systems would be adequate to meet the reasonable needs of all the Indians of the Rancheria, prior to terminating the Rancheria and its members.

54.    Despite these specific obligations, federal defendants wrongfully terminated Plaintiffs by developing distribution plans and conveying deeds to parcels of the Rancheria before and/or without negotiating for or providing irrigation and domestic water and sanitation systems adequate to meet the Plaintiffs' needs.

WHEREFORE, the Plaintiffs pray for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### (Breach of the Rancheria Act, as Amended, Against All Defendants)

55.    Plaintiffs re-allege paragraphs 1 through 54 and incorporate those paragraphs herein as if set forth in full.

56.    In 1964, Congress amended Section 3(c) of the Rancheria Act, as set forth in paragraphs 19 and 20 of this Complaint.

57.    One effect of the 1964 amendments was to substitute the phrase "sanitation facilities" for the phrase "irrigation or domestic water systems," thereby expressly stating that services required by section 3 included ". . . drainage facilities and sewage – and waste-disposal facilities . . ." and shifting the authority for this particular duty to the Secretary of Health, Education, and Welfare.

58.    Following enactment of the 1964 amendments to the Rancheria Act, the Defendants breached their statutory and fiduciary duties by failing to take steps to renegotiate the provisions of the distribution plans pertaining to water sources and water systems.

WHEREFORE, the Plaintiffs pray for relief as set forth below.

## THIRD CLAIM FOR RELIEF
### (Breach of Trust Against All Defendants)

59.    The Plaintiffs re-allege paragraphs 1 through 58 and incorporate those paragraphs herein as if set forth in full.

60.    In passing the Rancheria Act into law, Congress intended that termination would be the result of a voluntary process by which designated Indian communities would choose to accept termination in exchange for the provision of a number of government services which would aid those communities in becoming economically sound, including, the provision of domestic water and sanitation facilities.

61.    Congressional intent behind the Rancheria Act, as well as the fiduciary duty owed by the Defendants to the Plaintiffs, required the BIA to accomplish the congressional policy of termination in a manner calculated to advance the interests of said Indians.  The Defendants breached their trust duty to the Plaintiffs under the Rancheria Act in the following ways:

    a.    Defendants interpreted the Rancheria Act to require termination of the Tribes named therein.

    b.    Defendants approved the distribution plans without expressly providing therein for installation of water systems and sources, and sanitation facilities, fully adequate to meet the needs of all distributes and resident Indians;

    c.    Defendants limited water service under the distribution plans, as approved, to those distributes who were fortunate enough to have residences already built or under construction;

    d.    Defendants failed to accurately install, or secure for the Rancheria, water and sanitation systems that were fully adequate to meet the needs of all Indian residents and distributes for the foreseeable future, prior to conveyance of the Rancheria's assets in fee to the distributes; and

    e.    Defendants arbitrarily and capriciously interpreted the term "water system" as used in the Rancheria Act to include only a water source and a sufficient distribution system to deliver water to any of the Rancheria's parcels.  On this basis, they refused to provide necessary plumbing to Rancheria housing to allow the residents to make beneficial use of the water, or to satisfy local city and county health codes that applied to these parcels after deeds were recorded.

WHEREFORE, Plaintiffs pray for relief as set forth below.

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment and request the following legal and equitable relief:

(1)    That this Court declare that:

(i)    Wilton Miwok Rancheria was unlawfully terminated, and its assets distributed, in violation of Section 2(b) and 3(c) of the Rancheria Act and the government's trust policy;

(ii)    The deeds conveyed to the individual Indian distributees are voidable, and the Secretary of the Interior is under a duty to take former Rancheria lands back into federal trust status at the option of each distributee, or their legal heirs or Indian successors in interest;

(iii)    Termination Proclamations for the Rancheria were unlawfully published, and the Secretary of the Interior is under an obligation to rescind the same;

(iv)    The Wilton Miwok Rancheria is not a terminated Tribe within the meaning of Section 10(b) of the Rancheria Act, and the Defendants are under an obligation to treat them as a federally-recognized Tribe;

(v)    The Constitution and Bylaws of the Wilton Miwok Rancheria, adopted December 7, 1935, are restored;

(vi)    The Secretary of the Interior is under a duty to afford to the Wilton Miwok Rancheria all rights, privileges and immunities ordinarily accorded to a federally-recognized Indian Tribe;

(vii)    The lands comprising Wilton Miwok Rancheria were and still are "Indian Country" and that such lands now or in the future to be acquired by the Tribe are immune from local property taxation, assessement or other civil regulatory jurisdiction and shall be restored to the same status as before termination;

(viii)    The lands comprising the Wilton Miwok Rancheria are not subject to the jurisdiction of Sacramento County, and further that the lands would not be subject to county regulation and taxation until such time as the lands were lawfully conveyed to individual distributees and removed from trust in full compliance with all of the provisions of the Rancheria Act;

1    (ix)    The Secretary of the Interior is under a duty to acquire and take land into trust

2 for the benefit of the Wilton Miwok Rancheria pursuant to the Indian Reorganization Act, 25 U.S.C. §

3 465;

4    (x)    The Secretary of the Interior is under a duty to take into trust a land base for the

5 benefit of the Tribe, with such land to be considered "Indian country" as defined in 18 U.S.C. § 1151 .

6    (2)    That this Court issue preliminary and permanent injunctive relief compelling the

7 Defendants to afford the Wilton Miwok Rancheria all rights, privileges and immunities ordinarily

8 accorded to a federally-recognized Indian Tribe.

9    (3)    That this Court order Defendants to pay Plaintiffs their costs of suit and reasonable

10 attorneys' fees.

11    (4)    That this Court order such further relief as it shall deem appropriate.

12 Dated: May 21, 2007

13                                             Respectfully submitted,

14                                             FREDERICKS & PEEBLES LLP
15                                             CHRISTINA V. KAZHE
                                              JOHN NYHAN
16                                             ROSE M. WECKENMANN

17                                             By: _____

18                                             JOHN NYHAN, Attorneys for Plaintiffs,
                                              WILTON MIWOK RANCHERIA
19                                             and ITS MEMBERS

20

21

22

23

24

25

26

27

28

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

COMPLAINT – DECLARATORY AND INJUNCTIVE RELIEF