**EXHIBIT D**

1   DAVID J. RAPPORT
    LESTER J. MARSTON
2   CALIFORNIA INDIAN LEGAL SERVICES
    200 West Henry Street
3   Post Office Box 488
    Ukiah, California 95482
4   Telephone: (707) 462-3825

5   Attorneys for Plaintiffs

FILED

Nov 17  11 32 AM '03

WILLIAM L. WHITTAKER
CLERK
U.S. DISTRICT COURT
NO. DST D- CA

96

6

7

8

9

10

11

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15

16                                      )   No. C-79-1710-SW
                                        )
17   TILLIE HARDWICK, et al.,           )
                                        )   CERTIFICATE OF COUNSEL
18                    Plaintiffs,       )   RE: HEARING ON APPROVAL
                                        )   OF SETTLEMENT OF CLASS
19   v.                                 )   ACTIONS
                                        )
20   UNITED STATES OF AMERICA, et al.,  )
                                        )
21                    Defendants.       )
     _____)

22

23          David Rapport, attorney of record for plaintiffs

24   herein, hereby certifies as follows:

25          I am an attorney in the employ of California Indian

26   Legal Services (C.I.L.S.), a California non-profit corporation

27   receiving a grant from the Legal Services Corporation for

28   provision of legal services to indigent California Indians.  One

                                -1-

of the principal activities of C.I.L.S., since its establishment in 1968 has been representing Indian victims of the disastrous federal policy of "termination" embodied in the California Rancheria Act of 1958, 72 Stat. 390, in vindicating their rights. When this action was filed in 1979, C.I.L.S. already was litigating or had litigated (in 15 different lawsuits) the validity of the implementation of the California Rancheria Act at nine specific Rancherias. Among those cases have been Kelly v. U.S. Dep't. of the Interior, 339 F. Supp. 1095 (E.D. Calif., 1976); Duncan v. Andrus, 517 F. Supp. 1 (N.D. Calif., 1977); Smith v. U.S.A., 515 F. Supp. 56 (N.D. Calif., 1978); Duncan v. U.S.A. (Duncan I), 597 F.ed 1337 (Ct. Cl., 1979), vacated and remanded sub nomine U.S.A. v. Duncan, 446 U.S. 903 (1980); Duncan v. U.S.A. (Duncan II), 667 F.2d 36 (Ct. Cl., 1981), cert. pending; Taylor v. Hearne, 637 F.2d 689, (9th Cir., 1981), cert. den., 454 U.S. 851; Upper Lake Pomo Ass'n. v. Watt, No. C-75-0181 SW (N.D. Calif.; Partial Summary Judgment entered in May, 1979); Table Bluff Band v. Watt, 532 F. Supp. 255 (N.D. Calif., 1981), appeal on damages pending.

At present, C.I.L.S. is litigating the damage claims of the people of the Robinson Rancheria in the Court of Claims (Duncan v. U.S.A., supra), and similar claims of the people of the Upper Lake and Table Bluff Rancherias before, respectively, the Northern District of California and the Ninth Circuit Court of Appeal.

The basic legal issues in these cases are (1) the nature and extent of the obligations of the United Staes and the rights of plaintiffs as Rancheria Indians under the trust

-2-

1  relationship which exists between the United States and
2  plaintiffs under the Rancheria Act and under the respective
3  Rancheria distribution plans, and (2) the nature and scope of the
4  relief to which plaintiffs would be entitled upon a showing that
5  federal defendants breached those obligations in implementing the
6  Rancheria Act at the rancherias represented in this action.
7           The essence of plaintiffs' legal claims is as follows:
8           1) both the trust relationship and the Rancheria Act
9  imposed upon the United States the legal obligation to provide
10  the Indians of the Rancherias subject to the Act with:
11           (a) sufficient accurate information upon which to
12  base an informed decision about whether or not to accept
13  termination under the Rancheria Act; and
14           (b) through, among other things, the promulgation
15  of regulations imposing standards on the provision of
16  improvements under the Rancheria Act that assured that all
17  improvements would meet applicable state and county legal
18  requirements, to ensure that the distribution plans prepared
19  under the Act -- as promulgated, approved and implemented --
20  fairly and adequately provided for the reasonable needs of the
21  people of the Rancherias for water and sanitation facilities and
22  other improvements, benefits and services necessary to enable
23  them successfully to assimilate into the surrounding non-Indian
24  community;
25           2) the disbtibution plans constituted binding contracts
26  under which the United States bound itself to provide adequate
27  water, sanitation and other improvements, benefits and services
28  to the people of the Rancherias in exchange for the termination

-3-

of plaintiffs' special Indian status under the trust relationship between plaintiffs and the United States, and the termination of the trust and Indian country status of the lands of the Rancherias;

3) federal defendants' breach of fiduciary, statutory and/or contractual obligations would entitle plaintiffs to relief which would include restoration of their Tribal and personal status as Indians, restoration of the Indian country status of the rancherias, the right to restore Rancheria lands to federal trust status for the benefit of persons or entities designated by plaintiff landowners, the right to participate in federal benefits, services and programs provided especially to Indians, and money damages for losses proximately caused by the premature, unauthorized or otherwise unlawful implementation of the Rancheria Act.

Plaintiffs' basic factual contentions are that federal defendants did not provide plaintiffs with sufficient accurate information upon which to base informed decisions about whether or not to accept termination; that by failing to adopt proper standards and otherwise, federal defendants failed to ensure that the distribution plans -- either as approved or as implemented -- for the Rancherias represented herein adequately provided for the reasonable needs of all of the Rancherias' people; and thus that the distributions of Rancheria assets and the concomitant termination of plaintiffs' Indians rights and status were not validly effected pursuant to, as authorized by, in accordance with or under the provisions of the Rancheria Act.

