1  CHRISTINA V. KAZHE (BAR NO. 192158)
   JOHN NYHAN (BAR NO. 51257)
2  ROSE WECKENMANN (BAR NO. 248207)
   **FREDERICKS & PEEBLES LLP**
3  1001 Second Street
   Sacramento, California 95814
4  Telephone:    (916) 441-2700
   Facsimile:    (916) 441-2067
5  Email:        jnyhan@ndnlaw.com

6  Attorneys for Plaintiffs,
   WILTON MIWOK RANCHERIA,
7  ITS MEMBERS; and DOROTHY ANDREWS

**ORIGINAL FILED**

MAY 21 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8

9              **IN THE UNITED STATES DISTRICT COURT**

10             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11  WILTON MIWOK RANCHERIA, a formerly       Case No.    **C 07    02681**    PVT
    federally recognized Indian Tribe, ITS
12  MEMBERS and DOROTHY ANDREWS,             DECLARATION OF JOHN NYHAN IN
                                             SUPPORT OF PLAINTIFFS'
13                  Plaintiffs,              ADMINISTRATIVE MOTION TO
                                             CONSIDER WHETHER CASES SHOULD
14         v.                                BE RELATED

15  DIRK KEMPTHORNE, Secretary of the
    Department of the Interior; CARL J. ARTMAN,
16  Assistant Secretary for Indian Affairs of the
    United States Department of Interior; the
17  UNITED STATES DEPARTMENT OF THE
    INTERIOR; MICHAEL O. LEAVITT, Secretary
18  of the United States Department of Health and
    Human Services; the UNITED STATES
19  DEPARTMENT OF HEALTH AND HUMAN
    SERVICES,
20
                    Defendants.
21

22         I, JOHN NYHAN, declare as follows:

23         1.      I am a member of the Bar of this Court and Of Counsel with the law firm of Fredericks

24  & Peebles LLP, and one of the counsel representing the Plaintiffs in this action and submit this

25  Declaration inSsupport of Plaintiff's Administrative Motion to Consider Whether Cases Should be

26  Related.  I am informed of and believe the following, and if called upon I could and would competently

27  testify as follows:

28  ///

─────────────────────────────────────────────────────
DECLARATION OF JOHN NYHAN IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTION

2.      The Wilton Miwok Rancheria was established in 1934 and purportedly terminated in 1964 pursuant to the California Rancheria Act of 1958 (72 Stat. 619). 29 F.R. 13147. Following termination, the United States distributed tribal landholdings to the adult members of the Wilton Miwok Rancheria. *See* Plan of Distribution approved August 18, 1958 (a true and correct copy of the Plan is attached hereto as Exhibit A).

3.      Plaintiffs representing a class of distributees of the formerly federally recognized California Indian Tribes filed a Complaint for damages against the United States, its Department of the Interior and Department Officers and specific State of California County Tax Assessors, citing various federal statutes and common law causes of action in this Court captioned *Tillie Hardwick, et al. v. United States* (C-79-1710-SW) (N.D. Calif.) (hereinafter referred to as "*Hardwick*"). The lawsuit sought to undo the illegal termination of the Tribes pursuant to the California Rancheria Act, Public Law 85-671 of 1958, by restoration of the Tribes' federal status and restoration of their former Rancherias. Two subsequent amendments to the *Hardwick* Complaint were filed. The First Amended Complaint was filed in 1982, permitting the inclusion of additional counties as defendants and the Second Amended Complaint was filed in 1986, permitting certain newly reconstituted tribes to intervene in that action.

4.      On February 28, 1980, the distributees of the Wilton Miwok Rancheria were certified as members of the plaintiff class in *Hardwick*. The class consisted of all persons who received assets of the named rancherias pursuant to distribution plans prepared under the California Rancheria Act of 1958 or the Amended Rancheria Act of 1964, as well as their heirs and legatees, and all Indian successors in interest to the real property distributed under the Rancheria Act. *See* Order Re: Class Certification (Feb. 28, 1980), *Hardwick* (a true and correct copy of the Order is attached hereto as Exhibit B).

5.      A stipulated judgment that among other things, restored the status of certain members of the plaintiff class as Indians under the laws of the United States, was entered in 1983. *See* Order Approving Entry of Final Judgment in Action (Dec. 27, 1983), *Hardwick* (a true and correct copy of the Order is attached hereto as Exhibit C).

6.      Prior to entry of the stipulated judgment in *Hardwick*, the members of twelve rancherias, including the Wilton Miwok Rancheria, were dismissed from the plaintiff class. The Wilton Rancheria plaintiffs were dismissed on the erroneous premise that "[n]o class member currently owns property within the original rancheria boundaries." The Certificate of Counsel Re Hearing on Approval of Settlement of Class Actions (Nov. 16, 1983), *Hardwick*, page 9 (a true and correct copy of which is attached hereto as Exhibit D), states:

> Class members from twelve (12)[1] of the remaining seventeen rancherias represented in this action would be dismissed from this action without prejudice to their right to refile another action or other actions on their behalf. No class member from these rancherias currently owns real property within the original rancheria boundaries. The property was either sold to non-Indians when the rancheria was terminated and the proceeds of these sales distributed to rancheria members in lieu of deeds to individual parcels of property or all of the property originally distributed was subsequently sold to non-Indians.

> In either case the federal defendants are unwilling to re-assume responsibility for any of these rancherias without a final judicial determination of their obligation to do so. Plaintiffs attorneys do not concede that the sale of rancheria property precludes distributees from obtaining judicial relief for wrongful termination (in some cases these class members may have the most significant damages claims). However, plaintiffs believe that these rancherias do present unique considerations and that it does not make sense to delay relief for those rancherias upon which class members still reside, while the parties litigate these other issues. Accordingly, plaintiffs attorneys believe that it serves the interests of the entire class to severe these claims from those of the seventeen rancherias and to dismiss those claims from this action without prejudice.

