**EXHIBIT E**

1  DAVID J. RAPPORT
   LESTER J. MARSTON
2  California Indian Legal Services
   200 West Henry Street
3  Post Office Box 488
   Ukiah, California  95482
4  Telephone:  (707) 462-3825

5  Attorneys for Plaintiffs

6  JOSEPH P. RUSSONIELLO
   United States Attorney
7  RODNEY H. HAMBLIN
   Assistant United States Attorney
8  PAUL E. LOCKE
   Assistant United States Attorney
9  450 Golden Gate Avenue, Box 36055
   San Francisco, California  94102
10 Telephone:  (415) 556-5134

11 Attorneys for Federal Defendants

12

13

14              IN THE UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16 TILLIE HARDWICK, et al.,          )  No. C-79-1710-SW
                                     )
17              Plaintiffs           )  STIPULATION FOR ENTRY
                                     )  OF JUDGMENT
18         v.                        )
                                     )
19 UNITED STATES OF AMERICA, et al., )
                                     )
20              Defendants.          )
                                     )

21

22         The parties to the above-entitled action, recognizing

23 the uncertainties in law and the burden of further litigation,

24 and in order to make mutually beneficial settlement of these

25 actions, subject to approval of the Court pursuant to Federal

26 Rules of Civil Procedure, Rule 23(c), stipulate that the Court

27 may enter judgment as follows:

28 / / / / / / / /

1      1.   That the seventeen Rancherias which are the subject

2  of the provisions of paragraphs 2 through 13 inclusive, of this

3  stipulation, are as follows:

4                      Big Valley

5                      Blue Lake

6                      Buena Vista

7                      Chicken Ranch

8                      Cloverdale

9                      Elk Valley

10                     Greenville

11                     Mooretown

12                     North Fork

13                     Picayune

14                     Pinoleville

15                     Potter Valley

16                     Quartz Valley

17                     Redding

18                     Redwood Valley

19                     Rohnerville

20                     Smith River

21      These rancherias are more fully described in the

22  attached Exhibit "A", which is incorporated herein by reference

23  as though set forth in full.

24      2.   The Court shall certify a class consisting of all

25  those persons who received any of the assets of the rancherias

26  listed and described in paragraph 1 pursuant to the California

27  / / / / / /

28

1 Rancheria Act 1/ and any Indian heirs, legatees or successors in
2 interest of such persons with respect to any real property they
3 received as a result of the implementation of the California
4 Rancheria Act.

5         3. The status of the named individual plaintiffs and
6 other class members of the seventeen rancherias named and
7 described in paragraph 1 as Indians under the laws of the United
8 States shall be restored and confirmed. In restoring and
9 confirming their status as Indians, said class members shall be
10 relieved from the application of Sections 2(d) and 10(b) of the
11 California Rancheria Act and shall be deemed entitled to any of
12 the benefits or services provided or performed by the United States
13 for Indians because of their status as Indians, if otherwise quali-
14 fied under applicable laws and regulations.

15         4. The Secretary of the Interior shall recognize the
16 Indian Tribes, Bands, Communities or groups of the seventeen
17 rancherias listed in paragraph 1 as Indian entities with the same
18 status as they possessed prior to distribution of the assets
19 of these Rancherias under the California Rancheria Act, and said
20 Tribes, Bands, Communities and groups shall be included on the
21 Bureau of Indian Affairs' Federal Register list of recognized
22 tribal entities pursuant to 25 CFR, Section 83.6(b). Said Tribes,
23 Bands, Communities or groups of Indians shall be relieved from
24 the application of section 11 of the California Rancheria Act and
25 shall be deemed entitled to any of the benefits or services
26 provided or performed by the United States for Indian Tribes,

27
28 1/ Act of August 18, 1958, P.L. 85-671, 72 Stat. 69, as
amended by the Act of August 11, 1964, 78 Stat. 390.

1  Bands, Communities or groups because of their status as Indian
2  Tribes, Bands, Communities or groups.

3      5.   The Court shall not include in any judgment entered
4  pursuant to this stipulation any determination of whether or to
5  what extent the boundaries of the rancherias listed and described
6  in paragraph 1 shall be restored and shall retain jurisdiction to
7  resolve this issue in further proceedings herein.

8      6.   Any named individual plaintiff or class member who
9  received or presently owns fee title to an interest in any former
10 trust allotment by reason of the distribution of the assets of
11 any of the Rancherias listed in paragraph 1 shall be entitled to
12 elect to restore any such interest to trust status, to be held by
13 the United States for the benefit of such Indian person(s).

14     7.   Within two years of date of notice of this
15 judgment, as provided in paragraph 9, the Indian Tribes,
16 Bands, Communities or groups of the seventeen rancherias listed
17 in paragraph 1 that are recognized by the Secretary of the
18 Interior pursuant to paragraph 4 herein may arrange to convey
19 to the United States all community-owned lands within their
20 respective rancherias to which the United States issued fee
21 title in connection with or as the result of the distribution
22 of the assets of said rancherias, to be held in trust by the
23 United States for the benefit of said Tribes, Bands, Communities
24 or groups, authority for the acceptance of said conveyances
25 being vested in the Secretary of Interior under section 5 of
26 the Act of June 18, 1934, "The Indian Reorganization Act," 48
27 Stat. 985, 25 U.S.C. §465 as amended by section 203 of the

28 / / / / / / /

Indian Land Consolidation Act. Pub. L. 97-459, Title II, 96 Stat. 2515 and/or the equitable powers of this court.

8.   Any named plaintiff or other class member herein may elect to convey to the United States any land for which the United States issued fee title in connection with or as the result of the distribution of assets of said rancherias to be held in trust for his/her individual benefit or the benefit of any other member or members of the rancheria, authority for the acceptance of said conveyances being vested in the Secretary of the Interior under section 5 of the Act of June 18, 1934, "The Indian Reorganization Act," 48 Stat. 985, 25 U.S.C. §465 as amended by section 203 of the Indian Land Consolidation Act, Pub. L. 97-459, Title II, 96 Stat. 1512 and/or the equitable powers of this court.

9.   Upon entry of judgment herein the United States shall give personal mail notice to each individual plaintiff and other class members (to the extent such persons can be identified and located through the exercise of reasonable efforts) that said indi-viduals may elect to return their lands to trust pursuant to the judgment entered pursuant to this stipulation.  Said notice shall advise that the Bureau of Indian Affairs will assist those indivi-duals desiring to convey lands to the United States, including pro-viding for forms and instructions.  In addition, the United States shall aid and assist class members in perfecting said conveyances by obtaining any necessary policies of title insurance or taking any other actions administratively required to complete such conveyances. Nothing in this Stipulation shall require the United States to pro-vide funds for the payment of real property taxes which may have

//

accrued in the past or may accrue in the future with respect to lands located on any Rancheria as described in Exhibit A; provided, however, that this Stipulation does not represent a concession by any party hereto that any of said property is subject to real property taxes.

The United States shall also give general notice of the rights provided by this paragraph 9 by publishing notice once each week for one month in newspapers of general circulation most likely to be read by class members, and by posting notice in a conspicuous location on or near each of the seventeen rancherias named in paragraph 1.

10.  The Secretary of the Interior, named individual plaintiffs, and other class members agree that the distribution plans for these Rancherias shall be of no further force and effect and shall not be further implemented; however, this provision shall not affect any vested rights created thereunder.

