1   NIELSEN, MERKSAMER, PARRINELLO,
       MUELLER & NAYLOR, LLP
2   JAMES R. PARRINELLO, ESQ. (S.B. NO. 63415)
3   CHRISTOPHER E. SKINNELL, ESQ. (S.B. NO. 227093)
    2350 Kerner Boulevard, Suite 250
4   San Rafael, California 94941
    Telephone:  (415) 389-6800
5   Facsimile:   (415) 388-6874

6   NIELSEN, MERKSAMER, PARRINELLO,
7       MUELLER & NAYLOR, LLP
    CATHY A. CHRISTIAN, ESQ. (S.B. NO. 83196)
8   1415 L Street, Suite 1200
    Sacramento, California 95814
9   Telephone:  (916) 446-6752
10  Facsimile:   (916) 446-6106

11  *Attorneys for Intervenor-Defendants*
    COUNTY OF SACRAMENTO,
12  CALIFORNIA & CITY OF ELK
13  GROVE, CALIFORNIA

14              IN THE UNITED STATES DISTRICT COURT

15            FOR THE NORTHERN DISTRICT OF CALIFORNIA

16  WILTON MIWOK RANCHERIA, *et al.*,      )   Case No.  C-07-02681-JF-PVT
                                           )
17                      *Plaintiffs*,      )   **COMBINED REPLY IN**
                                           )   **SUPPORT OF COUNTY OF**
18  vs.                                    )   **SACRAMENTO'S AND CITY OF**
                                           )   **ELK GROVE'S MOTIONS FOR**
19  KENNETH L. SALAZAR, *et al.*,          )   **INTERVENTION, TO VACATE**
                                           )   **THE JUDGMENT, RE-OPEN**
20                      *Defendants*,      )   **THE CASE & DISMISS**
                                           )
21  COUNTY OF SACRAMENTO, CALIFORNIA       )
22  and CITY OF ELK GROVE, CALIFORNIA,     )   HEARING DATE: Oct. 30, 2009
                                           )   HEARING TIME: 9:00 a.m.
23                 *Proposed Intervenors*. )   JUDGE: Hon. Jeremy Fogel
                                           )   COURTROOM: 3
24  _____)

25

26

27

28

---

REPLY IN SUPPORT OF MOTIONS TO INTERVENE, VACATE,         CASE NOS. C-07-02681-JF-PVT & C-07-05706-JF
& DISMISS - SACRAMENTO COUNTY & CITY OF ELK GROVE

Case No. C-07-05706 (JF)

ME-WUK INDIAN COMMUNITY OF THE
WILTON RANCHERIA, *et al.*,

*Plaintiffs*,

vs.

KENNETH L. SALAZAR, *et al,*,

*Defendants*,

COUNTY OF SACRAMENTO, CALIFORNIA
and CITY OF ELK     GROVE, CALIFORNIA,

*Proposed Intervenors*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    THE COUNTY & CITY DID NOT KNOW, NOR SHOULD THEY
       HAVE KNOWN, THAT THESE SUITS WERE PENDING PRIOR TO
       JUNE 2009, WHEN JUDGMENT WAS ENTERED .................................. 2

III.   THE CITY & COUNTY ARE ENTITLED TO INTERVENE OF RIGHT ...................... 4

       A.    The  Ninth  Circuit's  Decision  In  *Scotts  Valley  Band*
             Conclusively  Establishes  That  The  Local  Governments  Meet
             Three Of The Four Criteria For Intervention Of Right .................................... 4

             1.    The  County  &  City  have  significant,  protectable
                   interests ................................................................................ 4

             2.    The disposition of these actions "may, as a practical
                   matter, impair or impede the [the County and City]'s
                   ability to protect [their] interest[s]." .................................... 7

             3.    The County and City were <u>not</u> adequately represented...................... 8

       B.    The Fourth Criterion Is Also Met: This Motion Was Timely.......................... 8

             1.    Stage of proceedings.................................................... 9

             2.    Lack of prejudice to Existing Parties .................................... 9

3.   Length of delay and reason for delay .................................................. 11

IV.   THE JUDGMENTS MUST BE VACATED AND THE CASES
DISMISSED BECAUSE THIS COURT NEVER HAD JURISDICTION
OVER THESE ACTIONS, AS THE JURISDICTIONAL STATUTE OF
LIMITATIONS HAD LONG SINCE EXPIRED WHEN THE SUITS
WERE FILED ....................................................................................................... 11

A.   The Applicable Statute Of Limitations Is 28 U.S.C. § 2401(a),
Which Had <u>Long</u> Since Expired When These Suits Were Filed ................... 12

B.   The Supreme Court's Ruling In *John R. Sand* Establishes That
Section 2401(a) Is Jurisdictional And Cannot Be Waived ........................... 13

C.   The Wilton Miwok's Reliance on *Cedars-Sinai* Is Misplaced ....................... 15

D.   The "Continuing Claims" Doctrine Cannot Save These Cases...................... 18

E.   The Court Has A Nondiscretionary Duty To Vacate The
Judgment & Dismiss The Complaints With Prejudice ................................. 20

F.   The County And City's Motion To Vacate Should Not Be
Denied Simply Because The Local Governments Are Not Yet
Parties .......................................................................................................... 22

V.   ALTERNATIVELY, THE JUDGMENT SHOULD BE VACATED FOR
MISTAKE,   INADVERTENCE,   SURPRISE,   OR   EXCUSABLE
NEGLECT, OR IN THE INTERESTS OF JUSTICE..................................................23

A.   *Carcieri* Precludes The Secretary From Taking Land Into Trust
For Tribes Not "Under Federal Jurisdiction" In June 1934; The
Wilton Rancheria Did Not Organize As A Tribe Until 1935 ........................ 24

B.   There Is Insufficient Evidence These Are "Restored Lands."....................... 26

VI.   THE COUNTY AND CITY UNQUESTIONABLY HAVE STANDING ....................27

VII   THESE CASES ARE NEITHER MOOT NOR UNRIPE ........................................... 28

VIII.   TRIBAL IMMUNITY DOES NOT BLOCK THESE MOTIONS............................... 30

IX.   CONCLUSION ......................................................................................................... 30

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Alaniz v. California Processors, Inc.,*
   73 F.R.D. 289 (N.D. Cal. 1976) .................................................................9

*Aloe Vera of Am., Inc. v. United States*,
   574 F.3d 1176, 1180-81 (9th Cir. 2009), *amended by*, 2009 U.S. App.
   LEXIS 20137 (9th Cir. Sept. 2, 2009) ................................... 15,16

*Alvarez-Machain v. United States,*
   107 F.3d 696 (9th Cir. 1997), *vac'd and reh'g en banc granted,* 284
   F.3d 1039 (9th Cir. 2002)............................................................ 16,17

*Arbaugh v. Y & H Corp.,*
   546 U.S. 500 (2006) .................................................................... 11

*Bank One, Tex., N.A. v. Taylor*,
   970 F.2d 16 (5th Cir. 1992) ........................................................ 20

*Battle v. Liberty National Life Ins.,*
   770 F. Supp. 1499 (N.D. Ala. 1991), *aff'd* 974 F.2d 1279 (11th Cir.
   1992) .......................................................................................... 22

*Beneficial Cal., Inc. v. Villar (In re Villar),*
   317 B.R. 88 (B.A.P. 9th Cir. 2004) ....................................... 22,23

*Big Spring v. United States,*
   767 F.2d 614 (9th Cir. 1985), *cert. den.,* 476 U.S. 1181 (1986) ............................... 16

*Bloomington v. Westinghouse Elec. Corp.,*
   824 F.2d 531 (7th Cir. 1987) ......................................................10

*Butte County v. Hogen,*
   609 F. Supp. 2d 20 (D.D.C. 2009) ...............................................6

*Cal. Dep't of Toxic Subs. Control v. Commercial Realty Projs., Inc.*, 309
   F.3d 1113 (9th Cir. 2002).......................................................... 8,11

*Cal. Valley Miwok Tribe v. United States*,
   Case 02-0912-FCD-GGH (E.D. Cal.) ..................................... 12,19

*Carcieri v. Salazar*,
   555 U.S. ___, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) ...........................1,24,25,26

*Cedars-Sinai Med. Ctr. v. Shalala*,
    125 F.3d 765 (9th Cir. 1997) .......................................................... 15,16,17,18

*Cedars-Sinai Med. Ctr. v. Shalala*,
    177 F.3d 1126 (9th Cir. 1999) ....................................................................... 16

*Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074 (10th Cir. 2004),
    *modified and reh'g den.*, 2005 U.S. App. LEXIS 2765 (10th Cir. Feb
    16, 2005), *cert. denied*, 546 U.S. 812 (2005) ............................................ 30

*Citibank Int'l v. Collier-Traino, Inc.*,
    809 F.2d 1438 (9th Cir. 1987) ....................................................................... 22

*Citizens Against Casino Gambling v. Hogen*,
    2008 U.S. Dist. LEXIS 67743 (W.D.N.Y. Aug. 26, 2008) ............................. 5

*City of Roseville v. Norton*,
    219 F. Supp. 2d 130 (D.D.C. 2002), *aff'd*, 348 F.3d 1020 (D.C. Cir.
    2003), *cert. denied sub nom. Citizens for Safer Cmtys. v. Norton*, 541
    U.S. 974 (2004) .............................................................................................. 5

*City of Sault Ste. Marie v. Andrus*,
    458 F. Supp. 465 (D.D.C. 1978) .............................................................. 4,27

*City of Tacoma v. Andrus*,
    457 F. Supp. 342 (D.D.C. 1978) .............................................................. 4,27

*Comanche Nation v. United States*,
    393 F. Supp. 2d 1196 (W.D. Okla. 2005) ...................................................... 5

*Confederated Tribes of Siletz Indians v. United States*,
    110 F.3d 688 (9th Cir. 1997) ......................................................................... 5

*County of Oneida v. Oneida Indian Nation*,
    470 U.S. 226 (1985) ..................................................................................... 13

*Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n*,
    2008 U.S. Dist. LEXIS 98001 (D. Nev., Dec. 3, 2008) ............................... 17

*Crow Tribe of Indians v. Norton*,
    2006 WL 908048 (D.D.C. Apr. 7, 2006) ........................................................ 2

*Energy Transp. Group, Inc. v. Maritime Admin.*,
    956 F.2d 1206 (D.C. Cir. 1992) ................................................................... 28