Because proceedings were deferred pending the outcome

of settlement negotiations, plaintiffs have not moved for summary judgment and defendants have not yet responded to any such motion. However, based upon defendants' answers in this case and the positions taken by federal defendants in other untermination cases, plaintiffs anticipate that were these cases to proceed further, defendants' legal contentions probably would be that except as provided in the Rancheria Act, plaintiffs lacked vested or other interests in Rancheria lands; that there has been no government-to-government relationship between plaintiff Bands and the United States; that the general trust relationship between the United States and Indians did not impose any specific obligations upon federal defendants in implementing the Rancheria Act; that the Rancheria Act vested the federal agencies involved with broad discretion in promulgating, approving and implementing distribution plans thereunder; that distribution plans were and are not binding contracts; that while a distribution of Rancheria assets which is not preceded by provision of adequate services under §3 of the Rancheria Act does not terminate the Indian status of distributees and dependents, any declaratory and/or equitable relief for violation of federal trust or statutory obligations in the course of implemeting the Rancheria Act should be limited to restoring plaintiffs to their former status as Indians and enabling Indian landowners to elect to return their lands to exactly the same status as existed prior to approval of the distribution plan -- i.e., ownership by the United States without specification of a trust beneficiary; and that money damages are not recoverable against the United States for any losses which plaintiffs may have suffered by reason of the

premature or otherwise unlawful implementation of the Rancheria Act, because the United States neither has waived its immunity to suit nor has any federal statute or regulation created a cause of action for money damages cognizable under the Tucker Act, 28 U.S.C. §1346(b).

Plaintiffs anticipate that defendants' factual contentions would be that the United States provided Rancherias with sufficient accurate information upon which to base their respective decisions to accept termination; that the distribution plans adequately provided for the needs of the people of the Rancherias; that the facilities, benefits and services actually provided to the Rancherias by the United States adequately met the reasonable needs of the recipients; and that plaintiffs sustained no compensable losses by reason of the distribution of Rancheria assets.

Prior to filing motions for partial summary judgment, plaintiffs in both cases conducted extensive discovery by means of written interrogatories and deposition. Through this discovery, plaintiffs have been able to document fairly detailed histories of the Rancherias and their respective relationships with defendants up until the present. Based on this material, plaintiffs have prepared a memorandum in support of partial summary judgment on all issues except defendants' liability for money damages and various letters to the federal defendants.

Based upon this evidence, it is the opinion of the undersigned that the principal material factual assertions made in support of plaintiffs' motions for partial summary judgment are not likely to be subject to genuine dispute, and that these

facts, considered in light of the legal principles established in the unappealed final judgments in Knight v. Kleppe, supra, Duncan v. Andrus, supra, Daniels v. Andrus, supra, Smith v. U.S.A., supra, and Table Bluff Band v. Watt, supra, clearly entitle plaintiffs to the relief which they seek herein.  However, it also is the opinion of the undersigned that full and vigorous dispute of plaintiffs' legal contentions and factual claims could put at risk some of the most significant relief plaintiffs seek, and would certainly and substantially delay the receipt of any relief to which plaintiffs ultimately are held to be entitled. Substantial delays in entry of judgments awarding plaintiffs equitable relief could render the actual receipt of such relief uncertain, because of the possibility of federal budget cuts and policy changes.

   Recognizing that a prompt settlement would be mutually beneficial, the parties have pursued lengthy settlement negotiations.  After extensive, painstaking negotiations and consultations with their respective clients, counsel for the parties agreed upon the stipulations for entry of judgment which were filed on July 23, 1983, and which is before the court for approval.

   Under the settlement plaintiffs and the "class members" represented by them from seventeen (17) of the thirty-four (34) rancherias represented herein would receive the following relief:

   1)  Their status as Indians under the laws of the United States is confirmed;

   2)  Each Rancheria is to be listed in the Federal

///

Register as an Indian Tribal entity pursuant to 25 C.F.R. Part 83.6(b);

3) Any plaintiff(s) or the Indian successor(s) thereof who received fee title to an interest in a former trust allotment by reason of the distribution of Rancheria assets will be entitled to return said interest to trust status for the benefit of such Indian person(s) as the grantor may specify;

4) Within two years from the date judgment is entered, each plaintiff Band is entitled to convey its community-owned lands to the United States to be held in trust for the benefit of the Band or the Indians of the Rancheria, as the Band may specify;

5) Any plaintiff(s) or Indian heir(s), devisee(s) or successor(s) in interest thereof owning land within his/her/their Rancheria may elect to convey said land back to the United States to be held in trust for the Indian class member(s) or entity specified by the grantor(s);

6) The Secretary of the Interior shall facilitate the return of lands to trust status by providing reasonably necessary survey, title and recording assistance;

7) The distribution plans for both Rancherias would be of no further force and effect, and notice thereof would be published in the Federal Register; however, there would be no effect on vested rights created or conveyances authorized or effected thereunder, or on the rights of subsequent bona fide purchasers for value.

///

///

-8-

Class members from twelve (12) [1]/ of the remaining seventeen rancherias represented in this action would be dismissed from this action without prejudice to their right to refile another action or other actions on their behalf. No class member from these rancherias currently owns real property within the original rancheria boundaries. The property was either sold to non-Indians when the rancheria was terminated and the proceeds of these sales distributed to rancheria members in lieu of deeds to individual parcels of property or all of the property originally distributed was subsequently sold to non-Indians.