> [fn1]    Alexander Valley would have been the thirteenth rancheria in this category but by oversight was omitted from the stipulation for entry of judgment and notice of settlement to the class. The parties propose to file a supplemental stipulation after the Court approves the current one and to obtain approval after notice to class members from Alexander Valley.

7.      It was mistakenly believed that at termination, the tribal members of these rancherias had either sold the rancheria property to non-Indians or distributed it to rancheria members who subsequently sold it to non-Indians. *See* Stipulation for Entry of Judgment (July 19, 1983), *Hardwick*, ¶ 14 (a true and correct copy of this Stipulation is attached hereto as Exhibit E). In any event, it was erroneously believed that the dismissed members of the plaintiff class no longer owned any of the property that made up the former rancherias. *See* Exhibit D, p. 9.

8.    In 1983, the remaining Plaintiffs and Defendant the United States reached a stipulated settlement in the *Hardwick* case. Paragraph 4 of the settlement states:

> "The Secretary of the Interior shall recognize the Indian Tribes, Bands, Communities, or groups of the seventeen rancherias listed in paragraph 1 as *Indian entities with the same status as they possessed prior to distribution of the assets of these rancherias under the California Rancheria Act,* and said Tribes, Bands, Communities and groups shall be included on the Bureau of Indian Affairs' Federal Register List of recognized tribal entities pursuant to 25 CFR, section 83.6(b). Said Tribes, Bands, Communities or groups of Indians shall be relieved from the application of the California Rancheria Act and shall be deemed entitled to any of the benefits or services provided or performed by the United States for Indian Tribes, Bands, Communities, or groups because of their status as Indian Tribes, Bands Communities or groups." (Emphasis Added.)

Paragraph 12 of the Stipulation for Entry of Judgment states that the United States District Court for the Northern District of California shall retain jurisdiction over the *Hardwick* case. Exhibit E, p. 6.

9.    Paragraph 14 of the Stipulated Judgment provides:

> "Except as hereafter specifically provided in paragraphs 15-19, the claims asserted in this action by or on behalf of any persons who received any of the assets of the . . . Wilton, . . . Rancherias are dismissed without prejudice to their being refilled in another action and defendants shall not assert any laches defense to any such subsequent action they could not have asserted prior to the date this action was filed." (*Id.*)

10.    In 1987, the County of Madera, one of the defendants in *Hardwick*, reached a settlement with representatives of the Picayune Rancheria of the Chukchansi Indians resolving disputes between those parties, referred to as the 1987 Stipulated Judgment. That Stipulated Judgment provided that this Court would retain jurisdiction of the case.

11.    On January 29, 2004, the County of Madera filed a motion in this Court captioned in the *Hardwick* case to enforce the 1987 Stipulated Judgment against the Picayune Rancheria of the Chukchansi Indians. (Hereinafter referred to as the Madera County Action) (*Tillie Hardwick v. United States of America,* U.S.D.C. Northern District of California No. C-79-1710-JF.) This action was assigned to the Honorable Jeremy Fogel. In its motion, the County alleged that the Picayune Rancheria of the Chukchansi Indians refused to comply with the 1987 Stipulated Judgment for the placement of fee lands into trust with the United States and, in the absence of the lands' placement into trust, were required to and had not paid *ad valorem* taxes as provided for in the 1987 Stipulated Judgment. After

due consideration, Judge Fogel dismissed these claims by order dated May 24, 2004, (entitled "Not for Citation") noting :

> "There is no question that the Court has continuing jurisdiction to resolve disputes arising from the stipulated judgments. The 1983 Stipulated Judgment expressly retained jurisdiction for "a period of two years from entry of judgment or for such longer time as may be shown to be necessary on a duly noticed motion by any party."

(a true and correct copy of the Court's Order, is attached hereto as Exhibit F.)

12.    In December of 2006, the Picayune Rancheria of the Chukchansi Indians filed an action captioned in the *Hardwick* case to enforce the 1987 *Hardwick* Stipulated Judgment before Judge Fogel. In denying the motion, Judge Fogel directed the Tribe to file a separate declaratory relief action and relate it to the *Hardwick* actions if the Tribe requested relief in the future. (A true and correct copy of this ruling filed on December 7, 2006, is attached hereto as Exhibit G.)

13.    The Picayune Rancheria of the Chukchansi Indians filed a Declaratory Relief Action against the County of Madera later in December of 2006 (hereinafter the PRCI action) and, in accordance with Judge Fogel's earlier directive, also filed an Administrative Motion to consider whether that case should be related to the *Hardwick* case. Judge Fogel granted that Motion by Order (entitled "Not for Citation") filed on December 14, 2006 (a true and correct copy of this Order is attached hereto as Exhibit H.) After the Court considered extensive briefs, heard arguments on January 28, 2007, and issued an order calling for additional briefing, the PRCI case was settled by Stipulation and Order entered on March 2, 2007. This order confirms this Court's retention of jurisdiction over matters relating to the *Hardwick* litigation. (A true and correct copy of this Order is attached hereto as Exhibit I.)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of May 2007, in Sacramento, California.

_____
John Nyhan

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

DECLARATION OF JOHN NYHAN IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTION

### Exhibits to Declaration of John Nyhan

A:    A Plan for Distribution of the Assets of the Wilton Rancheria, approved August 18, 1958.