11.  All claims whatsoever for money damages against the United States resulting from the distribution of the assets of the seventeen rancherias named in paragraph 1 under the Rancheria Act and arising out of the implementation of said Act shall be dismissed with prejudice, plaintiffs having specifically considered the poten-tial value of said claims, the probability of the success thereof, and the value of the relief to be obtained under this settlement agreement.

12.  For the purpose of resolving any disputes which arise among the parties in the course of implementing the judgment to be entered pursuant to this stipulation, or for extending the time

//

6

within which any act may or must be performed under this Stipulation,
the Court shall retain jurisdiction over this matter for a period
of two (2) years from entry of judgment, or for such longer time as
may be shown to be necessary on a duly-noticed motion by any party.

13. Entry of judgment pursuant to this stipulation shall
constitute a final settlement of all claims which named plaintiffs
and plaintiff class members have or may have against the United
States and its officers and employees arising out of the implementa-
tion of the California Rancheria Act at the seventeen Rancherias
listed in paragraph 1.

14. Except as hereafter specifically provided in paragraphs
15-19, the claims asserted in this action by or on behalf of any
persons who received any of the assets of the Graton, Scotts Valley,
Guideville, Strawberry Valley, Cache Creek, Paskenta, Ruffeys, Mark
West, Wilton, El Dorado, Chico or Mission Creek Rancherias are
dismissed without prejudice to their being refiled in another action
and defendants shall not assert any laches defense to any such
subsequent action they could not have asserted prior to the date
this action was filed.

15. The claims of Ethel Whiterock, Minerva Pike, Jesse
Elliott, Nora Cooper and Irene Young who received assets from the
termination of the Guideville Rancheria under the California
Rancheria Act shall be dismissed on grounds of res judicata based
on the stipulation and judgment entered in Whiterock et al. v.
Udall, Fed. Dist. Ct. N.D. Cal. No. 50584 SAW.

16. The claims of all the named and unnamed class members
represented in Taylor et al. v. Hickel, C-70-719 SAW (N.D. Cal.)

//

from the Auburn Rancheria shall be dismissed on grounds of res judicata.

17.    The claims asserted in this action against the United States on behalf of Frank Truvido and Gloria Truvido of Graton Rancheria who were parties to <u>Frank Truvido and Gloria Truvido v. Morton</u>, C-72-181 GBH (N.D. Cal.), shall be dismissed on grounds of res judicata.

18.    The claims asserted in this action on behalf of Teresa Boggs of the Scotts Valley Rancheria who was a party to <u>Teresa Boggs and Bessie Ray v. Rogers C.B. Morton</u>, C-71-1714 RFP (N.D. Cal.), shall be dismissed on the grounds of res judicata.

19.    The claims asserted in this action by any person who received any of the assets of the Robinson or Table Bluff Rancherias pursuant to the California Rancheria Act shall be dismissed from this action since prior to filing of this action those persons had filed independent actions in <u>Duncan et al., v. Andrus</u>, Fed. Dist. Ct., N.D. Cal. No's C-71-1572 WWS, C-71-1713 WWS and <u>Duncan et al., v. U.S.</u>, (Ct. Cls.) No 19-75 and <u>Table Bluff Band et al., v. Andrus</u>, No. C-75-2525 WWS, which actions are still pending.

Dated: _Jul, 19, 1983_

Dated: _July 15, 1983_

CALIFORNIA INDIAN LEGAL SERVICES

By: _David J. Rapport_
DAVID J. RAPPORT
Attorneys for Plaintiffs

JOSEPH P. RUSSONIELLO
United States Attorney

By: _Paul E. Locke_
PAUL E. LOCKE
Assistant United States Attorney

EXHIBIT A

## RANCHERIA DESCRIPTIONS

### BIG VALLEY

The Big Valley Rancheria, 118.45 acres, is located on the south shore of Clear Lake near Finley in Lake County, California.

Tract 1: SE1/4NW1/4, NE1/4SW1/4 and Lot 3 (being the fractional NE1/4NW1/4), Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, California.

Tract 2: That portion of the SE1/4SW1/4 Section 29 and NE1/4NW1/4 Section 32, T. 14 N., R. 9 W., Mount Diablo Meridian, which is north of the United States Meander Line for Clear Lake and which is above the low water line of Clear Lake, subject to a flowage easement.

### BLUE LAKE

The Blue Lake Rancheria, 30.92 acres, is located adjacent to the city of Blue Lake, Humboldt County, California.

A tract of land situate in a portion of the SE1/4SW1/4 Section 19 and in a portion of the NE1/4NW1/4 Section 30, T. 6 N., R. 2 E., Humboldt Meridian and more particularly described in a Warranty Deed recorded in Volume 107 of Deeds, page 224 in the records of Humboldt County, California.

### BUENA VISTA

The Buena Vista Rancheria, 67.5 acres, is located in Amador County, California.

Commencing at the NE corner of Section 19, T. 5 N., R. 10 E., Mount Diablo Meridian, California, thence running west along section line 578 feet, thence at right angles south 5280 feet, thence at right angles east 578 feet, thence at right angles north 5280 feet to place of beginning.

### CHICKEN RANCH

The Chicken Ranch Rancheria, 40 acres, is located in Tuolumne County, California.

E1/2E1/2NE1/4 Section 20, T. 1 N., R. 14 E., Mount Diablo Meridian, California.

EXHIBIT A

## CLOVERDALE

The Cloverdale Rancheria, 27.50 acres, is located adjacent to and south of the town of Cloverdale, Sonoma County, California.

All these certain lots, pieces or parcels of land, situate, lying and being in the Township of Cloverdale, County of Sonoma, State of California, and bounded and particularly described as follows, to wit:  Beginning at a point in the center of the main public road leading from Cloverdale to Healdsburg and at the northwesterly corner of the land formerly owned by Louis Bee, which is an iron pipe two (2) inches in diameter, two (2) feet long, driven below the surface of the ground, from which a fir tree five (5) feet in diameter marked "R.M.", and known as station 8 on the Muscalacon Grant Line bears south 47 W., 39.38 chains distant; thence N. 47  40' E., along the northerly line of the land formerly owned by Louis Bee, 49.25 chains; thence north 59  15' W., 6.071/2 chains to the southerly line of the land of Helena M. Woolsey, thence S. 47  28' W., along the southerly line of the land of Helena M. Woolsey, 46.68 chains to the center line of the hereinbefore mentioned public road; thence S. 34  15' E., along the center line of said road 5.71 chains to the place of beginning, containing 27.50 acres. (Note – above area included Northwestern Pacific Railroad right of way.)

## ELK VALLEY

The Elk Valley Rancheria, 100 acres, is located near the town of Crescent City, Del Norte County, California.

SE1/4SE1/4, S1/2S1/2NE1/4SE1/4 Section 22; SW1/4SW1/4, S1/2S1/2NW1/4SW1/4 Section 23, T. 16 N., R. 1 W., Humboldt Meridian, California.

## GREENVILLE

The Greenville Rancheria, 275 acres, is located approximately three miles east of Greenville, Plumas County, California.

Parcel 1: N1/2 Lot 4, Section 5; N1/2 Lot 1, Section 6, T. 26 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 1A: SE1/4 Section 31, T. 17 N., R. 10 E., Mount Diablo Meridian, California.

Parcel 2: Beginning at the S.E. corner of Plumas County Swamp and Overflowed Land Survey No. 37, N. 31 1/4  E., 3.72 chains from the 1/4 Section corner on the South line of Section 6, T. 26 N., R. 10 E., M.D.M., and running thence N.