*Felter v. Norton,*
    412 F. Supp. 2d 118 (D.D.C. 2006), *rem'd on other grounds sub nom.,*
    *Felter v. Kempthorne*, 473 F.3d 1255 (D.C. Cir. 2007) ..............................18

*Felter v. Kempthorne,*
    473 F.3d 1255 (D.C. Cir. 2007) ...........................................................12,18

*Firefighters v. City of Cleveland,*
    478 U.S. 501 (1986) ............................................................................ 28

*Frew v. Hawkins,*
    540 U.S. 430 (2004) .............................................................................. 28

*Galbraith v. County of Santa Clara,*
    307 F.3d 1119 (9th Cir. 2002) ............................................................. 15

*Georgalis v. U.S. Patent & Trademark Office,*
    296 Fed. Appx. 14 (Fed. Cir. 2008) ................................................. 14,16

*Gould v. Mutual Life Ins. Co.,*
    790 F.2d 769 (9th Cir.), *cert. denied,* 479 U.S. 987 (1986) ..................... 20

*Hoffman v. United States*, 266 F. Supp. 2d 27, 40 & n.13 (D.D.C. 2003),
    *aff'd,* 96 Fed. Appx. 717 (Fed. Cir.), *cert. denied,* 543 U.S. 1002
    (2004) ...............................................................................................14

*Hopland Band of Pomo Indians v. United States,*
    855 F.2d 1573 (Fed. Cir. 1988) ................................................12,14,18,19

*John R. Sand & Gravel Co. v. United States,*
    552 U.S. 130, 128 S. Ct. 750 (2008) ............................................. passim

*Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar,*
    168 F.3d 347 (9th Cir. 1999)................................................................ 22

*Knox v. Davis,*
    260 F.3d 1009 (9th Cir. 2001) ............................................................. 20

*Loring v. United States,*
    610 F.2d 649 (9th Cir. 1979) .............................................................. 16

*Lubben v. Selective Serv. Sys. Local Board No. 27,*
    453 F.2d 645, 649 (1st Cir. 1972) ......................................................20,21

*Marley v. United States,*
    548 F.3d 1286 (9 Cir. 2008), *modified & reh'g denied en banc*, 567
    F.3d 1030 (9th Cir. 2009) .............................................................. passim

*Miami Nation of Indians v. Lujan*,
  832 F. Supp. 253 (N.D. Ind. 1993), *aff'd sub nom.*, *Miami Nation of Indians of Ind., Inc. v. United States DOI*, 255 F.3d 342 (7th Cir. 2001), *cert. den.*, 534 U.S. 1129 (2002) .......................................... 12,18,19

*Mille Lacs Band of Chippewa Indians v. Minn.*,
  853 F. Supp. 1118 (D. Minn. 1994) .......................................... 13

*Miller v. Gammie*,
  335 F.3d 889 (9th Cir. 2003) (en banc) .............................. 15,16

*NASD Dispute Res., Inc. v. Judicial Council*,
  488 F.3d 1065 (9th Cir. 2007) ............................................... 17

*Nemaizer v. Baker*,
  793 F.2d 58 (2nd Cir. 1986) .................................................. 20

*New York v. Shinnecock Indian Nation*,
  523 F. Supp. 2d 185 (E.D.N.Y. 2007) ....................................... 5

*Nichols v. Rysavy*,
  809 F.2d 1317, 1331 (8th Cir.), *cert. denied*, 484 U.S. 848 (1987) ........................... 13

*No. Pac. Ry. Co. v. Boyd*,
  177 F. 804 (9th Cir. 1910) .................................................... 10

*Noletto v. NationsBanc Mortg. Corp. (In re Noletto)*,
  281 B.R. 373 (S.D. Ala. Bankr. 2001) ...................................... 2

*Oregon Mortg. Co. v. Renner*,
  96 F.2d 429 (9th Cir. 1938) ................................................... 10

*People Who Care v. Rockford Bd. of Education*,
  961 F.2d 1335 (7th Cir. 1992) ............................................... 28

*Phelps v. Alameida*,
  569 F.3d 1120 (9th Cir. 2009) ............................................... 15

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993) ............................................................ 23

*Practical Concepts v. Republic of Bolivia*,
  613 F. Supp. 863 (D.D.C.), *reconsideration denied*, 615 F. Supp. 92 (D.D.C 1985), *rem'd*, 811 F.2d 1543 (D.C. Cir. 2007) ............................... 21

*Pract. Concepts, Inc. v. Repub. of Bolivia,*
811 F.2d 1543 (D.C. Cir. 2007) ................................................................. 21

*Pub. Citizen, Inc. v. Mukasey,*
2008 U.S. Dist. LEXIS 81246 (N.D. Cal. Oct. 9, 2008) ........................... 17

*Rio Props., Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002) .................................................................12

*Romeiro De Silva v. Smith,*
773 F.2d 1021 (9th Cir. 1985) ................................................................. 30

*Sagebrush Rebellion, Inc. v. Watt,*
713 F.2d 525 (9th Cir. 1983) ..................................................................... 8

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United
States,* 921 F.2d 924 (9th Cir. 1990) ............................................... passim

*Sierra Club v. Johnson,*
2009 U.S. Dist. LEXIS 14819 (N.D. Cal. Feb. 25, 2009) ......................... 17

*Simer v. Rios,*
661 F.2d 655 (7th Cir. 1981), *cert. denied,* 456 U.S. 917 (1982) ............. 22

*Sisseton-Wahpeton Sioux Tribe v. United States,*
895 F.2d 588 (9th Cir.), *cert. den.,* 498 U.S. 824 (1990) ......................... 16

*Southwest Ctr. for Biological Diversity v. Berg,*
268 F.3d 810 (9th Cir. 2001) ......................................................................4

*Stallworth v. Monsanto Co.,*
558 F.2d 257 (5th Cir. 1977) ....................................................................10

*Stotts v. Memphis Fire Dep't,*
679 F.2d 579 (6th Cir.), *cert. den.,* 459 U.S. 969 (1982) .........................10

*Sullivan v. Stroop,*
496 U.S. 478 (1990) ..................................................................................14

*Tabbee v. United States,*
30 Fed. Cl. 1 (1993), *appeal dismissed,* 36 F.3d 1114 (Fed. Cir. 1994) ....................18

*TCI Group Life Ins. Plan v. Knoebber,*
244 F.3d 691 (9th Cir. 2001) ....................................................................23

*Tillie Hardwick v. United States,*
Case No. C-79-1710-SW (N.D. Cal.) ...........................................................2

*Tocher v. City of Santa Ana*, 219 F.3d 1040 (9th Cir. 2000), *overruled in part on other grounds, Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424 (2002) ..................................................................................9

*Tosco Corp. v. Hodel*,
    804 F.2d 590 (10th Cir. 1986) ........................................................ 28,29

*Triad Energy Corp. v. McNell*,
    110 F.R.D. 382 (S.D.N.Y. 1986) ...........................................................12

*United States v. Alcan Aluminum*,
    25 F.3d 1174 (3d Cir. 1994)..................................................................10

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ..................................................................4

*United States v. Beggerly*,
    524 U.S. 38 (1998) ............................................................................... 30

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) (per curiam) ................................ 6,10,11,28

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ..................................................................4

*United States ex rel. McGough v. Covington Technologies Co.*,
    967 F.2d 1391 (9th Cir. 1992) ................................................................9

*United States v. Ford*,
    650 F.2d 1141 (9th Cir. 1981) ............................................................. 28

*United States v. Mottaz*,
    476 U.S. 834 (1986) .............................................................................13

*United States v. Oregon*,
    657 F.2d 1009 (9th Cir. 1981)............................................................. 30

*United States v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ..................................................................9

*United States v. State of Oregon*,
    913 F.2d 576 (9th Cir. 1990)................................................................ 11

*UOP v. United States*,
    99 F.3d 344 (9th Cir. 1996) ..................................................................16

*Viet Mike Ngo v. Woodford,*
    539 F.3d 1108 (9th Cir. 2008)................................................................19,20

*W. Va. Highlands Conservancy v. Johnson,*
    540 F. Supp. 2d 125 (D.D.C. 2008), *appeal dismissed*, 2009 U.S.
    App. LEXIS 1822 (D.C. Cir. 2009) ...................................................13,14,16

*Walters v. Sec'y of Def.,*
    725 F.2d 107 (D.C. Cir. 1983) ........................................................... 14,17

*Williams v. Owens-Illinois, Inc.,*
    665 F.2d 918 (9th Cir. 1982) ................................................................. 19

*Wilson v. Southwest Airlines Co.,*
    98 F.R.D. 725 (N.D. Tex. 1983) ........................................................... 9,11

*Wyandotte Nation v. City of Kan. City,*
    200 F. Supp. 2d 1279 (D. Kans. 2002)......................................................5

*Wyandotte Nation v. Nat'l Indian Gaming Comm'n,*
    437 F. Supp. 2d 1193 (D. Kans. 2006).....................................................27

## Statutes

Quiet Title Act, 28 U.S.C. § 2409a ...............................................................7

25 U.S.C. § 2719(b)(1)(A) ....................................................................... 6,26

25 U.S.C. § 2719(b)(1)(B)(iii) ................................................................. 6,26

28 U.S.C. § 2401(a) ............................................................................ passim

28 U.S.C. § 2401(b) ............................................................................15,16,17

28 U.S.C. § 2415 ................................................................................ 12,13

28 U.S.C. § 2501 ..............................................................................13,14,15

Pub. L. No. 80-773, 62 Stat. 869 (June 25, 1948)................................... 14

## Regulations

25 C.F.R. pt. 83 ...................................................................................... 30

25 C.F.R. pt. 151 ......................................................................................7

25 C.F.R. § 151.2(f) ......................................................................................25

## <u>Other</u>

Federal Rule of Civil Procedure 12(h)(3) ...........................................1,11

Federal Rule of Civil Procedure 19 .....................................................4

Federal Rule of Civil Procedure 24(a) .................................................9

Federal Rule of Civil Procedure 60(b)........................................... passim

29 Fed. Reg. 13,146 (Sept. 22, 1964) ...............................................12

Note, *The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure*, 37 Va. L. Rev. 863, 867 (1951)......................................10

# I.   __INTRODUCTION__.[1]

Judgment in this action was granted based on claims that suffer a fundamental jurisdictional defect: they are barred by the statute of limitations in 28 U.S.C. § 2401(a), which is not subject to waiver by the federal defendants, and which deprives this court of subject matter jurisdiction over the action.  Consequently, the Court has a *non-discretionary duty* to vacate the judgment under Rule 60(b)(4), and to dismiss these actions with prejudice under Rule 12(h)(3).