In either case the federal defendants are unwilling to re-assume responsibility for any of these rancherias without a final judicial determination of their obligation to do so. Plaintiffs attorneys do not concede that the sale of rancheria property precludes distributees from obtaining judicial relief for wrongful termination (in some cases these class members may have the most significant damages claims). However, plaintiffs believe that these rancherias do present unique considerations and that it does not make sense to delay relief for those rancherias upon which class members still reside, while the parties litigate these other issues. Accordingly, plaintiffs attorneys believe that it serves the interests of the entire class to severe these claims from those of the seventeen

---

1. Alexander Valley would have been the thirteenth rancheria in this category but by oversight was omitted from the stipulation for entry of judgment and notice of settlement to the class. The parties propose to file an supplemental stipulation after the Court approves the current one and to obtain approval after notice to class members from Alexander Valley.

rancherias and to dismiss those claims from this action without prejudice.

The other four (4) rancherias (Scotts Valley, Guideville, Graton and Auburn) were the subject of prior law suits. Plaintiffs attorneys were attorneys of record in these prior actions and the undersigned reviewed the stipulations and judgments in each of these cases prior to signing the stipulation for entry of judgment in this case. I am satisfied that those distributees from these rancherias who were parties to these prior actions and received benefits under judgments in these prior actions are precluded from further litigating the validity of the government's actions in terminating their rancherias under the California Rancheria Act. Some class members who were not parties to prior actions from Scotts Valley, Guideville and Graton rancherias will have the right under the proposed settlement in this action to file a new law suit, since their claims are dismissed without prejudice on the same terms as are the class members from the other twelve (12) rancherias. The action involving Auburn Rancheria was brought and settled as a class action and for that reason binds all distributees from that rancheria.

As to the seventeen (17) rancheria, in exchange for the prompt and certain granting of this equitable and declaratory relief without the risks, delays and ordinary uncertainties of litigation and possible appeals, plaintiffs' claims for money damages in these cases would be dismissed with prejudice and further actions arising out of the purported termination of the Rancherias would be foreclosed.

Having litigated to conclusion other major untermination cases, being presently involved in the litigation and/or appeal of the liability and damage aspects of such cases in the Court of Claims, the Court of Appeals and the district court, and having weighed the benefits of the proposed settlement against the potential risks and delays inherent in litigating this case to its conclusion, it is the opinion of the undersigned that approval of the settlement would be in the best interests of both the named plaintiffs and the class of persons represented by them.    This opinion is based upon the following considerations:

1.  Likelihood of Recovery and Adequacy of Settlement

Although it is a virtually certainty that plaintiffs would receive at least some equtiable relief (if only because defendants agree that provision of adequate water and sanitation facilities under §3 of the Rancheria Act is a condition precedent to lawful termination, and the Bureau of Indian Affairs and I.H.S. both have identified numerous rancherias receiving benefits under this settlement as among those at which §3 water and sanitation facilities were not adequately completed prior to distribution of Rancheria assets, see letter from Locke, dated Feb. 1, 1982, and letter from Rapport, dated March 3, 1983 (copies of which are attached hereto as Exhibit "A"), the nature and extent of the relief to which plaintiffs would be entitled is likely to be the subject of considerable dispute.  Based upon experience in other similar cases, the undersigned anticipates that defendants would be most likely to litigate to the fullest extent the nature of the status quo ante, and thus plaintiffs' right to have community lands returned to trust for the benefit

-11-

of specified Tribal entities, to have individual lands returned to trust status for named individual beneficiaries, and to receive B.I.A. assistance in returning lands to trust.

The undersigned believes that at least some plaintiffs and unnamed class members have sustained money damages as the direct result of wrongful termination, that such damages are susceptible to proof and that the United States should be held liable for such damages. However, individual class members with significant damage claims will have the right to exclude themselves from the settlement by giving notice to the Court. Plaintiffs' attorneys believe this protects the rights of those class members, while benefitting those others who believe that an immediate settlement outweighs uncertain, future damage awards. In addition to legal uncertainties, regarding liability (e.g., whether a particular rancheria was illegally terminated) some plaintiffs' claims for money damages could be subject to problems of proof and the passage of time.

In the opinion of the undersigned, the potential long-term value of the equitable relief to be granted to the Bands, individual plaintiffs and class members under the settlement stipulations in all probability will far exceed the money damages which might be recovered in these actions were they not to be settled, particularly where those who feel they have significant damages claims have the option not to participate in this settlement.

2.    Avoidance of Future Litigation and Other Problems

Unless this case is settled, trials may be necessary, and appeals almost certainly would follow, thus delaying receipt

-12-

of any meaningful relief for at least one, and possibly as many as three years. During that time, it is likely that some elderly plaintiffs and class members will pass away, and thus be denied the benefit of any relief eventually awarded. Additional delays will increase the tax liability of Indian landowners and the risk that lands may be lost. The transfer of interests in property by conveyance or inheritance also will be more complicated and costly. Also, during that time, plaintiffs not only would be denied access to many of the federal Indian services they desperately need, but also would run the risk that changes in federal policies might eliminate some of the services and benefits plaintiffs otherwise might have received.