B:    Order Re: Class Certification filed Feb. 28, 1980 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF.

C:    Order Approving Entry of Final Judgment in Action filed Dec. 27, 1983 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF.

D:    Certificate of Counsel Re: Hearing on Approval of Settlement of Class Actions, filed Nov. 17, 1983 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF.

E:    Stipulation for Entry of Judgment filed July 19, 1983 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF.

F:    Order Denying the Madera County Defendants' Motion for Enforcement of Judgment filed May 20, 2004 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF.

G:    Order Denying the Tribe's Motion for Enforcement of Judgment filed Dec. 7, 2006 in *Tillie Hardwick v. United States of America* U.S.D.C. Northern District of California No. C-79-1710-JF

H:    Order Relating Case filed Dec. 14, 2006 in *The Picayune Rancheria of the Chukchansi Indians v. County of Madera* U.S.D.C. Northern District of California No. C-06-7613 RMW (PVT)

I:    Stipulation re Settlement and Request for Continuing Jurisdiction, for Enforcement of Settlemetn Agreement; Order filed March 2, 2007 in *The Picayune Rancheria of the Chukchansi Indians v. County of Madera* U.S.D.C. Northern District of California No. C-06-7613 JF (PVT)

DECLARATION OF JOHN NYHAN IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTION

FREDERICKS &
PEEBLES, LLP
1001 SECOND ST.
SACRAMENTO, CA

**EXHIBIT A**

A PLAN FOR THE DISTRIBUTION OF THE ASSETS OF THE
WILTON RANCHERIA, ACCORDING TO THE PROVISIONS OF
PUBLIC LAW 85-671, ENACTED BY THE 85th CONGRESS,
APPROVED AUGUST 18, 1958

The Wilton Rancheria, 38 and 81/100 acres, is located north
of the Wilton Post Office and general store, about twenty-four miles
southeast of Sacramento, California, in Sacramento County.

The homesite area of the rancheria is located on high ground
which is also adaptable for home consumption gardens.  The northerly
portion of the rancheria is lower than the homesite area and is sub-
ject to flooding during years of abnormally high runoff.  A drainage
ditch divides the high ground from the low ground.

An improved county road runs along one side of the rancheria
with access to the Wilton Road directly in front of the rancheria. The
road which provides access to the residences does not meet minimum
specifications for Sacramento County and should be rebuilt.

The domestic water system is old and should be rehabilitated.
The cost of the development of the present water system has been placed
as a lien against the rancheria.

The outer boundaries of the rancherias have been surveyed and
iron pipes set at various reference points.  Interior surveys will be
required.

The rancheria is organized under Section 16 of the Indian
Reorganization Act of June 18, 1934, as the Me-Wuk Indian Community
of the Wilton Rancheria, California.   The constitution and by-laws

were approved January 16, 1936, and were subsequently amended on two different occasions. A charter was never issued to the group.

There are no Government-owned buildings on the rancheria.

There are no funds on deposit to the credit of the rancheria, either in an Individual Indian Money Account in the Area Office or in the United States Treasury.

The distributees listed in this plan are recognized as the only people of the rancheria who hold informal assignments and are entitled to share in the distribution of the property.

No minors will receive deeds in the distribution of the real estate and all adults participating are capable of handling their own affairs.

All distributees are fully advised of the opportunity to participate in the vocational training program afforded by the Bureau of Indian Affairs and no one has indicated any interest.

The Indians of the Wilton Rancheria desire termination of Federal trusteeship under the provisions of Public Law 85-671 and request that the Bureau of Indian Affairs undertake the following actions.

1. Provide assistance for the establishment of such legal entity as might be necessary to accept the conveyance of properties that are to be retained in common by the group.

2. Convey ownership of Lot No. 9 (area surrounding the water tank), Lot No. 12 (area to be set aside as a playground), and the water system to the distributees as owners-in-common or to a legal entity organized to accept them.

3. Make such surveys as are necessary to convey a merchantable and recordable title to each lot.

2

4. Rehabilitate the present domestic water system by replacing all leaky, defective water pipes and providing water connections to all occupied residences or other residences constructed or in the course of construction and more than fifty percent completed within a ninety (90) day period after approval of this plan by the Indians of the Wilton Rancheria.

5. Construct a road at the location shown on the attached map that will meet the minimum specifications of the Sacramento County Road Department and turn this road over to the County for operation and maintenance.

6. Cancel all reimbursable indebtedness owing to the United States on account of unpaid construction and/or operation and maintenance charges for water facilities.

2. 7. Furnish each distributee with the approximate value of his lot at the time of conveyance.

8. Revoke the constitution and by-laws of the Me-Wuk Indian Community of the Wilton Rancheria upon receipt of a financial statement from the group including a certificate that all the debts and obligations of the organization have been liquidated or adjusted and that all the assets of the organization have been or are simultaneously therewith conveyed to persons or corporations authorized to receive them.

9. Convey to individual Indians according to this plan, and the map attached hereto which is a part of this plan, unrestricted title to the following lands constituting the Wilton Rancheria,

3

subject to existing rights-of-way, easements or leases.

Lots 615, 616 and 617 of Central California Traction

Unit No. 7, according to the official plat thereof

filed in the Office of the Recorder of Sacramento

County, California, on May 11, 1912, in Book 13

of Maps, Map No. 20.

Title will also include such mineral and water rights as are

now vested in the United States.