72 1/2  W., 15.80 chains; thence N. 4 E., 42.00 chains, thence E. 2.06 chains, thence N. 14.03 chains; thence E. 7.97 chains to the North and South centerline of said Section 6; thence S. 23.85 chains to the center of said Section 6; thence E. 5.00 chains; thence S. 4 1/2  W., 36.88 chains to the place of beginning, containing 75 acres.

## MOORETOWN

The Mooretown Rancheria, 160 acres, is comprised of two parcels, one-half mile apart.  It is located in Butte County, California.

Parcel 1: N1/2NE1/4 Section 22 T. 20 N., R. 6 E., Mount Diablo Meridian, California.

Parcel 2: N/1/2NE1/4 Section 23, T. 20 N., R. 6 E., Mount Diablo Meridian, California.

## NORTH FORK

The North Fork Rancheria, 80 acres, is located about two miles from the town of North Fork, Madera County, California.

SE1/4NE1/4 Section 20, and SW1/4NW1/4 Section 21, T. 8 S., R. 23 E., Mount Diablo Meridian.

## PICAYUNE

The Picayune Rancheria, 80 acres, is located three miles south of Coarsegold in Madera County, California.

N1/2NE1/4 Section 29, T. 8 S., R. 21 E., Mount Diablo, Meridian.

## PINOLEVILLE

The Pinoleville Rancheria, 99.53 acres, is located in Mendocino County, California.

Tract 1: A portion of Lot 142 of Healey's Survey and Map of the Yokayo Rancho containing 3 acres and more particularly described in deed filed in Book 123 of Deeds, page 148, Recorder's Office, County of Mendocino.

Tract 2: A portion of Lots 141 and 142 of the Yokayo Rancho containing 96.53 acres and more particularly described in deed filed in Book 133 of Deeds, page 283, Recorder's Office, County of Mendocino.

## POTTER VALLEY

The Potter Valley Rancheria, 96 acres, is located near the town of Potter Valley, Mendocino County, California.

Tract 1: A metes and bounds description in Section 19, T. 17 N., R. 11 W., Mount Diablo Meridian and more particularly described in Deed recorded in Book 116 of Deeds, Page 197, Mendocino County, containing 16 acres.

Tract 2: NW1/4SE1/4, SE1/4NW1/4 Section 35, T. 18 N., R. 12 W., Mount Diablo Meridian, containing 80 acres.

## QUARTZ VALLEY

The Quartz Valley Indian Reservation, 604 acres, is located in Siskiyou County, California.

Tract 1: NW1/4, W1/2SW1/4 Section 2, T. 43 N., R. 10 W., E1/2SE1/4 Section 3 and a fractional portion of the NE1/4NE1/4 Section 3, T. 43 N., R. 10 W., Mount Diablo Meridian, containing 364 acres.

Tract 2: E1/2SE1/4 Section 34 and SW1/4 Section 35, T. 44 N., R. 10 W., Mount Diablo Meridian, containing 240 acres.

## REDDING

The Redding Rancheria, 30.89 acres, is located south of Redding in Shasta County, California.

Tract No. 8 of the Anderson Valley Farms, situate, lying and being on the Rancho Buena Ventura or Reading Grant, in the County of Shasta, State of California.

## REDWOOD VALLEY

The Redwood Valley Rancheria, 80 acres, is located north of the town of Redwood Valley, Mendocino County, California.

NE1/4SW1/4, fractional part of SE1/4NW1/4 Section 32, T. 17 N., R. 12 W., Mount Diablo Meridian and fractional part of Lot 131 of Healey's Survey and Map of Yokayo Rancho.

## ROHNERVILLE

The Rohnerville Rancheria, 15.22 acres, is located near Fortuna, Humboldt County, California, and overlooks the village of Ronherville.

EXHIBIT A

Tract 1: A parcel of land situate in the E1/2SE1/4 Section 1, T. 2 N., R. 1 W., Humboldt Meridian containing 15 acres and more particularly described in a deed recorded in Volume 116 of Deeds, page 93 in the records of Humboldt County, California.

Tract 2: Commencing at the NW corner of the above tract and running thence N. 37 20' W. 215.5 feet; thence S. 10.6 feet; thence W. 40 feet; thence N. 60 feet; thence E. 40 feet; thence W. 40 feet; thence N. 60 feet; thence E. 40 feet; thence S. 37 20' E. 277 feet; thence S. 89 W. 37.5 feet to place of beginning, containing 0.22 acres, together with a spring.

## SMITH RIVER

The Smith River Rancheria, 163.96 acres, and an unsurveyed island known as Prince Island, 14.25 acres, are located in Del Norte County, California.

Tract 1: Frac. W1/2, N1/2NW1/4NE1/4, NE1/4NE1/4 Section 17, T. 18 N., R. 1 W., Humboldt Meridian, California, containing 163.96 acres.

Tract 2: Unsurveyed island in the Pacific Ocean about 3/4 mile north of Smith River in Section 17, T. 18 N., R. 1 W., Humboldt Meridian, designated on the official plat of survey as Hunters Rock and on the U.S.C. & G. Chart No. 5900 as Prince Island, 14.25 acres.

## DECLARATION OF SERVICE BY MAIL

I, the undersigned, declare:

I am a citizen of the United States, over the age of eighteen years, with my business address at 200 West Henry Street, Ukiah, California 95482, employed in the County of Mendocino and am not a party to the within action.

On the 20th day of July, 1983 , I served the within: Stipulation For Entry Of Judgment

on Defendants in said action, by placing a true copy thereof enclosed in a sealed envelope with the correct postage thereon fully prepaid in the United States post office mail box at Ukiah, California, addressed as follows:

| | | |
|---|---|---|
| Paul E. Locke | Robert L. Bridges | John C. Drummond |
| Asst. U.S. Attorney | Deputy County Counsel | County Counsel |
| P.O. Box 36055 | 255 N. Forbes Street | County of Mendocino |
| 450 Golden Gate Ave. | Lakeport, CA 95453 | Courthouse, Rm. 304 |
| San Francisco, CA 94102 | | Ukiah, CA 95482 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 20, 1983 at Ukiah, California.

_Lisa Elgin_
LISA ELGIN

**EXHIBIT F**

1

2                                    **Filed**

3                                 MAY 2 0 2004

4                              RICHARD W. WIEKING
                             CLERK, U.S. DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
                                    SAN JOSE

6

7                            NOT FOR CITATION

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12   TILLIE HARDWICK, et al.,              Case Number C-79-1710-JF

13                  Plaintiffs             ORDER DENYING THE MADERA
                                           COUNTY DEFENDANTS' MOTION
14             v.                          FOR ENFORCEMENT OF
                                           JUDGMENT
15   UNITED STATES OF AMERICA, et al.,

16                  Defendants.

17

18

19

20

21

22          On May 3, 2004, the Court heard oral argument on the Madera County Defendants'

23   motion for enforcement of judgment.  For the reasons discussed below, the motion will be

24   denied.