Two of the three Existing parties—including, conspicuously, the federal government—make no effort to dispute the claim that § 2401(a) is jurisdictional and not subject to waiver.  Indeed, neither the federal defendants nor the Me-Wuk Community even cite the primary cases relied upon by the County and City: *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S. Ct. 750 (2008) ("*John R. Sand*"), and *Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008), *modified & reh'g en banc den.*, 567 F.3d 1030 (9th Cir. 2009).  The Wilton Miwok make a cursory effort to address this issue, relying on an opinion that pre-dated *John R. Sand* and was effectively overruled by it.

As an alternative to the jurisdictional issue, the judgments should be vacated because (1) they commit the government to taking property into trust on the tribes' behalf in violation of *Carcieri v. Salazar*, 555 U.S. ___, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009), and because (2) there is insufficient evidence that the current tribes have met the various requirements to establish that these are "restored lands" within the meaning of IGRA.

Rather than squarely face these fundamental defects on the merits, the Existing Parties devote most of their efforts to misguided and meritless attempts to convince the Court it lacks the power to even hear these motions.   In light of the posture of this case, in which the County and City—who should have been named as necessary parties to these actions—were deprived of any notice of the pendency of these suits, and which threatens

---

[1] With leave of court, the County of Sacramento and City of Elk Grove submit a combined reply brief in support of (1) its motion to intervene, and (2) its motion to re-open these cases, vacate the judgment and dismiss this action.

1    real harm to their interests, the Existing Parties' efforts to avoid review are unfounded.

2            The motions to intervene, vacate the judgment, and dismiss should be granted.

3    **II.    THE COUNTY & CITY DID NOT KNOW, NOR SHOULD THEY HAVE**

4    **KNOWN, THAT THESE SUITS WERE PENDING PRIOR TO JUNE 2009,**

5    **WHEN JUDGMENT WAS ENTERED.**

6            With their moving papers, the County and City provided sworn declarations that

7    neither movant had knowledge of the pendency of these suits until the settlement was

8    approved by the Court in June 2009.  (Cochran Decl. [#67], ¶ 14; Hahn Decl. [#66], ¶ 2.)

9            For their part, the federal defendants and the Me-Wuk Community do not dispute

10   this fact.  Instead, they seek to expand the notion of "constructive knowledge" beyond all

11   reasonable limits to argue that the County and City "should have known" of these suits.

12           The federal defendants take the extreme position that the County and City must be

13   held to have constructive knowledge of every pleading ever filed in any court anywhere in

14   the nation.  That is simply not the law.  *See, e.g., Noletto v. NationsBanc Mortg. Corp. (In*

15   *re Noletto)*, 281 B.R. 373, 376 (S.D. Ala. Bankr. 2001) (granting intervention and rejecting

16   contention that proposed intervenor "should have known" of suit pending for more than

17   two years where intervenor's counsel had tried a similar case in Alabama already and

18   purportedly knew of intervenor's interest long before). The sole case cited by federal

19   defendants in support of their stunningly broad proposition, *Crow Tribe of Indians v.*

20   *Norton*, 2006 WL 908048 (D.D.C. Apr. 7, 2006), does not support the sweeping gloss put

21   upon it.  In that case, the proposed intervenors were "Crow Tribal members."  *Id.* at *7.

22   Thus, it was not merely the public nature of the documents in that action that put the

23   intervenors on notice of the litigation, but also the fact that they were in privity with—and

24   represented by—an existing party to the litigation.  That is not the case here.

25           The Me-Wuk Community takes an equally extreme position: that the existence of

26   the *Tillie Hardwick* litigation 25 years ago, a congressional report issued more than 10

27   years before this suit was filed (which recommended that *Congress* restore the tribe), and

28   legislation offered by Rep. Miller in 2000 (seven years before these suits were filed)

---

should have put the County and City on notice of the need to intervene in this litigation, which was still years off at the time each of those events took place.

The tribes also discuss in strikingly general terms, meetings and press coverage that they claim should have to put the County and City on notice of these suits.  But a review of the press coverage and public notices attached to the Declaration of Little Fawn Boland shows just how tightly under wraps information about this litigation was kept, and underscores why the County and City had no notice of it.   It is telling that the best quote Ms. Boland can find in <u>any</u> of the materials is a statement that Chairman Tarango was "optimistic, and said her tribe could be restored in about a year."  (Boland Decl., ¶ 27.)   This generic, passing comment regarding "restoration" makes no reference to litigation; it cannot *even remotely* be regarded as putting the County or City on reasonable notice that intervention should be sought.  In fact, *none* of the materials provided discuss the initiation or pendency *of litigation,* let alone mention *these lawsuits*.

Of the three Existing Parties, only one—the Wilton Miwok—even suggests the County or City had actual knowledge of these suits prior to judgment.  But its claim is transparently vague: nowhere does it come right out and say that County Supervisor Nottoli was informed that a suit was filed to restore tribal recognition and take lands into trust—though that is clearly the *impression* that the Tarango Declaration means to give.  Supervisor Nottoli, for his part, disputes Chairwoman Tarango's inference that she informed him these actions were pending, or that he knew of the actions at all prior to the settlement's approval by the Court.  (Declaration of Don Nottoli, filed herewith, ¶¶ 3-6.)  Furthermore, Chairwoman Tarango's innuendos are inconsistent with the statements of her own counsel, who admits that the settlement negotiations between the federal defendants and the plaintiffs were "confidential."  (Kazhe Declaration [Dkt. #80], ¶ 10.)  And finally, "a district court is required to accept as true the non-conclusory allegations made in support of an intervention motion," *S.W Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001), so to the extent there is a factual dispute on this question, it must be resolved in the County and City's favor for purposes of these motions.

**III.    THE COUNTY & CITY ARE ENTITLED TO INTERVENE OF RIGHT.**

Ninth Circuit case law requires "an applicant for intervention as of right to demonstrate that '(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest.'"   *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). The County and City meet all these requirements.

**A.    The Ninth Circuit's Decision In *Scotts Valley Band* Conclusively Establishes That The Local Governments Meet Three Of The Four Criteria For Intervention Of Right.**

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924 (9th Cir. 1990) ("*Scotts Valley*"), establishes conclusively that intervention requirements (1), (2) and (4), cited above, are satisfied.

**1.    The County & City have significant, protectable interests.**

The binding Ninth Circuit precedent in *Scotts Valley* holds that a local government has a "significant, protectable interest" in challenging the Secretary's decision to take land into trust on behalf of a tribe when that trust decision will affect the local jurisdiction's taxing and regulatory authority.   *See also City of Sault Ste. Marie v. Andrus*, 458 F. Supp. 465 (D.D.C. 1978) (City had standing to challenge Secertary's decision to take land into trust on behalf of a tribe due to effects on regulatory and taxing jurisdiction); *City of Tacoma v. Andrus*, 457 F. Supp. 342 (D.D.C. 1978) (same).   In fact, the deprivation of taxing and regulatory authority occasioned by Indian trust lands are even significant enough to make the County and City a <u>necessary party</u> to this action under Rule 19. *Wyandotte Nation v. City of Kan. City*, 200 F. Supp. 2d 1279 (D. Kans. 2002).[2]

---

[2] The Me-Wuk Community make no attempt to dispute this fact.  The Wilton Miwok and federal defendants offer perfunctory denials but do not even cite, much less attempt to distinguish

Nevertheless, the Existing Parties try to end-run the application of *Scotts Valley* by recharacterizing the relevant interests, focusing on the ancillary question of whether *casino gaming* will take place upon these parcels. Whether or not gaming will take place is beside the point; the deprivation of local governments' regulatory and taxing authority—the interest discussed in *Scotts Valley*—does not depend on whether gaming is ever approved on the parcels. In fact, there is no mention of gaming anywhere in *Scotts Valley*. The Existing Parties' focus on gaming is a red herring.[3]

But even beyond that misdirection, and taken on its own terms, the idea put forth by the Existing Parties that gaming is "speculative" strains credibility. The United States has *already* agreed that it will take certain, specified parcels, comprising approximately 16 acres, into trust—without complying with the Secretary's fee-to-trust regulations. Tribal casinos have been built on parcels of this size. *See, e.g., Confederated Tribes of Siletz Indians v. United States*, 110 F.3d 688, 693 (9th Cir. 1997) (16 acres); *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 190 (E.D.N.Y. 2007) (15 acres); *Comanche Nation v. United States*, 393 F. Supp. 2d 1196, 1201 (W.D. Okla. 2005) (0.53 acres); *Citizens Against Casino Gambling v. Hogen*, 2008 U.S. Dist. LEXIS 67743, *3 (W.D.N.Y. Aug. 26, 2008) (9.5 acres). Moreover, the government has *already* agreed, in the Settlement Agreement, that those 16 acres are the "restored lands of a restored tribe," making them automatically eligible for gaming without the need to get the approval of the State's governor, or consult with local officials, as would normally be required. 25 U.S.C.

_____

*Wyandotte Nation*. In that case the State of Kansas was deemed a necessary party in a case very similar to this, based on threats to its taxing and regulatory interests.

[3] The tribes spill an inordinate amount of ink trying to establish that the City of Elk Grove currently has no regulatory authority over the parcels. They also try to avoid the holding of *City of Roseville v. Norton*, 219 F. Supp. 2d 130, 140 & 142 (D.D.C. 2002), that municipalities have standing to challenge the economic and environmental impacts of potential casino gaming under IGRA, even if the parcels on which the casino will be built are outside the cities' boundaries, by arguing that gaming is "speculative." This latter point is discussed above. But even if these arguments had some merit they would not affect the interests of the County of Sacramento, which unquestionably has taxing, regulatory and jurisdictional powers over the affected parcels. Thus, if intervention is granted to the County of Sacramento, as it should be, there is no good rationale for preventing the City of Elk Grove from participating along with it.

§ 2719(b)(1)(B)(iii).  In light of this latter agreement, the purported ability of the County and City to challenge future approval of a tribal gaming ordinance is illusory.  *See Butte County v. Hogen*, 609 F. Supp. 2d 20 (D.D.C. 2009).   And, the notion that the County and City's interests will be protected by the State of California in negotiating a gaming compact (1) ignores that "there is no presumption that one governmental entity represents another," *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (per curiam), and (2) is contrary to the Indian Gaming Regulatory Act, which normally requires consultation with state <u>and</u> local officials before gaming can occur on lands acquired after 1988.  25 U.S.C. § 2719(b)(1)(A).