In summary, the proposed settlement would immediately grant plaintiffs substantially all of the equitable relief they seek in their lawsuits, in exchange for dismissal with prejudice of damage claims which are subject to legal uncertainties and problems of proof, and may be of substantially less value over time than the equitable relief provided. Moreover, there can be no assurance that changes in federal Indian policy while this case is being litigated will not render equitable relief awarded several years from now much less valuable than that relief would be today.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

For all of these reasons, it is the opinion of the undersigned that the settlement set forth in the Stipulation for Entry of Judgment is fair, adequate and reasonable, and thus should be approved by the court.

DATED: 11/16/83

Respectfully submitted,

DAVID J. RAPPORT
LESTER J. MARSTON
CALIFORNIA INDIAN LEGAL SERVICES
Counsel for Plaintiffs

By: _____
DAVID J. RAPPORT



U.S. Department of Justice

*United States Attorney*
*Northern District of California*

---

Refer to:
  Land and Natural
  Resources Division
    #2073

16th Floor Federal Buiding- Box 36055
450 Golden Gate Avenue
San Francisco, California 94102

Branch Office:
675 N. First Street, Suite 508
San Jose, California 95112

February 1, 1982

Mr. David J. Rapport, Esq.
CALIFORNIA INDIAN LEGAL SERVICES
200 West Henry Street
P. O. Box 488
Ukiah, California  95482

Dear Mr. Rapport:

Re:  Tillie Hardwick, et al. v. U. S., et al.
     Civil No. C-79-1710 SW (N. D. Calif.)

Pursuant to our conversations and meeting of January 18, 1982, the Government is willing to discuss settlement of the following rancherias:

Chicken Ranch                 Potter Valley
Cloverdale                    Redwood Valley
Greenville ?                  Rohnerville ?
Mooretown ?                   Smith River
Picayune

We also invite your arguments in support of any additional rancherias that you believe should be included in settlement discussions with those listed above.

In addition, there are several other rancherias listed in the Complaint which are the subject of litigation in other proceedings. We believe that disposition of this classification of rancherias should also be discussed in our settlement conference.

Very truly yours,

JOSEPH P. RUSSONIELLO
United States Attorney

By:  *Paul E. Locke*

PAUL E. LOCKE
Assistant United States Attorney

PEL:nam
cc:  William M. Wirtz, Assistant Regional Solicitor, Department of
     the Interior, Sacramento, CA
     Duke McCloud, Attorney, Department of Health & Human Services,
     Rockville, MD

EXHIBIT "A"

PAGE 1 OF 15 PAGES

**EXHIBIT E**

1  DAVID J. RAPPORT
   LESTER J. MARSTON
2  California Indian Legal Services
   200 West Henry Street
3  Post Office Box 488
   Ukiah, California  95482
4  Telephone:  (707) 462-3825

5  Attorneys for Plaintiffs

6  JOSEPH P. RUSSONIELLO
   United States Attorney
7  RODNEY H. HAMBLIN
   Assistant United States Attorney
8  PAUL E. LOCKE
   Assistant United States Attorney
9  450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102
10 Telephone:  (415) 556-5134

11 Attorneys for Federal Defendants

12

13

14              IN THE UNITED STATES DISTRICT COURT

15           FOR THE NORTHERN DISTRICT OF CALIFORNIA

16 TILLIE HARDWICK, et al.,          )  No. C-79-1710-SW
                                     )
17            Plaintiffs.            )  STIPULATION FOR ENTRY
                                     )  OF JUDGMENT
18              v.                   )
                                     )
19 UNITED STATES OF AMERICA, et al., )
                                     )
20            Defendants.            )
                                     )

21

22         The parties to the above-entitled action, recognizing

23 the uncertainties in law and the burden of further litigation,

24 and in order to make mutually beneficial settlement of these

25 actions, subject to approval of the Court pursuant to Federal

26 Rules of Civil Procedure, Rule 23(c), stipulate that the Court

27 may enter judgment as follows:

28 / / / / / / / /

1.   That the seventeen Rancherias which are the subject of the provisions of paragraphs 2 through 13 inclusive, of this stipulation, are as follows:

Big Valley

Blue Lake

Buena Vista

Chicken Ranch

Cloverdale

Elk Valley

Greenville

Mooretown

North Fork

Picayune

Pinoleville

Potter Valley

Quartz Valley

Redding

Redwood Valley

Rohnerville

Smith River

These rancherias are more fully described in the attached Exhibit "A", which is incorporated herein by reference as though set forth in full.

2.   The Court shall certify a class consisting of all those persons who received any of the assets of the rancherias listed and described in paragraph 1 pursuant to the California

/ / / / / / /

-2-

1  Rancheria Act 1/ and any Indian heirs, legatees or successors in

2  interest of such persons with respect to any real property they

3  received as a result of the implementation of the California

4  Rancheria Act.

5       3.  The status of the named individual plaintiffs and

6  other class members of the seventeen rancherias named and

7  described in paragraph 1 as Indians under the laws of the United

8  States shall be restored and confirmed.  In restoring and

9  confirming their status as Indians, said class members shall be

10  relieved from the application of Sections 2(d) and 10(b) of the

11  California Rancheria Act and shall be deemed entitled to any of

12  the benefits or services provided or performed by the United States

13  for Indians because of their status as Indians, if otherwise quali-

14  fied under applicable laws and regulations.