The distributees who will receive title to particular lots and
the dependent members of their immediate families are:

| NAME | LOT NO. | RELATIONSHIP | BIRTHDATE | ADDRESS |
|------|---------|--------------|-----------|---------|
| Jane Brown | 1 | Distributee | 9-20-1922 | General Delivery Wilton, California |
| Donald L. Brown | | Son | 1-04-1949 | Same |
| Debra E. Brown | | Daughter | 2-17-1954 | Same |
| Archie G. Williams | 2 | Distributee | 10-08-1907 | General Delivery Wilton, California |
| Edith G. Williams | | Wife | 1-18-1912 | Same |
| Mildred Williams | | Daughter | 3-23-1941 | Same |
| Jerome J. Williams | | Son | 5-20-1942 | Same |
| Alfred E. Williams | | Son | 6-15-1943 | Same |
| Wilson R. Williams | | Son | 3-12-1945 | Same |
| Carol Mae Williams | | Daughter | 5-07-1946 | Same |
| Silvia Williams | | Daughter | 5-30-1947 | Same |
| Joanna Francis Williams | | Daughter | 11-13-1950 | Same |
| Eva Irish | 3 | Distributee | 1-28-1893 | General Delivery Wilton, California |
| Dorothy Andrews | 4 | Distributee | 8-16-1930 | 5734 Mascot Avenue Sacramento, California |
| Jacqueline V. Andrews | | Daughter | 2-02-1950 | Same |
| Anita D. Andrews | | Daughter | 7-01-1953 | Same |
| Beverly G. Andrews | | Daughter | 4-19-1955 | Same |
| Lawrence C. Andrews | | Son | 1-24-1951 | Same |

4

| NAME | LOT NO. | RELATIONSHIP | BIRTHDATE | ADDRESS |
|------|---------|--------------|-----------|---------|
| Ella Taylor | 5 | Distributee | 4-15-1888 | General Delivery Wilton, California |
| Annie McKean | 6 | Distributee | 7-04-1882 | General Delivery Wilton, California |
| John McKean | 7 | Distributee | 6-21-1916 | General Delivery Wilton, California |
| Ada Madrigal | 8 | Distributee | 4-15-1888 | General Delivery Wilton, California |
| Community Property 9 | | | | |
| Gertrude Dupree | 10 | Distributee | 2-09-1892 | General Delivery Wilton, California |
| Charles McKean,Jr. | 11 | Distributee | 12-06-1904 | P. O. Box 167 Wilton, California |
| Bertha McKean | | Wife | 2-28-1914 | Same |
| Paul J. McKean | | Son | 7-24-1942 | Same |
| Lloyd J. McKean | | Son | 5-19-1944 | Same |
| Billie W. Daniels | | Stepson | 12-24-1942 | Same |
| Jimmie E. Daniels | | Stepson | 8-28-1944 | Same |
| Richard A. Daniels | | Stepson | 9-08-1945 | Same |
| Community Property 12 | | | | |
| Virgie Hatch | 13 | Distributee | 10-03-1901 | P. O. Box 84 Wilton, California |

Upon approval of this plan or a revision thereof by the Secretary of the Interior and acceptance thereof by a majority of the adult Indian distributees, as provided in Section 2(b) of Public Law 85-671, the distributees and the dependent members of their immediate families listed in this plan shall be the final list of Indians entitled to participate in the distribution of the assets of the Wilton Rancheria, and the rights or beneficial interests in the property of each person whose name appears in this list shall constitute vested property which

5

may be inherited or bequeathed but shall otherwise be subject to alienation or encumbrance before the transfer of title to such property.

After the assets of the Wilton Rancheria have been distributed pursuant to this plan and Public Law 85-671, the Indians who receive any part of such assets and the dependent members of their immediate families shall thereafter not be entitled to any of the services performed by the United States for those persons because of their status as Indians. All statutes of the United States which affect Indians because of their status as Indians shall not apply to them and the laws of the several states shall apply to them in the same manner as they apply to other citizens or persons within their jurisdiction. Nothing in this plan, however, shall affect the status of such persons as citizens of the United States.

All provisions of Public Law 85-671 shall be applicable in the execution of this plan and general notice of the contents shall be given by posting a copy of this plan in the post office at Wilton, Sacramento County, California, by posting a copy in a prominent place on the Wilton Rancheria, by mailing a copy to the head of each individual family participating in this plan and by mailing a copy to any person who advises the Sacramento Area Office that he feels that he may have a material interest in the plan.

This plan was prepared by the Area Director, Bureau of Indian Affairs, Sacramento Area Office, pursuant to the authority delegated on February 26, 1959, and after consultation with the Indians of the Wilton Rancheria.

Approved, with authority retained
to revise or change if appeals are
received within 30 days after gen-
eral notice to this plan is given.

H. REX LEE
Acting Commissioner

Date      July 6, 1959

GENERAL NOTICE

Date JUL 1 4 1959

Posted herewith is a Plan for the Distribution of the

Assets of the        WILTON RANCHERIA

according to the provisions of Public Law 85-671, approved August 18, 1958.

Public Law 85-671 provides that General Notice shall be given of the contents of any plan prepared pursuant to the provisions of this law.

Any Indian who feels that he is unfairly treated in the proposed distribution of the property shall present his views and arguments in writing to the Secretary of the Interior within thirty (30) days after the date of the posting of this general notice. Such protest, stating fully the reasons why he thinks he is being unfairly treated, shall be mailed to the Area Director, Sacramento Area Office, Federal Building, Post Office Box 749, Sacramento 4, California, who will promptly forward it to the Secretary of the Interior. After the protest has been considered by the Secretary, this plan, or a revision thereof, shall be submitted for the approval of the adult Indians who will participate in the distribution of the property, and if the plan is approved by a majority of such Indians who vote in an election called for that purpose by the Area Director of the Sacramento Area Office, the plan will be carried out.