25                            **I BACKGROUND**

26          The present motion relates to litigation that commenced in 1979.  There are significant

27   disputes as the effect of a Stipulated Judgment entered by then-assigned District Judge Spencer

28   Williams in 1987.  Defendants Madera County Board of Supervisors, Madera County Tax

Case No. C-79-1710-JF
ORDER DENYING MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

1   Assessor and Madera County Tax Collector (collectively "Madera County") assert that the

2   judgment entered by Judge Williams in 1987 obligates the Picayune Rancheria of Chukchansi

3   Indians ("the Picayune Rancheria" or "the Tribe") to pay *ad valorem* property taxes on certain

4   parcels of land. The Tribe asserts that this Court lacks jurisdiction over it and that even assuming

5   that the Court has jurisdiction, the Tribe is not obligated to pay the *ad valorem* property taxes

6   sought by Madera County. Disposition of the instant motion necessarily requires the undersigned

7   judge to interpret the stipulated judgment at issue. The relevant historical and procedural facts

8   are as follows:

9           In the 1950s, the United States took steps to terminate the existence of a number of Indian

10  tribes and abolish federal programs available to them as a result of their special status. Under the

11  California Rancheria Act of 1958 ("Rancheria Act"), the United States purported to terminate the

12  existence of forty-one California Indian tribes, distributing tribal property to individual tribe

13  members ("distributees"). Upon distribution of tribal property, the tribes ceased to exist and the

14  members of the former tribes were stripped of their status as Indians. Tribal lands, which had

15  been held in trust and exempted from state taxation and regulatory laws, were transformed into

16  parcels held in fee simple by the distributees. These lands thus became subject to state and local

17  laws.

18          In 1979, individuals from thirty-four of the terminated tribes commenced the instant

19  litigation. The individuals sought restoration of their status as Indians and entitlement to federal

20  Indian benefits, as well as the right to reestablish their tribes as formal government entities. The

21  litigation was certified as a class action.

22          In 1983, the litigation was settled with respect to the members of seventeen former tribes,

23  including the Picayune Rancheria. Judge Williams entered a "Stipulation For Entry Of

24  Judgment" ("1983 Stipulated Judgment") providing among other things that "[t]he status of the

25  named individual plaintiffs and other class members of the seventeen rancherias named and

26  described in paragraph 1 as Indians under the laws of the United States shall be restored and

27  confirmed." This judgment further provided that "[t]he Secretary of the Interior shall recognize

28  the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in paragraph

2

1 as Indian entities with the same status as they possessed prior to distribution of the assets of

these Rancherias under the California Rancheria Act, and said Tribes, Bands, Communities and

groups shall be included on the Bureau of Indian Affairs' Federal Register list of recognized

tribal entities pursuant to 25 C.F.R., Section 83.6(b)." The 1983 Stipulated Judgment also

provided a mechanism by which individuals holding former tribal lands could reconvey the lands

to the United States to be held in trust.

Several tribes took immediate action to reestablish their tribal governments and formally

intervene in the instant litigation. The Picayune Rancheria was not one of the intervening tribes

and in fact took several years to reorganize its tribal government. Its first formal meeting for this

purpose was held in August 1986. There were serious internal disputes over control of the Tribe.

Two factions submitted separate Tribal Constitutions for BIA approval, both of which were

rejected for failure to obtain General Council approval. The Tribe as a whole finally adopted a

Tribal Constitution on November 7, 1988.

In 1987, while the Tribe was reorganizing its government, questions arose as to the

boundaries of the Picayune and North Fork Rancherias, both located in Madera County, and as to

tax consequences flowing from the termination and later restoration of these two tribes. Judge

Williams entered a "Stipulation For Entry Of Judgment (Madera County)" ("1987 Stipulated

Judgment") addressing these issues. The 1987 Stipulated Judgment specifically identified the

Picayune Rancheria as a named plaintiff, although as discussed above the Tribe had not yet

reorganized its tribal government and had not intervened in the action. The 1987 Stipulated

Judgment confirmed the boundaries of the Picayune and North Fork Rancherias and stated that:

the Picayune and North Fork Rancherias had not been lawfully terminated; the Picayune and

North Fork Rancherias would be treated as any other federally recognized Indian Reservation; all

real property taxes paid to Madera County on "Indian Parcels" for the tax years 1979 and

thereafter would be refunded; and Madera County would not collect any future property taxes on

"Indian Parcels" within the boundaries of the Picayune and North Fork Rancherias *except* that

after December 31, 1988, Madera County would have limited power to collect *ad valorem*

property taxes on "Indian Parcels" as to which no election to return to trust status had been made.

3

1  The term "Indian Parcel" was defined as follows:

2          all those parcels of real property or interests in said parcels within the boundaries
        of the North Fork and Picayune Rancherias currently owned by Indians entitled to
3          return said parcels or interests thereof to the United States of America in
        accordance with the Judgment of the United States District Court, Northern
4          District of California, in the above-entitled case.

5  The term "Indians" was defined as "any Indian who owns any interest in a North Fork or

6  Picayune Rancheria parcel."

7          These provisions appear to have been designed to provide an equitable remedy with

8  respect to the tax consequences of the Rancheria Act. Taxes paid on what once were tribal lands

9  were refunded, and holders of those lands were given a grace period within which to return the

10  lands to trust status (in which case no future tax consequences would arise). Indian Parcels

11  subject to these provisions and not returned to trust status by the end of 1988 would be subject to

12  *ad valorem* property taxes.

13          At the time the 1987 Stipulated Judgment was entered, there were seven parcels of land

14  within the boundaries of the Picayune Rancheria. One was held by an Indian, Maryan Ramirez,

15  who already had returned the parcel to trust status. The other six parcels were owned in fee by

16  non-Indian individuals. The Tribe, seeking to reestablish its reservation lands, began purchasing

17  these six parcels approximately eight years later in 1995, and acquired the last of them in 2002.

18  The Tribe holds all six later-acquired parcels in fee simple, but in March 2003 it submitted an

19  application to have the six parcels returned to trust status. In June 2003 the Tribe completed

20  construction of a resort and casino facilities on the property. Based upon these completed

21  improvements, Madera County performed a reassessment of the property and concluded that the

22  Tribe now has an estimated annual *ad valorem* property tax liability of approximately $4.1

23  million. The Tribe disputed this estimate and took the position that there is no tax liability.

24  Madera County subsequently brought the instant motion for enforcement of judgment.

25                              **II. DISCUSSION**

26  A.     **Jurisdiction**

27          There is no question that the Court has continuing jurisdiction to resolve disputes arising

28  from the stipulated judgments. The 1983 Stipulated Judgment expressly retained jurisdiction for

.4

1  "a period of two years from entry of judgment or for such longer time as may be shown to be

2  necessary on a duly-noticed motion by any party." However, the Tribe asserts that it has

3  sovereign immunity with respect to any action of Madera County and that it has not intervened in

4  the instant litigation or taken any other action sufficient to waive its sovereign immunity.

5  Madera County asserts that the Tribe waived its sovereign immunity by participating in the

6  litigation and consenting to the 1987 Stipulated Judgment.

7         Indian tribes possess the common-law immunity from suit traditionally enjoyed by

8  sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). This immunity can

9  be waived, but such waiver must be unequivocally expressed. *Id.* This Court therefore must

10  decide whether the Tribe has waived its sovereign immunity here.

11        The Tribe could not have been a party in 1979 when the action was commenced, because

12  it had been terminated and thus did not exist. The parties dispute when the Tribe came back into

13  existence. Madera County asserts that the Tribe existed immediately following the 1983

14  Stipulated Judgment, which provided that the Tribe would be reinstated and put on the federal

15  register of tribal entities. The Tribe asserts that it did not come back into existence until 1988

16  when it formally reorganized.