The Wilton Miwok also focus on what they view as the "*de minimis*" nature of the property taxes that will be lost by taking the affected parcels into trust—only $1,927.46 (they allege).  For one thing, this narrow focus ignores the significant fact that taking land into trust also deprives local governments of extensive regulatory jurisdiction, including land use authority, over the parcels.  Moreover, the tax loss held to merit intervention in *Scotts Valley* was only $3,300, also a "*de minimis*" amount.

The Me-Wuk Community, inexplicably, argues that the County and City lack a sufficient interest because no lands have yet been identified for acceptance into trust.  This statement is flatly contradicted by the express terms of the Settlement Agreement, as acknowledged by the federal defendants.   Under Paragraph 7 and Exhibit B of that agreement, the government "agrees to accept in trust status" certain specified parcels.

The Me-Wuk Community also argues that the fact there is already a judgment in this case undercuts the holding of *Scotts Valley* that the County and City have a significant, protectable interest, because the County and City have no interest in illegally exercising jurisdiction over these parcels.   This puts the cart before the horse—the legitimacy of the judgment is the very thing the County and City seek to contest.

And finally, two of the Existing Parties suggest that the fact Butte County and Mendocino County were denied intervention in the *Scotts Valley* case means the County and City lack a significant protectable interest here.  In support of this position they cite a

transcript that neither party, conveniently, submits to the Court.[4]  The Wilton Miwok give away the game on this argument, however, admitting that the *timing* of the motion prevented it being granted.  *See* Wilton Miwok's Intervention Opp., p. 17:9-10.  Butte and Mendocino Counties did not seek to intervene until years after the City of Chico.  The County and City have not relied on that case in connection with timeliness.

> ## 2.   The disposition of these actions "may, as a practical matter, impair or impede the [the County and City]'s ability to protect [their] interest[s]."

*Scotts Valley* also held that where a tribe attempts to use litigation to evade the Secretary's land-into-trust regulations, which require consideration of a local jurisdiction's taxing and regulatory interests, and to force the Secretary to take land into trust by court order instead, the local jurisdiction's "claims will go unheard and its interests unprotected" absent intervention.  921 F.2d at 928.  As in that case, "allowing the [County and] City to intervene in this action is the only practical means of protecting [their] taxing and regulatory interest[s]."  *Id*.  The Quiet Title Act exacerbates this harm by absolutely precluding a suit challenging the land's trust status once title is transferred to the federal government, a fact not disputed by any party; and a subsequent lawsuit would face grave difficulties in light of tribal immunity—a fact demonstrated by the Me-Wuk Community's misguided attempt to block this motion with immunity.

The federal defendants candidly admit that under the Settlement some parcels *will be taken into trust without compliance with the Secretary's regulations in Part 151*—the very harm at issue in *Scotts Valley*.  USA's Opp., p. 11:1 ("It is true that the Part 151 process will not apply to a limited amount of land . . . .").  *See also* Stipulated Judgment, ¶¶ 7, 8 & 10 (specifying parcels that the Secretary agrees to take into trust outright).  In light of that admission, there is no merit to the federal defendants' argument that because some *other* parcels cannot be taken into trust without compliance with the Part 151

---

[4] See attached.

regulations, the County and City's interests with respect to *these* parcels are protected.

The Parties further try to end-run the holding of *Scotts Valley* by urging that the County and City can oppose *gaming* on those parcels in future administrative proceedings. In other words, they change the subject. Again, the interests threatened by this litigation, as recognized by *Scotts Valley*, are the taxing and regulatory interests of the local governments over the parcels specified in the Settlement. Subsequent casino gaming may result in *additional* harm to the County and City, but the deprivation of regulatory and taxing jurisdiction is a harm that will be felt even if no gaming ever occurs.

### 3.   The County and City were **not** adequately represented.

The Wilton Miwok's claim that the County and City's interests were adequately represented in these cases is nothing short of frivolous. The federal defendants themselves do not make such an argument. The Wilton Miwok ignore the holding of *Scotts Valley* that "the federal Government and federal officials only, are not in a position adequately to protect any of the City's municipal interests. The United States and its officials, because they do not directly share the City's municipal interest, will not necessarily act to protect that interest." *Scotts Valley*, 921 F.2d at 926-27. *See also United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (per curiam) ("there is no presumption that one governmental entity represents another."). Moreover, *the facts of this case* make clear that the County and City's interests were **not** represented. This unquestionably meets the "minimal" burden placed on the County and City under this prong. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

### B.   The Fourth Criterion Is Also Met: This Motion Was Timely.

In determining a motion's "timeliness," a court generally evaluates three factors: (1) the stage of the proceedings, (2) prejudice to existing parties, and (3) the length of, and reason for, any delay in seeking to intervene. *Cal. Dep't of Toxic Subs. Control v. Commercial Realty Projs., Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). Courts assess timeliness "leniently" when intervention is sought of right, because of the "likelihood" of "serious harm." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

### 1.    Stage of proceedings.

The Existing Parties argue that post-judgment intervention is "generally disfavored," but they do not—and cannot—deny that it *is permissible* in appropriate circumstances.  *United States ex rel. McGough v. Covington Tech. Co.*, 967 F.2d 1391, 1394-95 (9th Cir. 1992) (overturning denial of post-judgment intervention as abuse of discretion); *Wilson v. S.W. Airlines Co.*, 98 F.R.D. 725 (N.D. Tex. 1983) (allowing intervention filed 54 days after judgment).  In fact, the Ninth Circuit has held there is a "general rule that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal." *McGough*, 967 F.2d at 1394-95.  *See also Tocher v. City of Santa Ana*, 219 F.3d 1040 (9th Cir. 2000) (intervention to participate in further trial court proceedings timely when filed within appeal time), *overruled in part on other grounds, Columbus v. Ours Garage & Wrecker Serv.*, 536 U.S. 424 (2002).

The Ninth Circuit has recognized that intervention "has been granted *after settlement agreements were reached* in cases where the applicants had *no means of knowing* that the proposed settlements was [sic] contrary to their interests."  *Alisal Water Corp.*, 370 F.3d at 922.  The courts have also recognized that post-judgment intervention is appropriate when "it is the only way to protect the intervenor's rights."  *Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 289, 294 (N.D. Cal. 1976).  The Existing Parties concede by silence that the Quiet Title Act, and tribal sovereignty issues in a subsequent, mean this action is the only practical vehicle for the County and City to challenge the government's agreement to take land into trust on Plaintiffs' behalf.

### 2.    Lack of prejudice to Existing Parties.

The County and City reiterate that any prejudice the Existing Parties experience is attributable to the Parties' own failure to properly join the County and City as necessary parties—or to at least notify them of the pendency of this action, which the Parties knew would affect the County and City's governmental interests—and most certainly should not be held against the County and City.  "The timeliness requirement of Rule 24 . . . is 'an elemental form of laches or estoppel' . . . ." *Stallworth v. Monsanto Co.*, 558 F.2d 257,

266 (5th Cir. 1977) (quoting Note, *The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure*, 37 Va. L. Rev. 863, 867 (1951)).  "Where the party interposing a defense of laches has contributed to or caused the delay, he cannot take advantage of it."  *Oregon Mortg. Co. v. Renner*, 96 F.2d 429, 433 (9th Cir. 1938) (quoting *No. Pac. Ry. Co. v. Boyd*, 177 F. 804, 824 (9th Cir. 1910)).  *See also United States v. Alcan Aluminum*, 25 F.3d 1174, 1182 (3d Cir. 1994) ("timeliness should not prevent intervention where an existing party induces the applicant to refrain from intervening.").

Moreover, "[f]or the purpose of determining whether an application for intervention is timely, the relevant issue *is not how much prejudice would result from allowing intervention*, but rather how much prejudice would result from the would-be intervenor's failure to request intervention *as soon as he knew or should have known of his interest in the case*." *Stallworth*, 558 F.2d at 267 (emphasis added).  *See also Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir.), *cert. den.,* 459 U.S. 969 (1982) (same); *Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 535 (7th Cir. 1987).

In this case, there was only a two-month delay between the time the County and City learned of the settlement and the time they moved to intervene; this delay caused no prejudice of any kind to the Existing Parties, nor do they ever suggest otherwise.

Instead, the Exising Parties object that they are prejudiced because the product of lengthy settlement negotiations, conducted before the County and City "knew or should have known of [their] interest in the case*"* (*Stallworth*, 558 F.2d at 267), will be undone. But their implication that negotiated settlement agreements are sacrosanct and a bar to intervention is inconsistent with Ninth Circuit case law; in *Carpenter*, the Court overturned the denial of a motion for intervention, which was filed after 18 months of litigation, six months of court-ordered mediation four days of settlement talks, and after settlement had already been submitted for court approval, when—as here—the intervenors *had no notice* that the proposed settlement was contrary to their interests. *Carpenter*, 298 F.3d at 1125.  The County and City's lack of knowledge that these actions were pending distinguishes the cases cited by the Existing Parties, and brings it within the

holding of *Carpenter*.   *See also Wilson*, 98 F.R.D. 725 (permitting intervention to challenge settlement two months after judgment).

### 3.   Length of delay and reason for delay.

In addressing this prong, the courts also consider the length and reason for delay from the time the movant "knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'"   *Cal. Dep't of Toxic Subs. Control*, 309 F.3d at 1120 (quoting *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)). Again, the County and City did not learn of the pendency of these actions until mid-June 2009, after judgment was already entered.   Upon learning of the settlement, the County and City moved expeditiously to seek intervention, as detailed in the local governments' moving papers.   No Existing Party contends this two-month delay was unreasonable.[5] Rather, they rely on unreasonably expansive notions of constructive knowledge, and the disputed declaration of Chairwoman Tarango, to suggest the County and City knew or should have known of these suits sooner—a meritless contention, refuted above.[6]

## IV.   THE JUDGMENTS MUST BE VACATED AND THE CASES DISMISSED BECAUSE THIS COURT NEVER HAD JURISDICTION OVER THESE ACTIONS, AS THE JURISDICTIONAL STATUTE OF LIMITATIONS HAD LONG SINCE EXPIRED WHEN THE SUITS WERE FILED.