15       4.  The Secretary of the Interior shall recognize the

16  Indian Tribes, Bands, Communities or groups of the seventeen

17  rancherias listed in paragraph 1 as Indian entities with the same

18  status as they possessed prior to distribution of the assets

19  of these Rancherias under the California Rancheria Act, and said

20  Tribes, Bands, Communities and groups shall be included on the

21  Bureau of Indian Affairs' Federal Register list of recognized

22  tribal entities pursuant to 25 CFR, Section 83.6(b). Said Tribes,

23  Bands, Communities or groups of Indians shall be relieved from

24  the application of section 11 of the California Rancheria Act and

25  shall be deemed entitled to any of the benefits or services

26  provided or performed by the United States for Indian Tribes,

27

28  1/  Act of August 18, 1958, P.L. 85-671, 72 Stat. 69, as
    amended by the Act of August 11, 1964, 78 Stat. 390.

1  Bands, Communities or groups because of their status as Indian

2  Tribes, Bands, Communities or groups.

3      5.  The Court shall not include in any judgment entered

4  pursuant to this stipulation any determination of whether or to

5  what extent the boundaries of the rancherias listed and described

6  in paragraph 1 shall be restored and shall retain jurisdiction to

7  resolve this issue in further proceedings herein.

8      6.  Any named individual plaintiff or class member who

9  received or presently owns fee title to an interest in any former

10  trust allotment by reason of the distribution of the assets of

11  any of the Rancherias listed in paragraph 1 shall be entitled to

12  elect to restore any such interest to trust status, to be held by

13  the United States for the benefit of such Indian person(s).

14      7.  Within two years of date of notice of this

15  judgment, as provided in paragraph 9, the Indian Tribes,

16  Bands, Communities or groups of the seventeen rancherias listed

17  in paragraph 1 that are recognized by the Secretary of the

18  Interior pursuant to paragraph 4 herein may arrange to convey

19  to the United States all community-owned lands within their

20  respective rancherias to which the United States issued fee

21  title in connection with or as the result of the distribution

22  of the assets of said rancherias, to be held in trust by the

23  United States for the benefit of said Tribes, Bands, Communities

24  or groups, authority for the acceptance of said conveyances

25  being vested in the Secretary of Interior under section 5 of

26  the Act of June 18, 1934, "The Indian Reorganization Act," 48

27  Stat. 985, 25 U.S.C. §465 as amended by section 203 of the

28  / / / / / / /

-4-

Indian Land Consolidation Act. Pub. L. 97-459, Title II, 96 Stat.

2515 and/or the equitable powers of this court.

8.  Any named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria, authority for the acceptance of said conveyances being vested in the Secretary of the Interior under section 5 of the Act of June 18, 1934, "The Indian Reorganization Act," 48 Stat. 985, 25 U.S.C. §465 as amended by section 203 of the Indian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat. 1512 and/or the equitable powers of this court.

9.  Upon entry of judgment herein the United States shall give personal mail notice to each individual plaintiff and other class members (to the extent such persons can be identified and located through the exercise of reasonable efforts) that said individuals may elect to return their lands to trust pursuant to the judgment entered pursuant to this stipulation.  Said notice shall advise that the Bureau of Indian Affairs will assist those individuals desiring to convey lands to the United States, including providing for forms and instructions.  In addition, the United States shall aid and assist class members in perfecting said conveyances by obtaining any necessary policies of title insurance or taking any other actions administratively required to complete such conveyances. Nothing in this Stipulation shall require the United States to provide funds for the payment of real property taxes which may have

//

accrued in the past or may accrue in the future with respect to lands located on any Rancheria as described in Exhibit A; provided, however, that this Stipulation does not represent a concession by any party hereto that any of said property is subject to real property taxes.

The United States shall also give general notice of the rights provided by this paragraph 9 by publishing notice once each week for one month in newspapers of general circulation most likely to be read by class members, and by posting notice in a conspicuous location on or near each of the seventeen rancherias named in paragraph 1.

10. The Secretary of the Interior, named individual plaintiffs, and other class members agree that the distribution plans for these Rancherias shall be of no further force and effect and shall not be further implemented; however, this provision shall not affect any vested rights created thereunder.

11. All claims whatsoever for money damages against the United States resulting from the distribution of the assets of the seventeen rancherias named in paragraph 1 under the Rancheria Act and arising out of the implementation of said Act shall be dismissed with prejudice, plaintiffs having specifically considered the potential value of said claims, the probability of the success thereof, and the value of the relief to be obtained under this settlement agreement.

12. For the purpose of resolving any disputes which arise among the parties in the course of implementing the judgment to be entered pursuant to this stipulation, or for extending the time

//

within which any act may or must be performed under this Stipulation,

2  the Court shall retain jurisdiction over this matter for a period

3  of two(2) years from entry of judgment, or for such longer time as

4  may be shown to be necessary on a duly-noticed motion by any party.

5       13.  Entry of judgment pursuant to this stipulation shall

6  constitute a final settlement of all claims which named plaintiffs

7  and plaintiff class members have or may have against the United

8  States and its officers and employees arising out of the implementa-

9  tion of the California Rancheria Act at the seventeen Rancherias

10  listed in paragraph 1.

11       14.  Except as hereafter specifically provided in paragraphs

12  15-19, the claims asserted in this action by or on behalf of any

3  persons who received any of the assets of the Graton, Scotts Valley,

14  Guideville, Strawberry Valley, Cache Creek, Paskenta, Ruffeys, Mark

15  West, Wilton, El Dorado, Chico or Mission Creek Rancherias are

16  dismissed without prejudice to their being refiled in another action

17  and defendants shall not assert any laches defense to any such

18  subsequent action they could not have asserted prior to the date

19  this action was filed.