If the law is not fully understood by any participating members, they should immediately contact the Sacramento Area Office, Sacramento, California.

**EXHIBIT B**

FILED

FEB 20  11 41 AM '80

WILLIAM L. WHITTAKER
CLERK
U. S. DISTRICT COURT
NO. DIST. OF CA.

52

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TILLIE HARDWICK, et al.,           )    NO. C-79-1710-SW
                                   )
                Plaintiffs,        )    ORDER RE: CLASS
                                   )    CERTIFICATION
v.                                 )
                                   )
UNITED STATES OF AMERICA,          )
et al.,                            )
                                   )
                Defendants.        )
_____)

        , Plaintiffs' motion for certification of a plaintiff
and defendant class in the above-entitled action came on
regularly for hearing in the above-entitled Court on February 11,
1980, at 11:00 a.m..

        California Indian Legal Services appeared by David
Rapport for the plaintiffs. Assistant United States Attorney
Paul M. Locke appeared for the federal defendants. The Lake
County Counsel's Office by Robert L. Bridges, Deputy County
Counsel, appeared for defendant Cora L. Taylor, Tax Collector of
Lake County. The Law Offices of Ronald E. Hothem by Julie A.
Torres, appeared as counsel for the Mendocino County defendant.

        The Court, having considered the written and oral
arguments of counsel and the pleadings and evidence submitted
in this action, and good cause appearing therefor

        NOW HEREBY ORDERS:

        1.  Plaintiffs action is certified to proceed as a

Copies mailed to parties
    of Record

class action under Fed. ___ Civ. P. 23(a) and 23(b)(2) for the
purpose of det___ ___ the federal defendants' liability to the
class. The plaintiff class consists of all those persons who
___ any of the assets of the following California Indian
rancherias pursuant to distribution plans purportedly prepared
under the California Rancheria Act, Act of August 18, 1958 (72
Stat. 619), or as amended by the Act of August 11, 1964 (78
Stat. 390), any heirs or legatees of such persons and any Indian
successors in interest to real property so distributed:

| | |
|---|---|
| Alexander Valley | Mission Creek |
| Auburn | Mooretown |
| Big Valley | Nevada City |
| Blue Lake | North Fork |
| Buena Vista | Paskenta |
| Cache Creek | Picayune |
| Chico | Pinoleville |
| Chicken Ranch | Potter Valley |
| Cloverdale | Quartz Valley |
| El Dorado | Redding (Clear Creek) |
| Elk Valley | Redwood Valley |
| Graton | Rohnerville |
| Greenville | Ruffeys |
| Guidiville | Scotts Valley |
| Indian Ranch | Smith River |
| Lytton | Strawberry Valley |
| More West | Wilson |

action impractical within the meaning of Fed. R. Civ. Rule

23(a)(1).

DATED: FEB 27 1980

THE HONORABLE SPENCER WILLIAMS
JUDGE of the U.S. District
Court For The Northern District
Of California.
MSK

-3-

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TILLIE HARDWICK, et al.,

          Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

          Defendants

C 79-1710SW

ORDER APPROVING ENTRY OF
FINAL JUDGMENT IN ACTION

## ORDER

Upon review of the stipulation of parties for entry of judgment in the underlying action, as well as the Findings and Recommendations of Magistrate Joan Brennan based upon a public hearing on the proposed settlement on December 15, 1983, IT IS HEREBY ORDERED that judgment be entered for PLAINTIFFS, according to the terms of the stipulation filed by the parties on August 2, 1983.

IT IS SO ORDERED.

DATED:

_____
UNITED STATES DISTRICT JUDGE

ENTERED IN CIVIL DOCKET  12/27/19 88

**EXHIBIT D**

DAVID J. RAPPORT
LESTER J. MARSTON
CALIFORNIA INDIAN LEGAL SERVICES
200 West Henry Street
Post Office Box 488
Ukiah, California 95482
Telephone: (707) 462-3825

Attorneys for Plaintiffs

FILED

Nov 17  11 32 AM '03

WILLIAM L. WHITTAKER
CLERK
U.S. DISTRICT COURT
NO. D. ST. ?) - CA

96

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TILLIE HARDWICK, et al., | No. C-79-1710-SW |
| Plaintiffs, | CERTIFICATE OF COUNSEL RE: HEARING ON APPROVAL OF SETTLEMENT OF CLASS ACTIONS |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

David Rapport, attorney of record for plaintiffs

herein, hereby certifies as follows:

I am an attorney in the employ of California Indian

Legal Services (C.I.L.S.), a California non-profit corporation

receiving a grant from the Legal Services Corporation for

provision of legal services to indigent California Indians.  One

-1-

of the principal activities of C.I.L.S., since its establishment in 1968 has been representing Indian victims of the disastrous federal policy of "termination" embodied in the California Rancheria Act of 1958, 72 Stat. 390, in vindicating their rights. When this action was filed in 1979, C.I.L.S. already was litigating or had litigated (in 15 different lawsuits) the validity of the implementation of the California Rancheria Act at nine specific Rancherias. Among those cases have been Kelly v. U.S. Dep't. of the Interior, 339 F. Supp. 1095 (E.D. Calif., 1976); Duncan v. Andrus, 517 F. Supp. 1 (N.D. Calif., 1977); Smith v. U.S.A., 515 F. Supp. 56 (N.D. Calif., 1978); Duncan v. U.S.A. (Duncan I), 597 F.ed 1337 (Ct. Cl., 1979), vacated and remanded sub nomine U.S.A. v. Duncan, 446 U.S. 903 (1980); Duncan v. U.S.A. (Duncan II), 667 F.2d 36 (Ct. Cl., 1981), cert. pending; Taylor v. Hearne, 637 F.2d 689, (9th Cir., 1981), cert. den., 454 U.S. 851; Upper Lake Pomo Ass'n. v. Watt, No. C-75-0181 SW (N.D. Calif.; Partial Summary Judgment entered in May, 1979); Table Bluff Band v. Watt, 532 F. Supp. 255 (N.D. Calif., 1981), appeal on damages pending.