17        An Indian community constitutes a tribe if either (1) it is recognized as an Indian tribe by

18  the federal government or (2) it is "a body of Indians of the same or a similar race, united in a

19  community under one leadership or government, and inhabiting a particular though sometimes

20  ill-defined territory." *Native Village of Tyonek v. Puckett*, 957 F.2d 631, 635 (9th Cir. 1992)

21  (quoting *Montoya v. United States*, 180 U.S. 261, 266 (1901)). The Picayune Rancheria was

22  recognized as an Indian tribe by the federal government as of 1983. Accordingly, the Court

23  concludes that the Tribe came back into existence in 1983.

24        This conclusion does not answer the question of whether the Tribe waived its sovereign

25  immunity by participating in the instant litigation once its existence was reestablished. Madera

26  County points to the fact that the Tribe is identified as a party plaintiff in the 1987 Stipulated

27  Judgment. There can be no question that if the Tribe participated in the litigation and actually

28  agreed to the 1987 Stipulated Judgment, its sovereign immunity would be waived. *See United*

5

1   *States v. Oregon*, 657 F.2d 1009, 1015 (9th Cir. 1981). However, it is not at all clear from the

2   record that the Tribe actually was a party plaintiff in this action. It is undisputed that the Tribe

3   did not formally intervene in the action. It also is undisputed that, due in part to political

4   infighting, the Tribe's internal government was not established until 1988. While the existence

5   of a formal tribal government is not necessary for legal capacity, the fact that the Tribe's internal

6   government was not established until after the 1987 Stipulated Judgment was entered raises the

7   following question: who acted on behalf of the Tribe at the time the 1987 Stipulated Judgment

8   was negotiated and did that person have authority to bind the Tribe?

9        The record is silent as to this question, and Madera County's counsel was unable to

10  provide a definitive answer during the hearing, stating only that someone must have bound the

11  Tribe because the Picayune Rancheria was named as a party plaintiff in the 1987 Stipulated

12  Judgment. However, the fact that the Picayune Rancheria was named as a plaintiff could be the

13  result of any number of circumstances. Someone indeed may have purported to represent the

14  Tribe during the negotiations that led to the 1987 Stipulated Judgment. The inclusion of the

15  Picayune Rancheria could have been erroneous. Or, as argued by counsel for the Tribe at the

16  hearing, the reference to the Picayune Rancheria could have been a reference to the lands at issue

17  and not to the Tribe as a political entity.[1] As is noted above, Indian tribes are entitled to

18  sovereign immunity unless unequivocal waiver is demonstrated. Madera County has failed to

19  demonstrate with any degree of certainty that such waiver occurred. Accordingly, the Court

20  concludes that the Tribe's sovereign immunity remains intact.

21       Madera County argues that the Tribe should not be permitted to reap the benefits of the

22  1987 Stipulated Judgment and then claim sovereign immunity when asked to fulfil its obligations

23  thereunder. The benefits to the Tribe are somewhat doubtful. The Court understands Madera

24  County to be arguing that the 1987 Stipulated Judgment gave the County the right to tax all non-

25

26  _____

27       [1] Although the North Fork and Picayune Rancherias are named as party plaintiffs in the
    1987 Stipulated Judgment, that document explicitly defines "North Fork and Picayune
28  Rancherias" to mean "all lands within the exterior boundaries of the North Fork and Picayune
    Rancherias as described in paragraph 2B.1"

6

Case No. C-79-1710-JF
ORDER DENYING MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

1  trust tribal lands held at the time of the Judgment *and acquired anytime thereafter, into*
2  *perpetuity*. In other words, the County argues that it acquired the right to impose taxes - here, in
3  excess of $4 million per year - on tribal lands it otherwise would not have been able to touch.
4  Under these circumstances, the Court cannot agree with Madera County that the equities favor
5  enforcement of the 1987 Stipulated Judgment against the Tribe.

6  **B.    Interpretation Of The 1987 Stipulated Judgment**

7         Even if the Court were to conclude that the Tribe waived its sovereign immunity, the
8  Court would not find the *ad valorem* property tax provisions of the 1987 Stipulated Judgment to
9  be applicable as argued by Madera County. The provisions apply to Indian Parcels, which were
10 defined in the stipulated judgment as parcels within the boundaries of the North Fork and
11 Picayune Rancherias "currently owned by Indians entitled to return said parcels or interests
12 thereof to the United States of America." The Tribe argues that "currently owned" means *owned*
13 *at the time of the 1987 Stipulated Judgment*. Madera County argues that the "currently owned"
14 language does not restrict the definition of Indian Parcel in this manner, and that the *ad valorem*
15 provision apply to property acquired by the Tribe even years after the 1987 Stipulated Judgment
16 was entered.

17        Madera County's interpretation is inconsistent with the primary purpose of the 1987
18 Stipulated Judgment, which appears to have been to redress the harm caused by the Rancheria
19 Act. The Judgment explicitly states that "this Court has authority as a court of equity to remedy
20 the effects of the premature and unlawful termination of the North Fork and Picayune Rancherias
21 and the Plaintiffs to the extent that it can do so without adversely affecting the interests of third
22 party purchasers for value of Rancheria Parcels." Accordingly, the Judgment provided that the
23 North Fork and Picayune Rancherias never were lawfully terminated and restored the original
24 boundaries of the North Fork and Picayune Rancherias. The Judgment further provided that
25 taxes paid on what once were tribal lands would be refunded, and that holders of those lands
26 would be given a grace period within which to return the lands to trust status, in which case no
27 future tax consequences would arise. Indian Parcels subject to these provisions and not returned
28 to trust status by the end of 1988 would be subject to *ad valorem* property taxes. Nothing in this

7

1   language expresses an intent to give the County the right to tax later-acquired tribal lands it

2   otherwise would be unable to tax.

3        Madera County's interpretation also contradicts the plain language of the Judgment. A

4   straightforward reading of the language indicates that the *ad valorem* provision applies only to

5   parcels "currently owned" by Indians at the time of the Judgment. An interpretation that reads

6   the phrase "currently owned" to mean "currently owned or acquired any time thereafter" is

7   strained at best.

8        Madera County argues that if the "currently owned" language is read to restrict the

9   definition of Indian parcels to non-trust parcels owned by Indians at the time of the 1987

10  Stipulated Judgment, the definition would be rendered a nullity because there were no such

11  parcels within the boundaries of the Picayune Rancheria. As noted previously, at the time the

12  Judgment was entered, only one parcel within the Picayune Rancheria was owned by an Indian,

13  and that parcel already had been returned to trust. However, Madera County's argument ignores

14  the fact that the Judgment addresses both the North Fork and the Picayune Rancherias. The

15  Tribe offered evidence that there *were* non-trust parcels owned by Indians within the North Fork

16  Rancheria at the time the Judgment was entered.[2] Accordingly, the County's nullity argument is

17  not supported by the record.

### III. ORDER

19      The motion for enforcement of judgment is DENIED.

23  DATED:  5/19/04

JEREMY FOGEN
United States District Judge

---

[2] Those parcels were returned to trust status before the December 1988 deadline.