"The objection that a federal court lacks subject-matter jurisdiction, . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, *even after trial and the entry of judgment*.   Rule 12(h)(3) instructs: 'Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action.'"   *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).   "When either subject matter or personal jurisdiction is contested under Rule 60(b)(4), the burden of proof is properly placed on the party asserting that jurisdiction

---

[5] *See, e.g., Wilson*, 98 F.R.D. 725.
[6] Finally, as argued in the County and City's initial moving papers, if intervention of right is denied to one or both parties, permissive intervention would be appropriate here.

existed." *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986).  *See also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

**A.    The Applicable Statute Of Limitations Is 28 U.S.C. § 2401(a), Which Had <u>Long</u> Since Expired When These Suits Were Filed.**

"[S]tatutes of limitations are to be applied against the claims of Indian tribes in the same manner as against any other litigant seeking legal redress or relief from the government." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576 (Fed. Cir. 1988).  None of the Existing Parties dispute that the present actions were filed *more than forty years* after the Wilton Rancheria was terminated, on September 22, 1964. (Me-Wuk Complaint, ¶ 51; Wilton Complaint, ¶ 28.)  *See also* 29 Fed. Reg. 13,146 (Sept. 22, 1964).  Nor do they ever dispute that the tribe reasonably should have known about its cause of action decades ago.  Accordingly, as the Bureau of Indian Affairs has stated on several occasions, "[t]he [Wilton] tribe's recourse in challenging their termination on the premise of being illegal or wrongful through a Federal court action has long expired . . . ."[7]

The tribes' challenge to their termination under the Rancheria Act is subject to the six-year statute of limitations in 28 U.S.C. § 2401(a).  *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007); *Miami Nation of Indians v. Lujan*, 832 F. Supp. 253 (N.D. Ind. 1993); *Cal. Valley Miwok Tribe v. United States*, Case 02-0912-FCD-GGH (E.D. Cal.) (July 1, 2004 order granting motion to dismiss) (attached) (challenge to Rancheria Act termination).[8]  The United States and the Wilton Miwok acknowledge that is the case.

The Me-Wuk Community attempts to avoid the application of § 2401(a) by incorrectly characterizing this case as a suit to establish title to property, and from there arguing that 28 U.S.C. § 2415(c) overrides the limitations found in § 2401(a).  <u>This argument holds no water</u>.  28 U.S.C. § 2415 prescribes statutes of limitations for certain contract and tort claims brought by the United States for or on behalf of an Indian tribe.

---

[7] *See, e.g.,* Letter from Dale Risling, Sr., Superintendent, Bureau of Indian Affairs, Central California Agency (Aug. 24, 2004), p. 1 (attached to Wilton Complaint as Exhibit J).

[8] *Aff'd sub nom.*, *Miami Nation of Indians of Ind., Inc. v. United States DOI*, 255 F.3d 342 (7th Cir. 2001), *cert. den.*, 534 U.S. 1129 (2002).

Subsection (c) provides, "Nothing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property." In the first place, the gravamen of the actions at bench is <u>not</u> suits to establish title to or possession of property; it is a challenge to the tribes' administrative termination in 1964. Any claim regarding land title is necessarily ancillary and contingent on the success of the termination challenge. Moreover, even if 28 U.S.C. § 2415(c) were applicable, it would not permit the evasion of § 2401(a). § 2415(c) does not negate the effect of other statutes of limitations found in other provisions of the United States Code. *United States v. Mottaz*, 476 U.S. 834, 848-51 & n.10 (1986) (§ 2415(c) does not save Indian's title-related suit from statute of limitations in 28 U.S.C. § 2409a); *Nichols v. Rysavy*, 809 F.2d 1317, 1331 (8th Cir.) ("We therefore conclude that 28 U.S.C. § 2415 does not affect the running of the six-year statute of limitations in section 2401(a) in this suit" seeking to establish title or right of possession to property by Indians), *cert. denied*, 484 U.S. 848 (1987).[9]

**B.     The Supreme Court's Ruling In *John R. Sand* Establishes That Section 2401(a) Is Jurisdictional And Cannot Be Waived.**

In *John R. Sand*, the United States Supreme Court held that the statute of limitations in 28 U.S.C. § 2501, which governs claims against the United States in the Court of Federal Claims, is jurisdictional in nature, and is therefore not subject to waiver. Failure to comply with its time limitations deprives the federal courts of subject matter jurisdiction, and the issue must be raised *sua sponte* by the courts.

"The Supreme Court's determination that § 2501 is jurisdictional strongly suggests the same conclusion with respect to § 2401." *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 142 (D.D.C. 2008) (relying on *John R. Sand* to conclude § 2401(a) is jurisdictional), *appeal dismissed*, 2009 U.S. App. LEXIS 1822 (D.C. Cir. 2009). *See also*

---

[9] All the cases relied on by the Me-Wuk Community in support of this argument, including *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 244 (1985), and *Mille Lacs Band of Chippewa Indians v. Minn.*, 853 F. Supp. 1118, 1125 (D. Minn. 1994), are inapposite. They hold that § 2415(c) pre-empts *state law* statutes of limitations. *Mottaz* and *Nichols* make clear that *federal* statutes of limitations are *not* pre-empted.

*Georgalis v. U.S. Patent & Trademark Office*, 296 Fed. Appx. 14 (Fed. Cir. 2008) (same).

The courts have recognized, "'there is certainly no distinction between the companion statutes of limitations found at section 2401(a) and section 2501.'" *Hopland*, 855 F.2d at 1577 n.3 (quoting *Walters v. Sec'y of Def.*, 725 F.2d 107, 114 (D.C. Cir. 1983)); *Hoffman v. United States*, 266 F. Supp. 2d 27, 40 & n.13 (D.D.C. 2003) (relying on *Hopland*'s analysis of 2501 in holding that 2401(a) deprived the court of subject matter jurisdiction, noting the two statutes have "the same accrual language"), *aff'd*, 96 Fed. Appx. 717 (Fed. Cir.), *cert. denied*, 543 U.S. 1002 (2004).

"Section 2501 provides, in relevant part: 'Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.' 28 U.S.C. § 2501. <u>That phrasing in § 2501 is nearly identical to § 2401(a)</u> ('every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues')." *W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 142. This textual similarity is especially significant in light of the fact that both sections were enacted—in virtually the same form as they currently exist—as part of the *very same congressional enactment*. Pub. L. No. 80-773, 62 Stat. 869, 971 (§ 2401(a)) & 976 (§ 2501) (June 25, 1948). Accordingly, this case presents a "classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (internal quotation marks and citations omitted).

"Moreover, both statutes are Congressional waivers of sovereign immunity that <u>effectively serve the same purpose</u>; the only difference between them is that § 2501 deals with cases in the Court of Federal Claims, a narrow subset of claims against the United States addressed more generally in § 2401(a)." *W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 142. This identity of purpose is also important. *John R. Sand* recognized that the purpose served by a given statute of limitations in suits against the government is relevant to the determination of whether that particular statute is "jurisdictional" or is

1   waivable.  128 S. Ct. at 753-54.  It held that the purpose served by § 2501, which § 2401(a)

2   shares, supported the conclusion that the statute was jurisdictional.

3          Consistent with the foregoing, the Ninth Circuit just last year applied *John R. Sand*

4   to conclude another subsection of § 2401—§ 2401(b)—<u>is</u> jurisdictional and <u>not</u> waivable.

5   *Marley*, 548 F.3d at 1286.  *Marley* indicated the same may be true of § 2401(a), *id.* at

6   1290 n.3, a view since repeated in another Ninth Circuit opinion, just in the past few

7   months.  *Aloe Vera of Am., Inc. v. United States*, 574 F.3d 1176, 1180-81 (9th Cir. 2009),

8   *amended by*, 2009 U.S. App. LEXIS 20137 (9th Cir. Sept. 2, 2009).

9          Conspicuously, only one of the three Existing Parties <u>even cites</u> *John R. Sand* or

10  *Marley*; neither the federal defendants nor the Me-Wuk Community attempt to brief this

11  issue <u>at all</u>, though the County and City heavily relied on both cases in moving to vacate.

12  **C.**      **The Wilton Miwok's Reliance on *Cedars-Sinai* Is Misplaced.**

13         The Wilton Miwok note that prior to the Supreme Court's ruling in *John R. Sand*,

14  the 9th Circuit held § 2401(a) is not jurisdictional, in *Cedars-Sinai Med. Ctr. v. Shalala*,

15  125 F.3d 765 (9th Cir. 1997).  But *John R. Sand* effectively overruled *Cedars-Sinai*.

16         The Ninth Circuit has held that "circuit precedent, authoritative at the time that it

17  issued, can be effectively overruled by subsequent Supreme Court decisions that 'are

18  closely on point,' even though those decisions do not expressly overrule the prior circuit

19  precedent."  *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (quoting

20  *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002)).  "When a

21  decision from the Supreme Court has 'undercut the theory or reasoning underlying [a]

22  prior circuit precedent in such a way that the cases are clearly irreconcilable, . . . . a three-

23  judge panel of this court <u>and district courts</u> should consider themselves bound by the

24  intervening higher authority and reject the prior opinion of this court as having been

25  effectively overruled.'" *Phelps v. Alameida*, 569 F.3d 1120, 1134 (9th Cir. 2009) (emphasis

26  added) (quoting *Miller*, 335 F.3d at 900).  "[T]he issues decided by the higher court need

27  not be identical in order to be controlling."  *Miller,* 335 F.3d at 900.  Several factors make

28  this a particularly appropriate case for application of these principles.

First, the Ninth Circuit itself, in two separate published opinions, has signaled its doubts about the continuing vitality of *Cedars-Sinai* in light of *John R. Sand*. *Marley*, 548 F.3d at 1290 n.3; *Aloe Vera of Am., Inc.*, 574 F.3d at 1180-81. Both cases applied *John R. Sand* to conclude that the statute of limitations before them *was* jurisdictional.

Second, the district court for the District of Columbia and the Federal Circuit have both held that *John R. Sand* dictates the conclusion that § 2401(a) is jurisdictional. *W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 142; *Georgalis,* 296 Fed. Appx. at 16.