20       15.  The claims of Ethel Whiterock, Minerva Pike, Jesse

21  Elliott, Nora Cooper and Irene Young who received assets from the

22  termination of the Guideville Rancheria under the California

23  Rancheria Act shall be dismissed on grounds of res judicata based

24  on the stipulation and judgment entered in Whiterock et al. v.

25  Udall, Fed. Dist. Ct. N.D. Cal. No. 50584 SAW.

26       16.  The claims of all the named and unnamed class members

represented in Taylor et al. v. Hickel, C-70-719 SAW (N.D. Cal.)

28  //

from the Auburn Rancheria shall be dismissed on grounds of res

2  judicata.

3  17.  The claims asserted in this action against the United

States on behalf of Frank Truvido and Gloria Truvido of Graton

4

5  Rancheria who were parties to Frank Truvido and Gloria Truvido

6  v. Morton, C-72-181 GBH (N.D. Cal.), shall be dismissed on grounds

7  of res judicata.

8  18.  The claims asserted in this action on behalf of Teresa

9  Boggs of the Scotts Valley Rancheria who was a party to Teresa Boggs

10  and Bessie Ray v. Rogers C.B. Morton, C-71-1714 RFP (N.D. Cal.),

11  shall be dismissed on the grounds of res judicata.

12  19.  The claims asserted in this action by any person who

received any of the assets of the Robinson or Table Bluff Rancherias

pursuant to the California Rancheria Act shall be dismissed from this

action since prior to filing of this action those persons had filed

15  independent actions in Duncan et al., v. Andrus, Fed. Dist. Ct.,

16  N.D. Cal. No's C-71-1572 WWS, C-71-1713 WWS and Duncan et al., v.

17  U.S., (Ct. Cls.) No 19-75 and Table Bluff Band et al., v. Andrus,

18  No. C-75-2525 WWS, which actions are still pending.

19

20  Dated: July 19, 1983          CALIFORNIA INDIAN LEGAL SERVICES

21

22          By: DAVID J. RAPPORT

23              Attorneys for Plaintiffs

24              JOSEPH P. RUSSONIELLO
                United States Attorney

.5  Dated: July 15, 1983

26

          By: PAUL E. LOCKE
              Assistant United States Attorney

28

EXHIBIT 3A

## RANCHERIA DESCRIPTIONS

### BIG VALLEY

The Big Valley Rancheria, 118.45 acres, is located on the south shore of Clear Lake near Finley in Lake County, California.

Tract 1: SE1/4NW1/4, NE1/4SW1/4 and Lot 3 (being the fractional NE1/4NW1/4), Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, California.

Tract 2: That portion of the SE1/4SW1/4 Section 29 and NE1/4NW1/4 Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, which is north of the United States Meander Line for Clear Lake and which is above the low water line of Clear Lake, subject to a flowage easement.

### BLUE LAKE

The Blue Lake Rancheria, 30.92 acres, is located adjacent to the city of Blue Lake, Humboldt County, California.

A tract of land situate in a portion of the SE1/4SW1/4 Section 19 and in a portion of the NE1/4NW1/4 Section 30, T. 6 N., R. 2 E., Humboldt Meridian and more particularly described in a Warranty Deed recorded in Volume 107 of Deeds, page 224 in the records of Humboldt County, California.

### BUENA VISTA

The Buena Vista Rancheria, 67.5 acres, is located in Amador County, California.

Commencing at the NE corner of Section 19, T. 5 N., R. 10 E., Mount Diablo Meridian, California, thence running west along section line 578 feet, thence at right angles south 5280 feet, thence at right angles east 578 feet, thence at right angles north 5280 feet to place of beginning.

### CHICKEN RANCH

The Chicken Ranch Rancheria, 40 acres, is located in Tuolumne County, California.

E1/2E1/2NE1/4 Section 20, T. 1 N., R. 14 E., Mount Diablo Meridian, California.

EXHIBIT A

## CLOVERDALE

The Cloverdale Rancheria, 27.50 acres, is located adjacent to and south of the town of Cloverdale, Sonoma County, California.

All these certain lots, pieces or parcels of land, situate, lying and being in the Township of Cloverdale, County of Sonoma, State of California, and bounded and particularly described as follows, to wit:  Beginning at a point in the center of the main public road leading from Cloverdale to Healdsburg and at the northwesterly corner of the land formerly owned by Louis Bee, which is an iron pipe two (2) inches in diameter, two (2) feet long, driven below the surface of the ground, from which a fir tree five (5) feet in diameter marked "R.M.", and known as station 8 on the Muscalacon Grant Line bears south 47° W., 39.38 chains distant; thence N. 47° 40' E., along the northerly line of the land formerly owned by Louis Bee, 49.25 chains; thence north 59° 15' W., 6.071/2 chains to the southerly line of the land of Helena M. Woolsey, thence S. 47° 28' W., along the southerly line of the land of Helena M. Woolsey, 46.68 chains to the center line of the hereinbefore mentioned public road; thence S. 34° 15' E., along the center line of said road 5.71 chains to the place of beginning, containing 27.50 acres. (Note – above area included Northwestern Pacific Railroad right of way.)

## ELK VALLEY

The Elk Valley Rancheria, 100 acres, is located near the town of Crescent City, Del Norte County, California.

SE1/4SE1/4, S1/2S1/2NE1/4SE1/4 Section 22; SW1/4SW1/4, S1/2S1/2NW1/4SW1/4 Section 23, T. 16 N., R. 1 W., Humboldt Meridian, California.