At present, C.I.L.S. is litigating the damage claims of the people of the Robinson Rancheria in the Court of Claims (Duncan v. U.S.A., supra), and similar claims of the people of the Upper Lake and Table Bluff Rancherias before, respectively, the Northern District of California and the Ninth Circuit Court of Appeal.

The basic legal issues in these cases are (1) the nature and extent of the obligations of the United Staes and the rights of plaintiffs as Rancheria Indians under the trust

-2-

1    relationship which exists between the United States and

2    plaintiffs under the Rancheria Act and under the respective

3    Rancheria distribution plans, and (2) the nature and scope of the

4    relief to which plaintiffs would be entitled upon a showing that

5    federal defendants breached those obligations in implementing the

6    Rancheria Act at the rancherias represented in this action.

7         The essence of plaintiffs' legal claims is as follows:

8         1) both the trust relationship and the Rancheria Act

9    imposed upon the United States the legal obligation to provide

10   the Indians of the Rancherias subject to the Act with:

11        (a) sufficient accurate information upon which to

12   base an informed decision about whether or not to accept

13   termination under the Rancheria Act; and

14        (b) through, among other things, the promulgation

15   of regulations imposing standards on the provision of

16   improvements under the Rancheria Act that assured that all

17   improvements would meet applicable state and county legal

18   requirements, to ensure that the distribution plans prepared

19   under the Act -- as promulgated, approved and implemented --

20   fairly and adequately provided for the reasonable needs of the

21   people of the Rancherias for water and sanitation facilities and

22   other improvements, benefits and services necessary to enable

23   them successfully to assimilate into the surrounding non-Indian

24   community;

25        2) the disbtibution plans constituted binding contracts

26   under which the United States bound itself to provide adequate

27   water, sanitation and other improvements, benefits and services

28   to the people of the Rancherias in exchange for the termination

-3-

of plaintiffs' special Indian status under the trust relationship
between plaintiffs and the United States, and the termination of
the trust and Indian country status of the lands of the
Rancherias;

3) federal defendants' breach of fiduciary, statutory
and/or contractual obligations would entitle plaintiffs to relief
which would include restoration of their Tribal and personal
status as Indians, restoration of the Indian country status of
the rancherias, the right to restore Rancheria lands to federal
trust status for the benefit of persons or entities designated by
plaintiff landowners, the right to participate in federal
benefits, services and programs provided especially to Indians,
and money damages for losses proximately caused by the premature,
unauthorized or otherwise unlawful implementation of the
Rancheria Act.

Plaintiffs' basic factual contentions are that federal
defendants did not provide plaintiffs with sufficient accurate
information upon which to base informed decisions about whether
or not to accept termination; that by failing to adopt proper
standards and otherwise, federal defendants failed to ensure that
the distribution plans -- either as approved or as implemented --
for the Rancherias represented herein adequately provided for the
reasonable needs of all of the Rancherias' people; and thus that
the distributions of Rancheria assets and the concomitant
termination of plaintiffs' Indians rights and status were not
validly effected pursuant to, as authorized by, in accordance
with or under the provisions of the Rancheria Act.

Because proceedings were deferred pending the outcome

of settlement negotiations, plaintiffs have not moved for summary judgment and defendants have not yet responded to any such motion.    However, based upon defendants' answers in this case and the positions taken by federal defendants in other untermination cases, plaintiffs anticipate that were these cases to proceed further, defendants' legal contentions probably would be that except as provided in the Rancheria Act, plaintiffs lacked vested or other interests in Rancheria lands; that there has been no government-to-government relationship between plaintiff Bands and the United States; that the general trust relationship between the United States and Indians did not impose any specific obligations upon federal defendants in implementing the Rancheria Act; that the Rancheria Act vested the federal agencies involved with broad discretion in promulgating, approving and implementing distribution plans thereunder; that distribution plans were and are not binding contracts; that while a distribution of Rancheria assets which is not preceded by provision of adequate services under §3 of the Rancheria Act does not terminate the Indian status of distributees and dependents, any declaratory and/or equitable relief for violation of federal trust or statutory obligations in the course of implementing the Rancheria Act should be limited to restoring plaintiffs to their former status as Indians and enabling Indian landowners to elect to return their lands to exactly the same status as existed prior to approval of the distribution plan -- i.e., ownership by the United States without specification of a trust beneficiary; and that money damages are not recoverable against the United States for any losses which plaintiffs may have suffered by reason of the

-5-

premature or otherwise unlawful implementation of the Rancheria Act, because the United States neither has waived its immunity to suit nor has any federal statute or regulation created a cause of action for money damages cognizable under the Tucker Act, 28 U.S.C. §1346(b).

Plaintiffs anticipate that defendants' factual contentions would be that the United States provided Rancherias with sufficient accurate information upon which to base their respective decisions to accept termination; that the distribution plans adequately provided for the needs of the people of the Rancherias; that the facilities, benefits and services actually provided to the Rancherias by the United States adequately met the reasonable needs of the recipients; and that plaintiffs sustained no compensable losses by reason of the distribution of Rancheria assets.