8

1   Copies of Order served on:

2

3   Counsel for the Tribe:

4   Christina V. Kazhe
    Michael A. Robinson
5   Monteau & Peebles LLP
    1001 Second Street
6   Sacramento, CA 95814

7   Counsel for Madera County parties:

8   Dennis M. Cota
    Steven M. Ingram
9   Samuel L. Emerson
    Best Best & Krieger LLP
10  400 Capitol Mall, Suite 1650
    Sacramento, CA 95814

11
    David A. Prentice
12  County Counsel
    County Counsel of Madera
13  333 West Olive Avenue
    Madera, CA 93637

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. C-79-1710-JF
ORDER DENYING MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

**EXHIBIT G**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL
FILED

DEC - 7 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT FOURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TILLIE HARDWICK, et al., | Case Number C 79-1710 JF (PVT) |
| Plaintiffs | ORDER DENYING THE TRIBE'S MOTION FOR ENFORCEMENT OF JUDGMENT |
| v. | |
| UNITED STATES OF AMERICA, et al., | [re: doc. no. 297] |
| Defendants. | |

Non-party Picayune Rancheria of Chukchansi Indians ("the Picayune Rancheria" or "the Tribe") moves for enforcement of the Stipulated Judgment entered in this action in 1987. The motion is opposed by Defendant County of Madera ("Madera County"). The Court has considered the briefing of the Tribe and of Madera County, as well as the oral arguments presented at the hearing on December 1, 2006. For the reasons discussed below, the motion will be denied.

**I BACKGROUND**

This is the second time that the Tribe and Madera County have appeared before this Court to litigate the effect of the 1987 Stipulated Judgment entered in this action by then-assigned

1    District Judge Spencer Williams. The relevant historical and procedural facts are as follows:

2         **1987 Stipulated Judgment**

3         In the 1950s, the United States took steps to terminate the existence of a number of Indian

4    tribes and abolish federal programs available to them as a result of their special status. Under the

5    California Rancheria Act of 1958 ("Rancheria Act"), the United States purported to terminate the

6    existence of forty-one California Indian tribes, distributing tribal property to individual tribe

7    members ("distributees"). Upon distribution of tribal property, the tribes ceased to exist and the

8    members of the former tribes were stripped of their status as Indians. Tribal lands, which had

9    been held in trust and exempted from state taxation and regulatory laws, were transformed into

10   parcels held in fee simple by the distributees. These lands thus became subject to state and local

11   laws.

12        In 1979, individuals from thirty-four of the terminated tribes commenced the instant

13   litigation. The individuals sought restoration of their status as Indians and entitlement to federal

14   Indian benefits, as well as the right to reestablish their tribes as formal government entities. The

15   litigation was certified as a class action.

16        In 1983, the litigation was settled with respect to the members of seventeen former tribes,

17   including the Picayune Rancheria. Judge Williams entered a "Stipulation For Entry Of

18   Judgment" ("1983 Stipulated Judgment") providing among other things that "[t]he status of the

19   named individual plaintiffs and other class members of the seventeen rancherias named and

20   described in paragraph 1 as Indians under the laws of the United States shall be restored and

21   confirmed." This judgment further provided that "[t]he Secretary of the Interior shall recognize

22   the Indian Tribes, Bands, Communities or groups of the seventeen rancherias listed in paragraph

23   1 as Indian entities with the same status as they possessed prior to distribution of the assets of

24   these Rancherias under the California Rancheria Act, and said Tribes, Bands, Communities and

25   groups shall be included on the Bureau of Indian Affairs' Federal Register list of recognized

26   tribal entities pursuant to 25 C.F.R., Section 83.6(b)." The 1983 Stipulated Judgment also

27   provided a mechanism by which individuals holding former tribal lands could reconvey the lands

28   to the United States to be held in trust.

2

1        Several tribes took immediate action to reestablish their tribal governments and formally

2 intervene in the instant litigation. The Picayune Rancheria was not one of the intervening tribes

3 and in fact took several years to reorganize its tribal government. Its first formal meeting for this

4 purpose was held in August 1986. There were serious internal disputes over control of the Tribe.

5 Two factions submitted separate Tribal Constitutions for BIA approval, both of which were

6 rejected for failure to obtain General Council approval. The Tribe as a whole finally adopted a

7 Tribal Constitution on November 7, 1988.

8        In 1987, while the Tribe was reorganizing its government, questions arose as to the

9 boundaries of the Picayune and North Fork Rancherias, both located in Madera County, and as to

10 tax consequences flowing from the termination and later restoration of these two tribes. Judge

11 Williams entered the subject 1987 Stipulated Judgment addressing these issues. The 1987

12 Stipulated Judgment specifically identified the Picayune Rancheria as a named plaintiff, although

13 as discussed above the Tribe had not yet reorganized its tribal government and had not intervened

14 in the action. The 1987 Stipulated Judgment confirmed the boundaries of the Picayune and

15 North Fork Rancherias and stated that: the Picayune and North Fork Rancherias had not been

16 lawfully terminated; the Picayune and North Fork Rancherias would be treated as any other

17 federally recognized Indian Reservation; all real property taxes paid to Madera County on

18 "Indian Parcels" for the tax years 1979 and thereafter would be refunded; and Madera County

19 would not collect any future property taxes on "Indian Parcels" within the boundaries of the

20 Picayune and North Fork Rancherias *except* that after December 31, 1988, Madera County would

21 have limited power to collect *ad valorem* property taxes on "Indian Parcels" as to which no

22 election to return to trust status had been made. The term "Indian Parcel" was defined as

23 follows:

24           all those parcels of real property or interests in said parcels within the boundaries
of the North Fork and Picayune Rancherias currently owned by Indians entitled to

25           return said parcels or interests thereof to the United States of America in
accordance with the Judgment of the United States District Court, Northern

26           District of California, in the above-entitled case.

27 The term "Indians" was defined as "any Indian who owns any interest in a North Fork or

28 Picayune Rancheria parcel."

3

1    These provisions appear to have been designed to provide an equitable remedy with

2  respect to the tax consequences of the Rancheria Act. Taxes paid on what once were tribal lands

3  were refunded, and holders of those lands were given a grace period within which to return the

4  lands to trust status (in which case no future tax consequences would arise). Indian Parcels

5  subject to these provisions and not returned to trust status by the end of 1988 would be subject to

6  *ad valorem* property taxes.

7    **Prior *Ad Valorem* Taxes Dispute**

8    At the time the 1987 Stipulated Judgment was entered, there were seven parcels of land

9  within the boundaries of the Picayune Rancheria. One was held by an Indian, Maryan Ramirez,

10  who already had returned the parcel to trust status. The other six parcels were owned in fee by

11  non-Indian individuals. The Tribe, seeking to reestablish its reservation lands, began purchasing

12  these six parcels approximately eight years later in 1995, and acquired the last of them in 2002.

13  The Tribe holds all six later-acquired parcels in fee simple.[1] In June 2003 the Tribe completed

14  construction of a resort and casino facilities on the property ("the Resort"). Based upon these

15  completed improvements, Madera County performed a reassessment of the property and

16  concluded that the Tribe had an estimated annual *ad valorem* property tax liability of

17  approximately $4.1 million. The Tribe disputed this estimate and took the position that there was

18  no tax liability.

19    Madera County brought a motion in this Court for enforcement of judgment. The Court

20  denied Madera County's motion on May 20, 2004, based in part upon the Court's conclusion that

21  the Tribe was not bound by the 1987 Stipulated Judgment. In particular, the Court concluded

22  that because the Tribe had not yet reorganized at the time the 1987 Stipulated Judgment was

23  entered; that as a result the Tribe could not have been a party to this action or to the 1987

24  Stipulated Judgment; and that the Tribe thus had not waived its sovereign immunity. The Court

25  concluded further that even if the Tribe were bound by the 1987 Stipulated Judgment, that

26

27    [1] It appears that the Tribe submitted an application to have the six parcels returned to trust
28  status in March 2003; the record is unclear as to the status of this request, but it does not appear
that the land has been returned to trust.