Third, in support of its holding *John R. Sand* noted a long string of precedent holding that § 2501 is jurisdictional. *John R. Sand*, 128 S. Ct. at 755-56. *Marley*, likewise, looked to a long string of Ninth Circuit precedents holding that § 2401(b) is jurisdictional. *Marley*, 548 F.3d at 1290-91 (Like the Supreme Court in *John R. Sand*, "[w]e, too, can find the answer in our own precedent. We have long held that § 2401(b) is jurisdictional"). Prior to the decision in *Cedars-Sinai,* the Ninth Circuit had likewise repeatedly held that § 2401(a) was jurisdictional and not waivable. *See, e.g., UOP v. United States*, 99 F.3d 344, 347 (9th Cir. 1996); *Sisseton-Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. den.,* 498 U.S. 824 (1990); *Big Spring v. United States,* 767 F.2d 614, 616 (9th Cir. 1985), *cert. den.,* 476 U.S. 1181 (1986); *Loring v. United States,* 610 F.2d 649, 650 (9th Cir. 1979). By contrast, no published Ninth Circuit opinion since *Cedars-Sinai* has relied on that case to hold a statute of limitations is not jurisdictional.[10]

*Marley* is particularly relevant because, just as in this case, the *Marley* court was faced with a substantial body of older Circuit precedent holding § 2401(b) is jurisdictional, and with one more recent Circuit decision—decided the same year as *Cedars-Sinai*—holding that it is not.[11] Relying on *Miller v. Gammie* and on *John R. Sand*, the Court expressly overruled the more recent outlier case, and reaffirmed its older case

---

[10] With the exception of a subsequent opinion in the *Cedars-Sinai* litigation itself, following remand. *Cedars-Sinai Med. Ctr. v. Shalala*, 177 F.3d 1126 (9th Cir. 1999).

[11] *Alvarez-Machain v. United States,* 107 F.3d 696 (9th Cir. 1997), *vac'd and reh'g en banc granted,* 284 F.3d 1039 (9th Cir. 2002).

law holding that § 2401(b) is jurisdictional.[12]   In language equally applicable to *Cedars-Sinai*, the court held, "We are mindful that one Ninth Circuit case held that § 2401(b) is not jurisdictional, but we must overrule it, in light of our prior contrary precedents and the Supreme Court's subsequent holding in *John R. Sand & Gravel*." 548 F.3d at 1292.

The Wilton Miwok cite three unpublished district court opinions that did not apply *John R. Sand* to § 2401(a): *Pub. Citizen, Inc. v. Mukasey*, 2008 U.S. Dist. LEXIS 81246 (N.D. Cal. Oct. 9, 2008), *Sierra Club v. Johnson*, 2009 U.S. Dist. LEXIS 14819 (N.D. Cal. Feb. 25, 2009), and *Crosby Lodge, Inc. v. Nat'l Indian Gaming Comm'n*, 2008 U.S. Dist. LEXIS 98001, *14 (D. Nev., Dec. 3, 2008).  To begin with, "a district court opinion does not have binding precedential effect."  *NASD Dispute Res., Inc. v. Judicial Council*, 488 F.3d 1065, 1069 (9th Cir. 2007).  The Court is thus not precluded from following the thoroughly reasoned opinions of the Federal Circuit and D.C. district court holding *John R. Sand does* compel the conclusion that § 2401(a) is jurisdictional.  Moreover, *Public Citizen* and *Crosby Lodge* were decided prior to the Ninth Circuit's opinion in *Marley*.  That is crucial, because not only did the *Marley* court first signal the Ninth Circuit's own doubts about the continuing validity of *Cedars-Sinai*, but it also undermined the grounds on which *Public Citizen* and *Crosby Lodge* distinguished *John R. Sand.*  Those cases accepted an artificial distinction between § 2501 as a specialized statute dealing with the Court of Federal Claims, and § 2401(a) as a generally-applicable statute of limitations.  But, such a distinction ignores the close linkage between the two statutes and cases holding that "there is certainly no distinction between" them.  *Walters*, 725 F.2d at 114.  More importantly, this artificial distinction is inconsistent with *Marley*, which did not interpret *John R. Sand* so narrowly, but instead applied it to conclude that a statute of

---

[12] While the *Marley* court removed this reference to overruling *Alvarez-Machain*, in its amended opinion filed with the denial of rehearing *en banc*, that is only because it concluded that *Alvarez-Machain* did not need to be overruled.  567 F.3d at 1037-38.  Having been vacated following *en banc* review and reversal by the Supreme Court, *Alvarez-Machain* held no precedential value.  *Id.*  But the initial opinion demonstrates the Court's belief that overruling the case would have been appropriate if it had precedential effect.

general application—in fact, another subsection of § 2401 (subd. (b))—is jurisdictional.

The *Sierra Club* decision—though decided after *Marley*—did not even cite it, much less address its implications for the application of *John R. Sand*.

For all these reasons, continued reliance on *Cedars-Sinai* is inappropriate.

### D.    The "Continuing Claims" Doctrine Cannot Save These Cases.

Relying on dicta in *Hopland*,[13] the Wilton Miwok plaintiffs attempt to evade the statute of limitations by arguing that they are subject to a "continuing violation" insofar as the United States has, within the past six years, refused to grant the tribe various benefits available only to federally-recognized tribes.  There is no merit to this claim.

First of all as a general matter, "Traditionally, when a statute of limitations has been deemed jurisdictional, it has acted as an absolute bar and could not be overcome by the application of judicially recognized exceptions, . . . such as . . . the continuing violations doctrine.  *See Cato v. United States*, 70 F.3d 1103, 1108-09 (9th Cir. 1995)." *Felter v. Norton*, 412 F. Supp. 2d 118 (D.D.C. 2006), *rem'd on other grounds sub nom., Felter v. Kempthorne*, 473 F.3d 1255 (D.C. Cir. 2007).  And more specifically, several courts addressing similar attempts by tribes seeking to collaterally attack their long-prior terminations, as the tribes attempt to do here, have rejected continuing violations claims.

In *Tabbee v. United States*, 30 Fed. Cl. 1 (1993),[14] members of the Ute Indian Tribe, which was terminated in 1961, filed a class action against United States officials challenging their termination as unlawful.  The suit was filed in 1990, nearly 30 years after the termination took place.  As here, the tribe attempted to avoid the statute of limitations by cataloguing recent "benefits they claim to have lost as a result of implementation of the Act," *id.* at 3, and claiming that ongoing denial of benefits constituted a "continuing violation." The court rejected that claim holding, "Plaintiffs' claims are based, not upon benefits denied apart from their termination from the Ute

---

[13] *See Miami Nation of Indians v. Lujan*, 832 F. Supp. at 256 (characterizing *Hopland's* discussion of continuing claims as "dicta").

[14] *Appeal dismissed,* 36 F.3d 1114 (Fed. Cir. 1994).

Indian Tribe, but rather, upon benefits lost *as a consequence* of their termination. Plaintiffs acknowledge this in their amended complaint where they allege that Congress, by enacting the Ute Termination Act, 'acted against the plaintiffs solely on account of race,' and then enumerate the rights and entitlements they have lost 'as a proximate result of the defendant's actions.'" *Id.* at 5. *See also* Me-Wuk Complaint, ¶¶ 89, 95, 100 & 106 (harms complained of are "direct and proximate result" of lack of recognition by Secretary, which in turn is result of termination).

Likewise, in *Miami Nation of Indians v. Lujan*, the Miami Tribe sued the government challenging the Tribe's 1897 termination. That court also rejected the notion that a "continuing claims" theory could save that tribe's challenge from the six-year limit in § 2401(a), holding, "Here, lack of formal recognition is the gravamen of the plaintiffs' complaint, so only formal recognition could bring an end to the 'continuing claim'; acceptance of the plaintiffs' argument effectively would eradicate the statute of limitations by preserving their cause of action until it becomes moot." 832 F. Supp. at 257. Accordingly, the court dismissed the challenge to the Tribe's termination. *Id.*[15]

And finally, closer to home a tribe right here in California was denied a chance to challenge its termination *under the Rancheria Act* on the basis of § 2401(a). *See Cal. Valley Miwok Tribe*, Case No. 02-0912-FCD-GGH (E.D. Cal.) (July 1, 2004 order granting motion to dismiss). That court, too, rejected a continuing violations claims.

These cases are consistent with the principle applicable to "continuing violations" claims that "[a] continuing violation should be distinguished from the continuing impact of a past, yet discrete and no longer existent" act. *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 925 n.3 (9th Cir. 1982). *Viet Mike Ngo v. Woodford*, 539 F.3d 1108 (9th Cir. 2008), is instructive on this point. In that case, a prisoner was informed that as a

---

[15] The *Hopland*, *Miami Tribe* and *Tabbee* cases left open the possibility of a claim against the United States for *monetary damages* based on these more recent denials, a question on which the County and City take no position. But insofar as the Wilton tribes challenge the actual termination itself, and demand reinstatement as a recognized tribe, those cases plainly stand for the proposition that the statute of limitations is a bar to such a claim.

punishment for certain misconduct he could not participate in "special programs" within the prison.   The prisoner did not appeal in the time allotted, but argued that he was subject to a continuing violation because each day he was denied permission to participate in "special programs" violated his rights anew.   The Ninth Circuit rejected the prisoner's claim, holding, "It was the December 22, 2000, order that barred Ngo from participating in prison special programs," and "any continuing effects are 'nothing more than the delayed, but inevitable, consequence of the [initial determination].'"   *Id.* at 1109 (quoting *Knox v. Davis*, 260 F.3d 1009 (9th Cir. 2001) (brackets added by court)). Likewise here, "It was the [September 24, 1964 termination] order that barred [plaintiffs] from [receiving benefits available to Indians]," and "any continuing effects are 'nothing more than the delayed, but inevitable, consequence of the [termination].'"

**E.     The Court Has A Nondiscretionary Duty To Vacate The Judgment & Dismiss The Complaints With Prejudice.**

There is no merit to the Wilton Miwok's contention that the County's and City's motion under Rule 60(b)(4) must be rejected if the court had an "arguable" basis for jurisdiction.   Rather, the law is that "[a] court considering a motion to vacate a judgment, which it finds void for lack of jurisdiction, has no discretion to hold that the judgment should not be set aside."   *Gould v. Mutual Life Ins. Co.*, 790 F.2d 769, 772 (9th Cir.), *cert. denied*, 479 U.S. 987 (1986).   *See also Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 33-34 (5th Cir. 1992) (district court abused its discretion in refusing to grant Rule 60(b)relief to post-judgment intervenor where subject matter jurisdiction challenged).

The Wilton Miwok rely on two cases from other circuits in support of their "arguable basis" contention: *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972), and *Nemaizer v. Baker*, 793 F.2d 58, 65 (2nd Cir. 1986).   Those cases held that *res judicata* precludes collateral attack on a judgment for lack of subject matter jurisdiction, so long as there was an arguable basis for the exercise of jurisdiction, *by a party to that previous action*.   The County and City, however, were not parties to this action when judgment was entered, nor are they parties to the stipulation.   They did not

1   previously have an chance to contest jurisdiction in this case, are not in privity with any

2   party to the Stipulated Judgment, and thus are not subject to any *res judicata* effect.