## GREENVILLE

The Greenville Rancheria, 275 acres, is located approximately three miles east of Greenville, Plumas County, California.

Parcel 1: N1/2 Lot 4, Section 5; N1/2 Lot 1, Section 6, T. 26 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 1A: SE1/4 Section 31, T. 17 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 2: Beginning at the S.E. corner of Plumas County Swamp and Overflowed Land Survey No. 37, N. 31 1/4° E., 3.72 chains from the 1/4 Section corner on the South line of Section 6, T. 26 N., R. 10 E., M.D.M., and running thence N.

72 1/2  W., 15.80 chains; thence N. 4  E., 42.00 chains, thence E. 2.06 chains, thence N. 14.03 chains; thence E. 7.97 chains to the North and South centerline of said Section 6; thence S. 23.85 chains to the center of said Section 6; thence E. 5.00 chains; thence S. 4 1/2  W., 36.88 chains to the place of beginning, containing 75 acres.

## MOORETOWN

The Mooretown Rancheria, 160 acres, is comprised of two parcels, one-half mile apart.  It is located in Butte County, California.

Parcel 1: N1/2NE1/4 Section 22 T. 20 N., R. 6 E., Mount Diablo Meridian, California.

Parcel 2: N/1/2NE1/4 Section 23, T. 20 N., R. 6 E., Mount Diablo Meridian, California.

## NORTH FORK

The North Fork Rancheria, 80 acres, is located about two miles from the town of North Fork, Madera County, California.

SE1/4NE1/4 Section 20, and SW1/4NW1/4 Section 21, T. 8 S., R. 23 E., Mount Diablo Meridian.

## PICAYUNE

The Picayune Rancheria, 80 acres, is located three miles south of Coarsegold in Madera County, California.

N1/2NE1/4 Section 29, T. 8 S., R. 21 E., Mount Diablo, Meridian.

## PINOLEVILLE

The Pinoleville Rancheria, 99.53 acres, is located in Mendocino County, California.

Tract 1: A portion of Lot 142 of Healey's Survey and Map of the Yokayo Rancho containing 3 acres and more particularly described in deed filed in Book 123 of Deeds, page 148, Recorder's Office, County of Mendocino.

Tract 2: A portion of Lots 141 and 142 of the Yokayo Rancho containing 96.53 acres and more particularly described in deed filed in Book 133 of Deeds, page 283, Recorder's Office, County of Mendocino.

EXHIBIT A

## POTTER VALLEY

The Potter Valley Rancheria, 96 acres, is located near the town of Potter Valley, Mendocino County, California.

Tract 1: A metes and bounds description in Section 19, T. 17 N., R. 11 W., Mount Diablo Meridian and more particularly described in Deed recorded in Book 116 of Deeds, Page 197, Mendocino County, containing 16 acres.

Tract 2: NW1/4SE1/4, SE1/4NW1/4 Section 35, T. 18 N., R. 12 W., Mount Diablo Meridian, containing 80 acres.

## QUARTZ VALLEY

The Quartz Valley Indian Reservation, 604 acres, is located in Siskiyou County, California.

Tract 1: NW1/4, W1/2SW1/4 Section 2, T. 43 N., R. 10 W., E1/2SE1/4 Section 3 and a fractional portion of the NE1/4NE1/4 Section 3, T. 43 N., R. 10 W., Mount Diablo Meridian, containing 364 acres.

Tract 2: E1/2SE1/4 Section 34 and SW1/4 Section 35, T. 44 N., R. 10 W., Mount Diablo Meridian, containing 240 acres.

## REDDING

The Redding Rancheria, 30.89 acres, is located south of Redding in Shasta County, California.

Tract No. 8 of the Anderson Valley Farms, situate, lying and being on the Rancho Buena Ventura or Reading Grant, in the County of Shasta, State of California.

## REDWOOD VALLEY

The Redwood Valley Rancheria, 80 acres, is located north of the town of Redwood Valley, Mendocino County, California.

NE1/4SW1/4, fractional part of SE1/4NW1/4 Section 32, T. 17 N., R. 12 W., Mount Diablo Meridian and fractional part of Lot 131 of Healey's Survey and Map of Yokayo Rancho.

## ROHNERVILLE

The Rohnerville Rancheria, 15.22 acres, is located near Fortuna, Humboldt County, California, and overlooks the village of Ronherville.

Tract 1: A parcel of land situate in the E1/2SE1/4 Section 1, T. 2 N., R. 1 W., Humboldt Meridian containing 15 acres and more particularly described in a deed recorded in Volume 116 of Deeds, page 93 in the records of Humboldt County, California.

Tract 2: Commencing at the NW corner of the above tract and running thence N. 37° 20' W. 215.5 feet; thence S. 10.6° feet; thence W. 40 feet; thence N. 60 feet; thence E. 40 feet; thence S. 37° 20' E. 277 feet; thence S. 89° W. 37.5 feet to place of beginning, containing 0.22 acres, together with a spring.

## SMITH RIVER

The Smith River Rancheria, 163.96 acres, and an unsurveyed island known as Prince Island, 14.25 acres, are located in Del Norte County, California.

Tract 1: Frac. W1/2, N1/2NW1/4NE1/4, NE1/4NE1/4 Section 17, T. 18 N., R. 1 W., Humboldt Meridian, California, containing 163.96 acres.

Tract 2: Unsurveyed island in the Pacific Ocean about 3/4 mile north of Smith River in Section 17, T. 18 N., R. 1 W., Humboldt Meridian, designated on the official plat of survey as Hunters Rock and on the U.S.C. & G. Chart No. 5900 as Prince Island, 14.25 acres.