Prior to filing motions for partial summary judgment, plaintiffs in both cases conducted extensive discovery by means of written interrogatories and deposition. Through this discovery, plaintiffs have been able to document fairly detailed histories of the Rancherias and their respective relationships with defendants up until the present. Based on this material, plaintiffs have prepared a memorandum in support of partial summary judgment on all issues except defendants' liability for money damages and various letters to the federal defendants.

Based upon this evidence, it is the opinion of the undersigned that the principal material factual assertions made in support of plaintiffs' motions for partial summary judgment are not likely to be subject to genuine dispute, and that these

facts, considered in light of the legal principles established in the unappealed final judgments in Knight v. Kleppe, supra, Duncan v. Andrus, supra, Daniels v. Andrus, supra, Smith v. U.S.A., supra, and Table Bluff Band v. Watt, supra, clearly entitle plaintiffs to the relief which they seek herein. However, it also is the opinion of the undersigned that full and vigorous dispute of plaintiffs' legal contentions and factual claims could put at risk some of the most significant relief plaintiffs seek, and would certainly and substantially delay the receipt of any relief to which plaintiffs ultimately are held to be entitled. Substantial delays in entry of judgments awarding plaintiffs equitable relief could render the actual receipt of such relief uncertain, because of the possibility of federal budget cuts and policy changes.

Recognizing that a prompt settlement would be mutually beneficial, the parties have pursued lengthy settlement negotiations. After extensive, painstaking negotiations and consultations with their respective clients, counsel for the parties agreed upon the stipulations for entry of judgment which were filed on July 23, 1983, and which is before the court for approval.

Under the settlement plaintiffs and the "class members" represented by them from seventeen (17) of the thirty-four (34) rancheris represented herein would receive the following relief:

    1)  Their status as Indians under the laws of the United States is confirmed;

    2)  Each Rancheria is to be listed in the Federal

///

Register as an Indian Tribal entity pursuant to 25 C.F.R. Part 83.6(b);

3)  Any plaintiff(s) or the Indian successor(s) thereof who received fee title to an interest in a former trust allotment by reason of the distribution of Rancheria assets will be entitled to return said interest to trust status for the benefit of such Indian person(s) as the grantor may specify;

4)  Within two years from the date judgment is entered, each plaintiff Band is entitled to convey its community-owned lands to the United States to be held in trust for the benefit of the Band or the Indians of the Rancheria, as the Band may specify;

5)  Any plaintiff(s) or Indian heir(s), devisee(s) or successor(s) in interest thereof owning land within his/her/their Rancheria may elect to convey said land back to the United States to be held in trust for the Indian class member(s) or entity specified by the grantor(s);

6)  The Secretary of the Interior shall facilitate the return of lands to trust status by providing reasonably necessary survey, title and recording assistance;

7)  The distribution plans for both Rancherias would be of no further force and effect, and notice thereof would be published in the Federal Register; however, there would be no effect on vested rights created or conveyances authorized or effected thereunder, or on the rights of subsequent bona fide purchasers for value.

///

///

Class members from twelve (12) [1] of the remaining seventeen rancherias represented in this action would be dismissed from this action without prejudice to their right to refile another action or other actions on their behalf.  No class member from these rancherias currently owns real property within the original rancheria boundaries.  The property was either sold to non-Indians when the rancheria was terminated and the proceeds of these sales distributed to rancheria members in lieu of deeds to individual parcels of property or all of the property originally distributed was subsequently sold to non-Indians.

In either case the federal defendants are unwilling to re-assume responsibility for any of these rancherias without a final judicial determination of their obligation to do so. Plaintiffs attorneys do not concede that the sale of rancheria property precludes distributees from obtaining judicial relief for wrongful termination (in some cases these class members may have the most significant damages claims).  However, plaintiffs believe that these rancherias do present unique considerations and that it does not make sense to delay relief for those rancherias upon which class members still reside, while the parties litigate these other issues.  Accordingly, plaintiffs attorneys believe that it serves the interests of the entire class to severe these claims from those of the seventeen

1.  Alexander Valley would have been the thirteenth rancheria in this category but by oversight was omitted from the stipulation for entry of judgment and notice of settlement to the class. The parties propose to file an supplemental stipulation after the Court approves the current one and to obtain approval after notice to class members from Alexander Valley.

1    rancherias and to dismiss those claims from this action without

2    prejudice.

3            The other four (4) rancherias (Scotts Valley,

4    Guideville, Graton and Auburn) were the subject of prior law

5    suits.  Plaintiffs attorneys were attorneys of record in these

6    prior actions and the undersigned reviewed the stipulations and

7    judgments in each of these cases prior to signing the stipulation

8    for entry of judgment in this case.  I am satisfied that those

9    distributees from these rancherias who were parties to these

10   prior actions and received benefits under judgments in these

11   prior actions are precluded from further litigating the validity

12   of the government's actions in terminating their rancherias under

13   the California Rancheria Act.  Some class members who were not

14   parties to prior actions from Scotts Valley, Guideville and

15   Graton rancherias will have the right under the proposed

16   settlement in this action to file a new law suit, since their

17   claims are dismissed without prejudice on the same terms as are

18   the class members from the other twelve (12) rancherias.  The

19   action involving Auburn Rancheria was brought and settled as a

20   class action and for that reason binds all distributees from that

21   rancheria.