4

1    judgment did not authorize the imposition of the *ad valorem* taxes at issue. The Court denied

2    Madera County's motion for reconsideration on October 13, 2004.

3        Madera County did not appeal the Court's decision, but instead filed an *in rem* action in

4    Madera County Superior Court on October 25, 2004. The action seeks declaratory relief as to the

5    taxability of the land owned in fee by the Tribe. Litigation of the state action was delayed several

6    times while the Tribe and Madera County attempted to reach a settlement. Those efforts failed,

7    and the Tribe's motion to quash or dismiss the *in rem* complaint was heard on October 6, 2006

8    and on December 1, 2006. The record does not indicate the status of that motion. However, the

9    parties clarified at the hearing that the *in rem* action is limited to Madera County's ability to tax

10   the Tribe's land, and does not encompass the County's ability to impose state environmental or

11   other regulatory laws with respect to the Tribe's land.

12       **Instant Dispute**

13       The Tribe recently decided to expand the Resort to add greater amenities, such as an

14   additional 204 hotel rooms, a weight room and spa facility, additional parking facilities, and

15   improved waste water treatment plant, a warehouse storage facility and a children's area. Prior to

16   beginning this expansion, the Tribe prepared an issued an Environmental Evaluation ("EE")

17   pursuant to the Tribal-State Compact between the Tribe and the State of California ("the

18   Compact"). The Tribe also held public hearings and provided Madera County with an

19   opportunity to provide input. The Tribe then responded to the input of the public and of Madera

20   County, which response included an analysis of environmental impacts that required mitigation

21   under the Compact.

22       On September 1, 2006, the Tribe received a letter from Rayburn Leach of Madera

23   County's planning department and David Prentice of Madera County's office of county counsel.

24   The letter asserted for the first time that the California Environmental Quality Act ("CEQA")

25   governed the Resort expansion and advised that no permits would be issued without an

26   appropriate Environmental Impact Report under CEQA. The letter advised further that the

27   decision could be appealed to the Board of Supervisors and that any construction activities

28   without a permit would result in a stop work order. With respect to the fact that Madera County

5

Case No. C 79-1710 JF (PVT)
ORDER DENYING THE TRIBE'S MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

1   had never raised CEQA requirements in connection with the construction of the original Resort

2   facilities, the letter stated that "CEQA should have governed." The Tribe asserts that in addition

3   to the September 1 letter, Madera County has threatened to "red tag" the expansion project,

4   meaning that the County will take adverse action against any contractor working on the project.

5          The Tribe brought the instant motion to enforce judgment, asserting that it is an intended

6   third party beneficiary of the 1987 Stipulated Judgment. Madera County argues that the Tribe is

7   not an intended third party beneficiary and lacks standing to move for enforcement of the 1987

8   Stipulated Judgment, and that in any event the 1987 Stipulated Judgment does not preclude the

9   County from enforcing state health and safety laws on the Tribe's fee-owned land.

10         On November 21, 2006, after the Tribe filed the instant motion but before it was heard,

11  Madera County filed a second state court action in Madera County Superior Court seeking to

12  restrain the Tribe from proceeding with the expansion of the Resort. The Tribe immediately

13  removed that action to the Eastern District of California, where it remains pending.

14                                    **II. DISCUSSION**

15         As was discussed at length on the record at the hearing, the Court is not persuaded that a

16  motion to enforce judgment is the proper vehicle for the Tribe's arguments. The Court

17  specifically has held that the Tribe is *not* a party to the 1987 Stipulated Judgment. The Tribe

18  nonetheless asserts that it has standing to bring a motion to enforce judgment pursuant to Federal

19  Rule of Civil Procedure 71, which provides in relevant part that "[w]hen an order is made in

20  favor of a person who is not a party to the action, that person may enforce obedience to the order

21  by the same process as if a party." The Ninth Circuit has held expressly that "intended third-

22  party beneficiaries of consent decrees have standing to enforce those decrees." *Floyd v. Ortiz,*

23  300 F.3d 1223, 1226 (9th Cir. 2002).

24         It is not clear whether the Tribe is a third party beneficiary to the 1987 Stipulated

25  Judgment. However, even assuming without deciding that the Tribe *is* an third party beneficiary

26  of that judgment, the judgment does not address the issue raised by the Tribe's motion, namely

27  whether Madera County may enforce state environmental laws with respect to the Tribe's

28  expansion of its Resort. The Tribe's arguments on this point are grounded in part upon its

6

1 | contention that the 1987 Stipulated Judgment conclusively establishes the lands at issue as

2 | "Indian Country," but also are grounded in federal law, the Compact, the Memorandum of

3 | Understanding between the Tribe and Madera County, and the County's alleged waiver of

4 | jurisdiction over the Resort.  These matters go far beyond the scope of the 1987 Stipulated

5 | Judgment, and thus more properly should be addressed in a new action for declaratory relief.

6 | Accordingly, the Court will deny the Tribe's motion for enforcement of judgment without

7 | prejudice to the Tribe's filing of a declaratory relief action.  In the event that the Tribe does file a

8 | declaratory relief action, it shall file a notice of related case so that such declaratory relief action

9 | may be related to the instant action.

10 | **III. ORDER**

11 | The motion for enforcement of judgment is DENIED.

15 | DATED:  12/6/06

JEREMY FOGEL
United States District Judge

Case No. C 79-1710 JF (PVT)
ORDER DENYING THE TRIBE'S MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

1    Copies of Order served on:

2

3    Counsel for the Tribe:

4    Christina V. Kazhe
     Michael A. Robinson
5    Monteau & Peebles LLP
     1001 Second Street
6    Sacramento, CA 95814

7    Counsel for Madera County parties:

8    Dennis M. Cota
     Steven M. Ingram
9    Samuel L. Emerson
     Best Best & Krieger LLP
10   400 Capitol Mall, Suite 1650
     Sacramento, CA 95814

11

     David A. Prentice
12   County Counsel
     County Counsel of Madera
13   333 West Olive Avenue
     Madera, CA 93637

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

Case No. C 79-1710 JF (PVT)
ORDER DENYING THE TRIBE'S MOTION FOR ENFORCEMENT OF JUDGMENT
(JFLC2)

**EXHIBIT H**

FILED

DEC 1 4 2006

CLERK, U.S. W. WIEKING
NORTHERN DISTRICT COURT
DISTRICT OF CALIFORNIA
SAN JOSE

1
2
3
4
5
6

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, | Case Number C 06-7613 RMW (PVT) |
| Plaintiff, | ORDER RELATING CASE |
| v. | |
| COUNTY OF MADERA, et al., | |
| Defendants. | |

Plaintiff filed the instant action on December 13, 2006. The undersigned having
determined that the instant action is related to earlier-filed case number C 79-1710 JF (PVT), IT
IS HEREBY ORDERED that the instant action be RELATED to the earlier-filed case number
and reassigned to the undersigned. In the future, all filings in the instant case shall bear the case
number "C 06-7613 JF (PVT)."