3       Instructive on this point is *Practical Concepts v. Republic of Bolivia*, 613 F. Supp.

4   863 (D.D.C.), *reconsideration denied*, 615 F. Supp. 92 (D.D.C 1985).  In that case, Bolivia

5   sought to vacate a default judgment against it under Rule 60(b)(4) for lack of subject

6   matter jurisdiction, based on its sovereign immunity.  The plaintiff opposed the motion on

7   the basis that *Lubben* held that a merely erroneous exercise of jurisdiction does not

8   warrant vacating a judgment.  The D.C. district court rejected this argument, and granted

9   the 60(b)(4) motion.  That court interpreted *Lubben* to stand for the proposition that:

10          *Where a defendant appears in the original suit* and raises the jurisdictional
11          issue but has it determined against him, he is barred from relitigating the
            issue in a subsequent voidness attack. [citation and footnote.] Similarly, if the
12          party charged with the judgment *appeared in the action* but did not actually
            assert lack of jurisdiction, he is foreclosed from raising it for the first time in a
13          Rule 60(b)(4) motion or collateral attack. [Citation.]

14   *Practical Concepts*, 613 F. Supp. at 867 (emphasis added).

15      The court continued, however, in language equally applicable to this case, "On the

16   other hand, where, as here, the defendant *never appeared in the original suit and thus*

17   *has not yet litigated the point*, he is not excepted from the rule that a jurisdictional defect

18   renders a judgment void. . . .  Accordingly, if this judgment suffers from a jurisdictional

19   defect, it is void."  *Id.* (emphasis added).   On appeal to the D.C. Circuit, the plaintiff

20   "contend[ed] that the default judgment should have remained closed."  *Pract. Concepts,*

21   *Inc. v. Repub. of Bolivia*, 811 F.2d 1543, 1545 (D.C. Cir. 2007).  Writing for the Appeals

22   Court, then-Judge (now-Justice) Ginsburg held, "*We find this contention insubstantial*

23   and hold that the district court, in view of Rule 60(b) (4) and (6), properly allowed full

24   consideration of Bolivia's jurisdictional objection."  *Id.* (emphasis added).[16]

25   ///

26   ///

27

28          [16] Because the appeals court disagreed with the trial court's analysis of the jurisdictional
            question *on the merits*, it vacated the dismissal for further proceedings.  811 F.2d at 1545.

**F.      The County And City's Motion To Vacate Should Not Be Denied Simply Because The Local Governments Are Not Yet Parties.**

Another theory advanced in the wide-ranging effort of the Existing Parties to avoid having these actions resolved on their merits is that the motion to vacate must be denied because the County and City are not yet parties.  This argument lacks merit.

In the first place, the County and City have sought intervention, which would entitle them to participate fully in this litigation to the same extent as an original party.  The motion to intervene is to be heard simultaneously with the motion to vacate.  Consequently, any objection that only a party may bring a 60(b) motion is irrelevant.  *Battle v. Liberty National Life Ins.,* 770 F. Supp. 1499, 1513 n.40 (N.D. Ala. 1991), *aff'd* 974 F.2d 1279 (11th Cir. 1992) (rejecting claim that intervenors' 60(b) motion should be denied as not made by a "party" where intervention granted that same day).[17]

Moreover, the Court has authority to vacate a judgment *sua sponte* under Rule 60(b).  *Id.*; *Kingvision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351-52 (9th Cir. 1999).  Indeed, it has the obligation to do so when subject matter jurisdiction was absent, even if intervention were not allowed.  Instructive on this point is *Simer v. Rios*, 661 F.2d 655, 660 (7th Cir. 1981), *cert. denied*, 456 U.S. 917 (1982).  In *Simer*, the district court denied a post-judgment motion to intervene, but still vacated the settlement in the case *sua sponte* based in part on defects identified in proposed intervenors' motion to vacate under Rule 60(b).  The district court concluded, in part, that the settlement was void under Rule 60(b)(4).  The Seventh Circuit affirmed, and the United States Supreme Court denied *certiorari*.  *See also Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir. 1987) (non-party may raise lack of subject matter jurisdiction).

///

///

---

[17] Judge Vaughn, in the unpublished *Scotts Valley* opinion relied upon by federal defendants and attached to their opposition, expressly recognized that if intervention were allowed then maintenance of a Rule 60(b) motion might be justified.  Because he determined the intervention motion was untimely, however, this ground was not available to those movants.

**V.**   **ALTERNATIVELY, THE JUDGMENT SHOULD BE VACATED FOR MISTAKE, INADVERTENCE, SURPRISE, OR EXCUSABLE NEGLECT, OR IN THE INTERESTS OF JUSTICE.**

Rule 60(b) allows a judgment to be vacated on the basis of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. Proc. 60(b)(1), or for "any other reason that justifies relief." Fed. R. Civ. Proc. 60(b)(6). A motion to vacate under Rule 60(b)(1) must be brought within a year of the judgment being entered—a deadline easily met in this case. A motion under Rule 60(b)(6) is subject to no hard and fast deadline; the motion must simply be "made within a reasonable time," Fed. R. Civ. Proc. 60(c)(1), a deadline also met in this case. The judgment in this case is the very definition of "surprise" when it comes to the County and the City, or at the very least of "excusable neglect."

The federal defendants are the only party to address the standard for vacating a judgment under these provisions. They argue that the motion should be denied because "extraordinary circumstances" are not present. In the first case, this claim ignores the fact that "the Supreme Court has made clear, ["excusable neglect"] is a general equitable [principle], *not necessarily reserved for extraordinary circumstances*, and takes account of factors such as 'prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The federal defendants' attempts to distinguish these cases as "default judgment" cases simply miss the mark. As in the case of a default judgment, the County and City's interests are threatened by the direct operation of a judgment that they were precluded from opposing.

Indeed, to the extent there is a difference between this case and a default case it works in the County's and City's favor—in the case of a default judgment, the defaulting defendant has received and ignored notice from the plaintiff that the action was pending. *See Beneficial Cal., Inc. v. Villar (In re Villar),* 317 B.R. 88, 94 (B.A.P. 9th Cir.

2004) ("Before a court can enter a default judgment, the service of process must be effective. . . . [A]n order granted without adequate notice does not satisfy the requirements of due process of law and is therefore inevitably void."). In this case, *no notice* was received by the County and City, despite the threat to their regulatory, taxing, environmental and economic interests, and despite the fact that the United States expressly recognized that state and local governments would have an interest in participating in this lawsuit (before acquiescing to their continued exclusion).

Moreover, even if "extraordinary circumstances" were required, this case provides them. The County and City were excluded from these actions—despite being necessary parties—they did not even get notice, formal or informal, of the actions' existence until the settlement was approved. Their rights and interests will be significantly impaired if the Stipulated Judgment is executed and the specified parcels taken into trust. And their ability to challenge those harms in other for a is blocked by the Quiet Title Act and by the possibility of a defense of tribal immunity in any subsequent action.

**A.**     ***Carcieri* Precludes The Secretary From Taking Land Into Trust For Tribes Not "Under Federal Jurisdiction" In June 1934; The Wilton Rancheria Did Not Organize As A Tribe Until 1935.**

As an alternative basis for vacating the judgment, the U.S. Supreme Court in *Carcieri*, held that Section 19 of the Indian Reorganization Act, 25 U.S.C. "§ 479 limits the Secretary [of Interior]'s authority to taking land into trust for the purpose of providing land to members of a tribe *that was under federal jurisdiction when the IRA was enacted in June 1934.*" 129 S. Ct. at 1061 (emphasis added). Documents authored by the federal government, and attached to the Wilton Miwok Rancheria's complaint (as Exhibit J), demonstrate that the Wilton Rancheria was not formally organized as a tribe until 1935.

To dispute the application of *Carcieri*, the federal government submits documents showing that the individual Indians on the Wilton Rancheria held a vote to organize themselves as a tribe *by 1935 or 1936*. The Court may take judicial notice that 1935 and 1936 come *after* June 1934. Thus, to the extent that the federal government's evidence

has any bearing on the question of whether the tribe was "under federal jurisdiction" a year earlier, in June 1934, it cuts *against* the tribes.  Recognition as a tribe in 1935 is close, but it is not good enough in light of *Carcieri*.  The Me-Wuk Community also submits considerable evidence that the Wilton Miwok were organized as a tribe, and recognized as such by the federal government in 1935.  Again, not good enough.

The Wilton Miwok also claim, "Numerous other facts exist confirming the Tribe was under federal jurisdiction in 1934 including but not limited to signatories of un-ratified treaties, federally prepared census rolls, federal correspondence with the Tribe, use of federal funds for the Tribe's benefit, and the Bureau of Indian Affairs asserting jurisdiction over tribal members."  That claim is unsupported by record evidence.

And finally, both the Me-Wuk Community and the Wilton Miwok rely heavily on the purchase of land for certain "homeless Indians" in 1927.  That does not indicate, however, that there was a recognized *tribe* prior to June 1934.  In fact, Exhibit B of the Boland declaration demonstrates otherwise.   That exhibit consists of a "August 15, 1934 letter ("Lipps Letter') from O.H. Lipps, then Superintendent of the Sacramento Indian Agency ("Superintendent Lipps"), to the Commissioner of Indian Affairs, listing the various rancherias under the Agency's auspices as of that date." (Boland Decl., ¶ 3.) That letter specifically states, "There is enclosed herewith, in triplicate, a list of the various rancherias under this Agency, given name of each, county in which located, size of tract and population.  [¶]  *None of these groups have any form of tribal government or community organization, each member acting for himself.*"  (Boland Decl., Exhibit B (emphasis added).)  The Wilton Rancheria is included on this list.  The Lipps letter, it should be noted, post-dates the enactment of the IRA in June 1934.[18]

In summary, all of the evidence submitted by the Existing Parties supports the conclusion that there was no tribe under federal jurisdiction in June 1934, when the IRA

---

[18] This letter also undermines the tribes' repeated claim that the Wilton Rancheria was a "reservation."  *See* 25 C.F.R. § 151.2 (f) (for purposes of taking land into trust under Indian Reorganization Act, an ". . . 'Indian reservation' means that area of land over which the tribe is recognized by the United States as *having governmental jurisdiction* . . . ." (emphasis added)).