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

I am a citizen of the United States, over the age of eighteen years, with my business address at 200 West Henry Street, Ukiah, California  95482, employed in the County of Mendocino and am not a party to the within action.

On the 20th day of  July, 1983 _____, I served the within:  Stipulation For Entry Of Judgment _____

_____

_____

on  Defendants _____ in said action, by placing a true copy thereof enclosed in a sealed envelope with the correct postage thereon fully prepaid in the United States post office mail box at Ukiah, California, addressed as follows:

| | | |
|---|---|---|
| Paul E. Locke<br>Asst. U.S. Attorney<br>P.O. Box 36055<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 | Robert L. Bridges<br>Deputy County Counsel<br>255 N. Forbes Street<br>Lakeport, CA 95453 | John C. Drummond<br>County Counsel<br>County of Mendocino<br>Courthouse, Rm. 304<br>Ukiah, CA 95482 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  July 20, 1983 _____ at Ukiah, California.

_Lisa Elgin_
LISA ELGIN

**EXHIBIT F**



WILTON RANCHERIA

T.6N., R.7E. M.D.M.    SACRAMENTO COUNTY

PROPOSED DISTRIBUTION

Proposed Road ———
Water lank  ✛
Fence  ——•——
Existing road ≈≈≈≈≈

**EXHIBIT G**

F I L E D

DEC 1 5 1983

WILLIAM L. WHITTAKER
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*98*

TILLE HARDWICK, et al.,            )
                                   )
                Plaintiffs,        )      No. C-79-1710-SW
                                   )
        vs.                        )      FINDINGS AND
                                   )      RECOMMENDATION
UNITED STATES OF AMERICA,          )
et al.,                            )
                                   )
                Defendants.        )
                                   )

This matter came on for hearing on December 14, 1983,
for a recommendation as to whether the district court
should approve the terms of a class action settlement
agreement and enter a stipulated judgment against the
United States.  David Rapport and George Foreman appeared
on behalf of the plaintiffs;  Paul Locke appeared for the
defendant United States.

This is a class action lawsuit to set aside the
termination of thirty-four California Indian Rancherias
under the California Rancheria Act (the Act) and to recover
damages for alleged violations of the Act and the federal

1  government's obligations as trustee.  On August 2, 1983,

2  the plaintiffs and the federal defendant filed a written

3  agreement compromising and settling certain claims of

4  the Indians against the United States.

5      Briefly, the settlement affects seventeen of the

6  thirty-four rancherias.  Under the terms of the proposed

7  stipulated judgment, Indian class members from the seventeen

8  affected rancherias would:

9      (1) have restored their individual status as Indians

10  under federal law;

11      (2) have restored their status as federally recognized

12  Indian Tribes, Bands, Communities or groups;

13      (3) have the right to convey to the United States

14  property they received when the rancherias were terminated,

15  to be held in trust for the benefit of the current owner

16  or owners or such other rancheria member as the owner or

17  owners shall designate;

18      (4) dismiss with prejudice claims for damages against

19  the United States.

20      Within two years of the judgment, the Indian Tribes,

21  Bands, Communities or groups of the seventeen affected

22  rancherias would have the right to convey to the United

23  States community-owned lands within the rancherias, to be

24  held in trust for the benefit of  the conveying Tribe,

25  Band, Community or group.

26      Class members from twelve other rancherias would

FINDINGS AND
RECOMMENDATION

-2-

1    dismiss without prejudice their claims.  Class members from

2    the five remaining rancherias, who settled their claims

3    against the United States in prior actions, would dismiss

4    with prejudice their actions.

5         On October 21, 1983, the district court approved the

6    notice to class members advising class members that they

7    could opt out of the class or submit written objections

8    to the proposed settlement on or before November 21, 1983.

9    The notice also advised class members of the December 14,

10   1983 hearing at which they could appear.

11        Approximately 40 class members appeared for the

12   December 14, 1983 hearing.  After David Rapport described

13   the terms of the settlement, the court afforded each class

14   member the opportunity to speak in support of or opposition

15   to the proposed settlement.

16        Six class members spoke:  Silvia (Green) White, William

17   Richards, Bertha Stewart, Jane Brown, Ed Sanderson and

18   Frank Hossler.  Four of them -- Ms. White, Ms. Stewart and

19   Mr. Richards of the Smith River Rancheria, and Ed Sanderson

20   of the Quartz Valley Rancheria -- favor trust status and

21   support the settlement, although Ms. White and Ms. Stewart

22   believe that additional land should be included in the

23   settlement.  Ms. White specifically objected to the exclusion

24   of two parcels used as a parsonage and church on the Smith

25   River Rancheria.  See generally White's Exhibit 1.

26        Ms. Brown of the Wilton Rancheria terminated her

FINDINGS AND
RECOMMENDATION                    -3-

statement when she was informed that Wilton is not included in the proposed settlement.  Mr. Hossler of the Smith River Rancheria was the only class member who did not endorse the overall settlement and he simply requested an additional thirty days to study the terms of the agreement.

Based on the materials presented to the court, having heard the arguments of counsel and the statements of the class plaintiffs, the undersigned recommends that the settlement agreement be approved by the district court and that judgment be entered in accordance with the stipulated judgment filed by the parties on August 2, 1983.


DATED: December 15, 1983

JOAN S. BRENNAN
United States Magistrate


FINDINGS AND
RECOMMENDATION

-4-