22            As to the seventeen (17) rancheria, in exchange for the

23   prompt and certain granting of this equitable and declaratory

24   relief without the risks, delays and ordinary uncertainties of

25   litigation and possible appeals, plaintiffs' claims for money

26   damages in these cases would be dismissed with prejudice and

27   further actions arising out of the purported termination of the

28   Rancherias would be foreclosed.

Having litigated to conclusion other major untermination cases, being presently involved in the litigation and/or appeal of the liability and damage aspects of such cases in the Court of Claims, the Court of Appeals and the district court, and having weighed the benefits of the proposed settlement against the potential risks and delays inherent in litigating this case to its conclusion, it is the opinion of the undersigned that approval of the settlement would be in the best interests of both the named plaintiffs and the class of persons represented by them. This opinion is based upon the following considerations:

1. <u>Likelihood of Recovery and Adequacy of Settlement</u>

Although it is a virtually certainty that plaintiffs would receive at least some equtiable relief (if only because defendants agree that provision of adequate water and sanitation facilities under §3 of the Rancheria Act is a condition precedent to lawful termination, and the Bureau of Indian Affairs and I.H.S. both have identified numerous rancherias receiving benefits under this settlement as among those at which §3 water and sanitation facilities were not adequately completed prior to distribution of Rancheria assets, see letter from Locke, dated Feb. 1, 1982, and letter from Rapport, dated March 3, 1983 (copies of which are attached hereto as Exhibit "A"), the nature and extent of the relief to which plaintiffs would be entitled is likely to be the subject of considerable dispute. Based upon experience in other similar cases, the undersigned anticipates that defendants would be most likely to litigate to the fullest extent the nature of the <u>status quo ante</u>, and thus plaintiffs' right to have community lands returned to trust for the benefit

-11-

of specified Tribal entities, to have individual lands returned to trust status for named individual beneficiaries, and to receive B.I.A. assistance in returning lands to trust.

The undersigned believes that at least some plaintiffs and unnamed class members have sustained money damages as the direct result of wrongful termination, that such damages are susceptible to proof and that the United States should be held liable for such damages.  However, individual class members with significant damage claims will have the right to exclude themselves from the settlement by giving notice to the Court. Plaintiffs' attorneys believe this protects the rights of those class members, while benefitting those others who believe that an immediate settlement  outweighs uncertain, future damage awards. In addition to legal uncertainties, regarding liability (e.g., whether a particular rancheria was illegally terminated) some plaintiffs' claims for money damages could be subject to problems of proof and the passage of time.

In the opinion of the undersigned, the potential long-term value of the equitable relief to be granted to the Bands, individual plaintiffs and class members under the settlement stipulations in all probability will far exceed the money damages which might be recovered in these actions were they not to be settled, particularly where those who feel they have significant damages claims have the option not to participate in this settlement.

2.  Avoidance of Future Litigation and Other Problems

Unless this case is settled, trials may be necessary, and appeals almost certainly would follow, thus delaying receipt

of any meaningful relief for at least one, and possibly as many as three years. During that time, it is likely that some elderly plaintiffs and class members will pass away, and thus be denied the benefit of any relief eventually awarded. Additional delays will increase the tax liability of Indian landowners and the risk that lands may be lost. The transfer of interests in property by conveyance or inheritance also will be more complicated and costly. Also, during that time, plaintiffs not only would be denied access to many of the federal Indian services they desperately need, but also would run the risk that changes in federal policies might eliminate some of the services and benefits plaintiffs otherwise might have received.

In summary, the proposed settlement would immediately grant plaintiffs substantially all of the equitable relief they seek in their lawsuits, in exchange for dismissal with prejudice of damage claims which are subject to legal uncertainties and problems of proof, and may be of substantially less value over time than the equitable relief provided. Moreover, there can be no assurance that changes in federal Indian policy while this case is being litigated will not render equitable relief awarded several years from now much less valuable than that relief would be today.

///

///

///

///

///

///

For all of these reasons, it is the opinion of the undersigned that the settlement set forth in the Stipulation for Entry of Judgment is fair, adequate and reasonable, and thus should be approved by the court.

DATED: 11/16/83

Respectfully submitted,

DAVID J. RAPPORT
LESTER J. MARSTON
CALIFORNIA INDIAN LEGAL SERVICES
Counsel for Plaintiffs

By: _____
DAVID J. RAPPORT



U.S. Department Justice

*United States Attorney*
*Northern District of California*

Refer to:
  Land and Natural
  Resources Division
  #2073

16th Floor Federal Buiding- Box 36055
450 Golden Gate Avenue
San Francisco, California 94102

*Branch Office:*
675 N. First Street, Suite 508
San Jose, California 95112

February 1, 1982

Mr. David J. Rapport, Esq.
CALIFORNIA INDIAN LEGAL SERVICES
200 West Henry Street
P. O. Box 488
Ukiah, California  95482

Dear Mr. Rapport:

          Re:  Tillie Hardwick, et al. v. U. S., et al.
               Civil No. C-79-1710 SW (N. D. Calif.)

          Pursuant to our conversations and meeting of January 18,
1982, the Government is willing to discuss settlement of the follow-
ing rancherias:

          Chicken Ranch             Potter Valley
          Cloverdale                Redwood Valley
          Greenville ?              Rohnerville ?
          Mooretown ?               Smith River
          Picayune

          We also invite your arguments in support of any additional
rancherias that you believe should be included in settlement discus-
sions with those listed above.

          In addition, there are several other rancherias listed in
the Complaint which are the subject of litigation in other proceedings.
We believe that disposition of this classification of rancherias should
also be discussed in our settlement conference.

                              Very truly yours,

                              JOSEPH P. RUSSONIELLO
                              United States Attorney

                    By:

                              PAUL E. LOCKE
                              Assistant United States Attorney

PEL:nam
cc:  William M. Wirtz, Assistant Regional Solicitor, Department of
       the Interior, Sacramento, CA
     Duke McCloud, Attorney, Department of Health & Human Services,
       Rockville, MD

                    EXHIBIT "A"