DATED: 12/13/06

JEREMY FOGEL
United States District Judge

Case No. C 06-7613 RMW (PVT)
ORDER RELATING CASE
(JFLC2)

1  Copies of Order served on:

2

3  Counsel for Plaintiff:

4  John M. Peebles
   Michael A. Robinson
5  Patricia R. Lenzi
   Darcie L. Houck
6  Monteau & Peebles LLP
   1001 Second Street
7  Sacramento, CA 95814

8  Counsel for Defendants:

9  Dennis M. Cota
   Steven M. Ingram
10 Samuel L. Emerson
   Best Best & Krieger LLP
11 400 Capitol Mall, Suite 1650
   Sacramento, CA 95814

12
   David A. Prentice
13 County Counsel
   County Counsel of Madera
14 333 West Olive Avenue
   Madera, CA 93637

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Case No. C 06-7613 RMW (PVT)
ORDER RELATING CASE
(JFLC2)

**EXHIBIT I**

*efiled 3/2/07

1 | DENNIS M. COTA, Bar No. 127992
DEREK P. COLE, Bar No. 204250
2 | COTA DUNCAN & COLE
2241 Douglas Boulevard, Suite 250
3 | Roseville, California 95661
Telephone:    (916) 780-9009
4 | Facsimile:    (916) 780-9050

5 | Attorneys for Defendants
The County of Madera, The Board of Supervisors of
6 | the County of Madera, Thomas P. Kidwell, Tracy
Desmond Kennedy, Rayburn Beach, and The County
7 | of Madera Planning Department

8

9 | UNITED STATES DISTRICT COURT

10 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 | The PICAYUNE RANCHERIA OF                | Case No. 06-CV-07613 JF PVT
CHUKCHANSI INDIANS, a federally
13 | recognized Indian Tribe,                 | STIPULATION RE SETTLEMENT
                                             | AND REQUEST FOR CONTINUING
14 |         Plaintiff,                       | JURISDICTION, FOR ENFORCEMENT
                                             | OF SETTLEMENT AGREEMENT;
15 |     v.                                   | [PROPOSED] ORDER

16 | The COUNTY OF MADERA, a political
subdivision of the State of California; The
17 | BOARD OF SUPERVISORS OF THE
COUNTY OF MADERA; THOMAS P.
18 | KIDWELL, County of Madera Tax Assessor;
TRACY DESMOND KENNEDY, County of
19 | Madera Treasurer/Collector; RAYBURN
BEACH, County of Madera Planning Director;
20 | The COUNTY OF MADERA PLANNING
DEPARTMENT,
21

22 |         Defendants.

23

24

25

26

27

28

1       IT IS HEREBY STIPULATED by and between the COUNTY OF MADERA, a political

2  subdivision of the State of California; the BOARD OF SUPERVISORS OF THE COUNTY OF

3  MADERA; THOMAS P. KIDWELL, County of Madera Tax Assessor; TRACY DESMOND

4  KENNEDY, County of Madera Treasurer/Tax Collector; RAYBURN BEACH, County of

5  Madera Planning Director; the COUNTY OF MADERA PLANNING DEPARTMENT

6  (collectively, "County"), and the PICAYUNE RANCHERIA OF THE CHUKCHANSI

7  INDIANS, a federally recognized Indian Tribe ("Tribe") that the above-entitled action has been

8  settled pursuant to the terms of the written Settlement Agreement and Stipulation to Jurisdiction

9  ("Agreement"), attached hereto as Exhibit A and incorporated by reference.

10       By the terms of the Agreement, these Stipulating Parties (hereafter, "Stipulating Parties")

11  consisting of the County and the Tribe, along with settling parties, Chukchansi Economic

12  Development Agency ("CEDA"), the Yosemite Unified School District ("Schools"), and

13  McCarthy Building Companies, Inc. ("McCarthy"), have contracted and agreed to resolve all

14  pending disputes under the terms and provisions set forth in Exhibit A, which terms include

15  various dispute resolution provisions as set forth therein.  Pursuant to those dispute resolution

16  provisions:

17       IT IS HEREBY STIPULATED that the jurisdiction of United States District Court for

18  the Northern District of California, as currently in place over all parties to the instant action, shall

19  continue for purposes of determining the application, interpretation, and enforcement of the

20  Agreement attached hereto as Exhibit A.

21       These Stipulating Parties further each stipulate, acknowledge, and agree that the

22  sovereign immunity of the Tribe and CEDA shall be expressly waived for purposes of any legal

23  action or proceedings for purposes of determining the application, interpretation, or enforcement

24  of the Agreement attached as Exhibit A.

25       These Stipulating Parties further stipulate, agree, and request that the continuing

26  jurisdiction of this Court shall apply to further actions or legal proceedings regarding the

27  application, interpretation, and enforcement of the Memorandum of Understanding executed by

28  the Tribe and the County concurrently with the Settlement Agreement, attached hereto as

-1-

1  Exhibit B and incorporated by reference. The parties stipulate and agree that the limited waiver

2  of sovereign immunity by the Tribe and CEDA shall extend to actions for legal proceedings

3  regarding the application, interpretation, and enforcement of the 2007 MOU described herein.

4          IT IS SO STIPULATED.

5

6  Dated: February 27, 2007          COTA DUNCAN & COLE

7                                    By:   /s/ Dennis M. Cota
                                          Dennis M. Cota
8                                         Attorneys for Defendants
                                          The County of Madera, The Board of
9                                         Supervisors of the County of Madera,
                                          Thomas P. Kidwell, Tracy Desmond
10                                        Kennedy, Rayburn Beach, and The
                                          County of Madera Planning Department
11

12 Dated: February 28, 2007          TRAINOR FAIRBROOK

13                                    By:   /s/ Gary M. Funamura
14                                         Gary M. Funamura
                                           Attorneys for Defendant
15                                         McCarthy Building Companies, Inc.

16

17 Dated: February 28, 2007          MONTEAU & PEEBLES LLP

18                                    By:   /s/ John M. Peebles
19                                         John M. Peebles
                                           Attorneys for Plaintiff
20                                         The Picayune Rancheria of Chukchansi
                                           Indians

21

22          AGREED AND ACCEPTED:

23 Dated: February 27, 2007          DEGOEDE DUNNE & MARTIN

24
                                      By:   /s/ Raymond W. Dunne
25                                         Raymond W. Dunne
                                           Attorneys for Yosemite Unified School
26                                         District

27

28

---
-2-

STIPULATION RE SETTLEMENT AND REQUEST FOR CONTINUING JURISDICTION; [PROPOSED] ORDER
Case No. 06-CV-07613 JF PVT

1    Dated: February 28, 2007                     MONTEAU & PEEBLES LLP

2

3                                          By:    /s/ John M. Peebles
                                                  John M. Peebles
4                                                 Attorneys for Chukchansi Economic
                                                  Development Agency
5

6                                     **ORDER**

7

8           IT IS ORDERED that the above-entitled action shall be deemed settled pursuant to the

9    terms of the Agreement attached hereto as Exhibit A.  IT IS FURTHER ORDERED that this

10   Court shall retain jurisdiction for purposes of any action or proceeding regarding the application,

11   interpretation, and enforcement of either the Agreement attached hereto as Exhibit A, or the

12   Memorandum of Understanding executed concurrently and attached hereto as Exhibit B.  For

13   purposes of any such proceedings or action regarding the application, interpretation, and

14   enforcement of either the Agreement or the MOU, the Tribe and CEDA have waived sovereign

15   immunity and stipulated to the jurisdiction and authority of this Court for purposes of such

16   proceedings.

17          IT IS SO ORDERED.

18

19   Dated:    3/2/07

                                                  Jeremy Fogel
20                                                United States District Court Judge

21

22

23

24

25

26

27

28

STIPULATION RE SETTLEMENT AND REQUEST FOR CONTINUING JURISDICTION; [PROPOSED] ORDER.
Case No. 06-CV-07613 JF PVT