1    was enacted, but that the Wilton Rancheria Indians organized themselves into a tribe,

2    and were recognized as such, a year thereafter.  Under the holding of *Carcieri*, then, this

3    undermines their ability to have lands taken into trust on their behalf.

### B.    There Is Insufficient Evidence These Are "Restored Lands."

5         The federal government has agreed in the Settlement that lands taken into trust

6    under Paragraphs 7 & 8 of that agrement constitute "restored lands of a restored tribe."

7    (*Id.*, ¶ 10.)  That *automatically* authorizes gaming on those parcels under the Indian

8    Gaming Regulatory Act, 25 U.S.C. § 2719, without the need to consult with local

9    governments and obtain the approval of California's governor, as would otherwise be the

10   case.  25 U.S.C. § 2719(b)(1)(A) & (b)(1)(B)(ii).  But the government appears to have made

11   no effort to require sufficient evidence that the current tribes have met the various

12   requirements to establish that these are "restored lands" within the meaning of IGRA.

13        The Me-Wuk Community ignores this issue.

14        The federal government tries to evades it.  First, it objects that the Stipulation

15   makes no express mention of "gaming."  This is disingenuous.  Paragraph 10 of the

16   settlement provides, "Land taken into trust for the benefit of the Tribe that is within or

17   contiguous, as defined by 25 C.F.R. § 292.2, to the Rancheria shall be "restored land" as

18   defined by 25 U.S.C. § 2719(b)(1)(B)(iii)."  The sole purpose of 25 U.S.C. §

19   2719(b)(1)(B)(iii) is to prescribe circumstances in which gaming can be conducted on

20   tribal lands.  There is no reason to include this statement if gaming is not anticipated.

21        The federal government's second response is to argue that compliance with the

22   regulations governing "restored lands" will take place when the tribe applies to have land

23   taken into trust in the future.  Again, this conveniently sidesteps the fact that under

24   Paragraphs 7 and 8 of the settlement the federal government has *already* agreed to take

25   16 acres—enough land for a casino—outside the Secretary's regulations.

26        And finally, the Wilton Rancheria cannot just make the bold claim that "[t]here is

27   no disputing" these lands meet the definition of restored lands, and then assert an

28   historical connection to the land based on the unverified allegations of the complaint.

Wilton Miwok Opp. to Mot. to Vacate, p. 9.  Whether a tribe has a "significant historical connection" to the land is a factual issue, and is not conclusively established by the mere fact that the tribe may have occupied the land for some period in the past.  *See Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F. Supp. 2d 1193 (D. Kans. 2006) (insufficient historical connection to former reservation lands).

## VI.   <u>THE COUNTY AND CITY UNQUESTIONABLY HAVE STANDING.</u>

The Existing Parties seek to convince the Court that the County and City lack standing to pursue their claims.  This argument is also foreclosed by *Scotts Valley*.

In concluding that the City of Chico had a "significant protectable interest" in challenging the tribe's effort to undo its termination, the *Scotts Valley* court relied on and cited with approval *City of Sault Ste. Marie v. Andrus*, 458 F. Supp. 465 (D.D.C. 1978). In *Sault Ste. Marie*—which was not an intervention case, but an Article III standing case—"a city sought to challenge decisions by the Secretary of the Interior to acquire land in trust. The court held that *the city had standing* to maintain its action against the Secretary because the Secretary's acquisition of the land would frustrate municipal police powers and result in a loss of tax revenue."  *Scotts Valley*, 921 F.2d at 927 (emphasis added).  *See also Sault Ste. Marie*, 458 F. Supp. at 468 (holding the city had standing to challenge the agreement to take land into trust).  The Ninth Circuit then held, "We agree with the reasoning of *Sault Ste. Marie*, namely that a municipality has an interest in the removal of property from its civil jurisdiction."  *Scotts Valley*, 921 F.2d at 927.

The *Sault Ste. Marie* court, in turn, relied upon *City of Tacoma v. Andrus*, 457 F. Supp. 342 (D.D.C. 1978), which held that "the loss of taxes and the frustration of police powers were sufficient injuries in fact to give [local governments] standing" to challenge the acquisition of land into trust.  *Sault Ste. Marie*, 458 F. Supp. at 468.  The Ninth Circuit, in *Scotts Valley*, also cited *City of Tacoma* with approval.  921 F.2d at 927.

Contrary to the suggestion of the Existing Parties, none of these cases—*Sault Ste. Marie*, *City of Tacoma*, or the binding Ninth Circuit precedent in *Scotts Valley*—requires that casino gaming be imminent before a local government has standing to challenge a

trust application: the deprivation of taxing and regulatory jurisdiction over the parcels to be taken into trust are a sufficient interest, regardless of the use to which the Tribe will ultimately put the land, to confer Article III standing on the County and City.

## VII.   <u>THESE CASES ARE NEITHER MOOT NOR UNRIPE.</u>

"Parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . . without that party's agreement.   A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor." *Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986).   *See also Carpenter*, 298 F.3d at 1125-26 (per curiam) (reversing and remanding judgment approving settlement when court abused its discretion by denying intervention to third parties following submission of the settlement to the court for approval); *People Who Care v. Rockford Board of Education*, 961 F.2d 1335, 1337 (7th Cir.) (vacating consent decree that purported to affect the rights of post-settlement, third party intervenors).   In light of these cases, the Existing Parties' insistence that this case is no different from one in which the claims of a party to a settlement are deemed moot, and reliance on such cases, is inappropriate.   *See, e.g.,* USA's Opp. to Mot. To Vacate, p. 6:15-16 ("there is no reason that the claims of Petitioners, as non-parties and strangers to these settled cases, should be treated differently than the party who had actually been one of the plaintiffs").

The Stipulated Judgment is a consent decree—a settlement embodied in an enforceable judgment.   *Frew v. Hawkins*, 540 U.S. 430, 437 (2004).   That fact alone distinguishes *U.S. v. Ford*, 650 F.2d 1141, 1142-43 (9th Cir. 1981), and *Energy Transp. Group, Inc. v. Maritime Admin.*, 956 F.2d 1206, 1210 (D.C. Cir. 1992), relied on by federal defendants.   In those cases, the action was dismissed following settlement *without a binding judgment*.   Thus, each court noted that the proposed intervenors' rights and claims were not affected or prejudiced by the settlement.   That is not the case here.

*Tosco Corp. v. Hodel*, 804 F.2d 590 (10th Cir. 1986), is also distinguishable.   In that case, the Secretary of the Interior appealed a series of judgments in favor of oil shale

mining claimants.  While the appeals were pending, the parties entered into a settlement agreement.  *Thereafter*, various parties petitioned the Court of Appeal to intervene in the appeal, although none of the proposed intervenors were parties below or even sought intervention below.  In determining the proposed intervenors had no right to intervene in the settled action, the court specifically concluded that "[t]he absence of these putative intervenors below was a matter of choice—not an inability to seek intervention," and further noted that "[t]he history of this case makes clear that if there are other claimants seeking to assert the same interests as the appellees herein, there is ample opportunity for these putative intervenors to seek review of the important issues in those actions."  *Id.* at 591-92.  As explained herein and in the County and City's moving papers, neither of these significant findings related to the standard for intervention can be made in this case.  The County and City, unlike the proposed *Tosco* intervenors, timely filed their motion to intervene at the very first possible opportunity—and before the time to appeal had run—and have distinct and separate interests which were clearly not represented in this action.

Additionally, claims that this case is "moot" and the Court is without jurisdiction are betrayed by the Stipulated Judgment itself.  The Stipulation provides that "this Court shall retain jurisdiction to determine, upon motion by the Tribe or Defendants, whether any other Party has materially violated the terms of this Stipulation..."  It further provides that if a Party violates the Stipulation and fails to cure such violation, "*the Court may order that the action be reinstated.*"  In addition, the Stipulation expressly provides,

> If this action is reinstated, *this Stipulation shall be rendered null and void*, all pending obligations pursuant to this Stipulation are immediately suspended *and the Parties' legal claims and defenses shall be preserved in full as if the action had not previously been dismissed.*

*See* Stipulation for Entry of Judgment at ¶ 14 (emphasis added).  This language drafted and agreed to by the Existing Parties is wholly inconsistent with claims that this case is entirely moot and that the Court is deprived of jurisdiction.

And finally, the Me-Wuk Community's argument that the County and City's claims are unripe is frivolous.  The County and City are threatened with harm <u>now</u>, by direct

operation of the Stipulated Judgment. A challenge to such harms is certainly ripe.

## VIII.  **TRIBAL IMMUNITY DOES NOT BLOCK THESE MOTIONS.**

The Me-Wuk Community's claim that tribal immunity blocks these motions is a red herring as well. When a tribe voluntarily joins litigation—as happened here—it waives any claim to immunity and consents to full adjudication of the claims submitted for decision. *United States v. Oregon,* 657 F.2d 1009, 1014 (9th Cir. 1981) (by intervening in a suit seeking to establish and protect the treaty fishing rights of all Indian tribes occupying the Columbia River basin, tribe waived its sovereignty and agreed to be bound by ongoing dispute resolution stemming from implementation of Court's injunction).

Further, Supreme Court case law holds that a second waiver of sovereign immunity is not required for a Rule 60(b) proceeding to vacate a judgment, when—as here—there was a waiver in the initial action. *United States v. Beggerly*, 524 U.S. 38, 42-43 (1998).

And finally, the Me-Wuk Community contends this court cannot undo the recognition of the Tribe. That is not correct. While the Secretary may have broad authority to recognize Indian tribes, she has expressly promulgated regulations (25 C.F.R. pt. 83), providing the exclusive process for doing so. "An agency is bound by its regulations so long as they remain operative," and failure to comply with them can be remedied by the courts. *Romeiro De Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985). *See also Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074 (10th Cir. 2004), *modified and reh'g den.*, 2005 U.S. App. LEXIS 2765 (10th Cir. Feb 16, 2005), *cert. denied*, 546 U.S. 812 (2005) (overturning Secretary's decision to recognize Delaware Tribe).

## IX.  **CONCLUSION.**

For the foregoing reasons, the County and City's motions to intervene, re-open the case, vacate the judgment, and dismiss these actions should be granted.

Dated:  October 16, 2009

NIELSEN, MERKSAMER, PARRINELLO,
MUELLER & NAYLOR, LLP

By:/s/Christopher E. Skinnell
Christopher E. Skinnell
*Attorneys for Intervenor-Defendants*