1    NIELSEN, MERKSAMER, PARRINELLO,
2       MUELLER & NAYLOR, LLP
     JAMES R. PARRINELLO, ESQ. (S.B. NO. 63415)
3    CHRISTOPHER E. SKINNELL, ESQ. (S.B. NO. 227093)
     2350 Kerner Boulevard, Suite 250
4    San Rafael, California 94941
     Telephone:  (415) 389-6800
5    Facsimile:   (415) 388-6874

6    NIELSEN, MERKSAMER, PARRINELLO,
7       MUELLER & NAYLOR, LLP
     CATHY A. CHRISTIAN, ESQ. (S.B. NO. 83196)
8    1415 L Street, Suite 1200
     Sacramento, California 95814
9    Telephone:  (916) 446-6752
     Facsimile:   (916) 446-6106

10   *Attorneys for Intervenor-Defendant*
11   CITY OF ELK GROVE, CALIFORNIA

12   OFFICE OF SACRAMENTO COUNTY COUNSEL
     ROBERT A. RYAN, JR., ESQ., County Counsel
13   MICHELE BACH, ESQ., Supervising Deputy County Counsel
        (S.B. NO. 88948)
14   700 H Street, Suite 2650
     Sacramento, California 95814
15   Telephone:  (916) 874-5540
     Facsimile:   (916) 874-8207
16

17   *Attorneys for Intervenor-Defendant*
     COUNTY OF SACRAMENTO, CALIFORNIA
18

19              IN THE UNITED STATES DISTRICT COURT

20           FOR THE NORTHERN DISTRICT OF CALIFORNIA

21   WILTON MIWOK RANCHERIA, *et al.*,        )    Case No.  C-07-02681-JF-PVT
                                              )
22              *Plaintiffs*,                 )
     vs.                                      )    **SUPPLEMENTAL BRIEFING**
23                                            )    **RE *CARCIERI v. SALAZAR***
     KENNETH L. SALAZAR, *et al.*,            )    **PER COURT'S DECEMBER 9,**
24                                            )    **2009 ORDER; REQUEST TO**
                *Defendants*,                 )    **CERTIFY INTERLOCUTORY**
25                                            )    **APPEAL OF JURISDICTIONAL**
     COUNTY OF SACRAMENTO, CALIFORNIA         )    **ISSUE [28 U.S.C. § 1292(b)]**
26   and CITY OF ELK GROVE, CALIFORNIA,       )
                                              )    JUDGE: Hon. Jeremy Fogel
27              *Proposed Intervenors.*       )    COURTROOM: 3
                                              )
28

---

Case No. C-07-05706 (JF)

ME-WUK INDIAN COMMUNITY OF THE
WILTON RANCHERIA, *et al.*,

                    *Plaintiffs*,

vs.

KENNETH L. SALAZAR, *et al.*,

                    *Defendants*,

COUNTY OF SACRAMENTO, CALIFORNIA
and CITY OF ELK GROVE, CALIFORNIA,

                    *Proposed Intervenors*

## TABLE OF CONTENTS                                    Page

I.    INTRODUCTION .................................................................. 1

II.   UNDER THE SUPREME COURT'S HOLDING IN *CARCIERI V. SALAZAR,* THE SECRETARY OF INTERIOR LACKS THE AUTHORITY TO TAKE LAND INTO TRUST FOR TRIBES NOT "UNDER FEDERAL JURISDICTION" IN JUNE 1934; THE RECORD EVIDENCE IN THIS CASE SHOWS THE WILTON RANCHERIA DID NOT ORGANIZE AS A TRIBE UNTIL 1935 AT THE EARLIEST .................................... 3

III.  ANY ATTEMPT NOW BY THE EXISTING PARTIES TO SUBMIT ADDITIONAL EVIDENCE ONLY SUPPORTS THE PROPRIETY OF VACATING THE JUDGMENT TO ALLOW FURTHER PROCEEDINGS ............... 8

IV.   REQUEST THAT THE COURT CERTIFY THE JURISDICTIONAL/ STATUTE OF LIMITATION ISSUE TO THE NINTH CIRCUIT UNDER 28 U.S.C. § 1292(b) & STAY IMPLEMENTATION OF THE JUDGMENTS INSOFAR AS THEY AUTHORIZE THE SECRETARY TO TAKE LAND INTO TRUST FOR PLAINTIFFS ............................................................ 9

      A.   The Jurisdictional Issue Presents An Ideal Candidate For An Interlocutory Appeal Under 28 U.S.C. § 1292(b) .......................... 11

      B.   Further Proceedings On *Carcieri* & The Motion To Vacate Should Be Stayed Pending Resolution Of the Interlocutory Appeal ........................ 13

      C.   The Court Should Stay The Acceptance Of Land Into Trust On Plaintiffs' Behalf Pending Resolution Of The Interlocutory Appeal ............ 13

V.    CONCLUSION .................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aloe Vera of Am., Inc. v. United States*,
574 F.3d 1176 (9th Cir.), *amended by* 580 F.3d 867 (9th Cir. 2009)......................12

*Big Spring v. United States*,
767 F.2d 614 (9th Cir. 1985), *cert. den.,* 476 U.S. 1181 (1986) ...................................12

*Brewton v. City of Harvey*,
319 F. Supp. 2d 890 (N.D. Ill. 2004) .........................................................13

*Cabazon Band of Mission Indians*,
480 U.S. 202 (1987) ....................................................................................2

*Cadwalder v. United States*,
45 F.3d 297 (9th Cir. 1995)..............................................................................12

*Carcieri v. Salazar*,
555 U.S. ___, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) ....................................*passim*

*Carlson v. Tulalip Tribes of Washington*,
510 F.2d 1337 (9th Cir. 1975) ..............................................................................13

*Cedars-Sinai Med. Ctr. v. Shalala*,
125 F.3d 765 (9th Cir. 1997) ....................................................................10,12

*Cherokee Nation v. Babbitt*,
117 F.3d 1489 (D.C. Cir. 1997), *as modified by,* 1997 U.S. App. LEXIS
26575 (D.C. Cir. 1997) ..............................................................................14

*Cherokee Nation v. Georgia*,
30 U.S. (5 Pet.) 1 (1831) ..............................................................................6

*City of Roseville v. Norton*,
348 F.3d 1020 (D.C. Cir. 2003) ..............................................................................3

*County of Amador v. United States Dep't of Interior*,
2007 U.S. Dist. LEXIS 95715 (E.D. Cal. Dec 13, 2007) ...................................14

*Equity Hernando Woods, Inc. v. United States*,
910 F. Supp. 574 (M.D. Fla. 1995)..............................................................................13

*Free v. United States*,
885 F.2d 840 (11th Cir. 1989) ..............................................................................13

*Galbraith v. County of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002) ..................................................................10

*Georgalis v. U.S.P.T.O.*,
    296 Fed. Appx. 14 (Fed. Cir. 2008) ...........................................................12

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130, 128 S. Ct. 750 (2008) ..............................................9,10,11,12

*LG Elecs., Inc. v. Hitachi Am. Ltd.*,
    2009 U.S. Dist. LEXIS 20457 (N.D. Cal. Mar. 13, 2009) ...........................10

*Local Number 93, Int'l Assn. of Firefighters, etc. v. City of Cleveland*,
    478 U.S. 501 (1986) ...................................................................................1

*Loring v. United States*,
    610 F.2d 649 (9th Cir. 1979) .....................................................................12

*Marley v. United States*,
    548 F.3d 1286 (9th Cir. 2008), *modified & reh'g en banc den.*, 567
    F.3d 1030 (9th Cir. 2009) .....................................................................10,12

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) (en banc) ......................................................10

*Native Village of Tyonek v. Puckett*,
    957 F.2d 631 (9th Cir. 1992) .....................................................................14

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*,
    498 U.S. 505 (1991) ...................................................................................6

*Okray v. Dennis (In re Okray)*,
    2009 U.S. Dist. LEXIS 69853 (D. Alaska Aug. 7, 2009) ............................10

*Phelps v. Alameida*,
    569 F.3d 1120 (9th Cir. 2009) ...................................................................10

*Portland GE Co. v. Bonneville Power*,
    501 F.3d 1009 (9th Cir. 2007), *cert. denied sub nom., Portland GE v.*
    *Pub. Power Council*, 128 S. Ct. 2902 (U.S. 2008) .......................................1

*Price v. Hawaii*,
    764 F.2d 623 (9th Cir. 1985), *cert. denied*, 475 U.S. 1055 (1986) ..............6

*Pruet Production Co. v. Ayles*,
    573 F. Supp. 895 (S.D. Miss. 1983) ...........................................................13

*Rauch v. Rauch*,
   446 F. Supp. 2d 432 (D.S.C. 2006) ......................................................... 13

*Rikard v. Harrington*,
   2009 U.S. Dist. LEXIS 96959 (E.D. Cal. Oct. 19, 2009).......................... 10

*Southeastern Fed. Power Customers, Inc. v. Geren*,
   514 F.3d 1316 (D.C. Cir. 2008), *cert. denied sub nom., Georgia v. Florida*, 129 S. Ct. 898 (U.S. 2009)............................................................. 1

*Sierra Club v. Chevron U.S.A., Inc.*,
   834 F.2d 1517 (9th Cir. 1987) ................................................................. 13

*Sisseton-Wahpeton Sioux Tribe v. United States*,
   895 F.2d 588 (9th Cir.), *cert. den.*, 498 U.S. 824 (1990) ........................ 12

*S.R. v. United States*,
   555 F. Supp. 2d 1350 (S.D. Fla. 2008) .................................................... 12

*United States v. Lara*,
   541 U.S. 193 (2004) .................................................................................. 3

*UOP v. United States*,
   99 F.3d 344 (9th Cir. 1996) ..................................................................... 12

*Venetie I.R.A. Council v. Alaska*,
   944 F.2d 548 (9th Cir. 1991) ..................................................................... 6

*W. Va. Highlands Conservancy v. Johnson*,
   540 F. Supp. 2d 125 (D.D.C. 2008), *appeal dismissed*, 2009 U.S. App. LEXIS 1822 (D.C. Cir. 2009) ........................................................ 12

*Wallace v. Christensen*,
   802 F.2d 1539 (9th Cir. 1986) ................................................................... 7

*Willis v. United States*,
   719 F.2d 608 (2d Cir. 1983).................................................................... 13

### Statutes

25 U.S.C. § 465..........................................................................................2,3

25 U.S.C. § 479 ............................................................................................3

28 U.S.C. § 1292(b) ..........................................................................2,9,11,12,13

28 U.S.C. § 2401(a) ................................................................................. 9,11,12,15

28 U.S.C. § 2401(b) ..........................................................................................10,12

Quiet Title Act, 28 U.S.C. § 2409a ................................................................. 13,14

28 U.S.C. § 2501 ................................................................................................10,11

## **Regulations**

25 C.F.R. § 83.7(c) ......................................................................................................6

25 C.F.R. § 151.2(f) ....................................................................................................7

## **Other**

Federal Rule of Civil Procedure 12(h)(3) .................................................................9

Federal Rule of Civil Procedure 60(b) ..................................................................9,14

Federal Rule of Civil Procedure 62(b) ................................................................11,14

Federal Rule of Civil Procedure 62(c) .................................................................... 11

# I.

## __INTRODUCTION.__

This brief is submitted in response to the Court's December 9, 2009 request for "supplemental briefing by the parties and Proposed Intervenors as to the relevance of the Supreme Court's recent decision in *Carcieri v. Salazar*, 129 S.Ct. 1058 (2009)" to the pending motions to vacate the judgments in these actions.

The stipulated judgments in these actions are simply invalid. In settling litigation, federal officials may not exceed the powers delegated to them by Congress.[1] But that is exactly what has happened here. In the stipulated judgments, Defendant Secretary of the Interior improperly agreed that he would take title to certain specified parcels in Sacramento County in trust for the benefit of the newly-recognized Wilton Miwok Rancheria tribe, and further agreed that plaintiffs could apply to have additional parcels taken into trust at a future time. Stipulation and Order for Entry of Judgment (Dkt. #61), Exhibit 1, ¶¶ 7-10.[2] However, as *Carcieri* makes clear, the Secretary may only take land into trust on behalf of Indian tribes that were "under federal jurisdiction" in June 1934 (or the members or descendants of members of such then-existing tribes). As discussed more fully below, the record in this case demonstrates that the plaintiffs in this action do <u>not</u> meet that requirement. Therefore, the Secretary's agreement to take these parcels into trust on plaintiffs' behalf commits the Secretary to exercising power that Congress has not

---

[1] *Portland GE Co. v. Bonneville Power*, 501 F.3d 1009 (9th Cir. 2007) (overturning settlement agreements that exceeded the authority that Congress delegated to the Bonneville Power Administration), *cert. denied sub nom., Portland GE v. Pub. Power Council*, 128 S. Ct. 2902 (U.S. 2008); *Southeastern Fed. Power Customers, Inc. v. Geren*, 514 F.3d 1316 (D.C. Cir. 2008) (overturning district court's approval of a settlement agreement that exceeded Congress's delegation of authority to the U.S. Army Corp of Engineers), *cert. denied sub nom., Georgia v. Florida*, 129 S. Ct. 898 (U.S. 2009). *See also Local Number 93, Int'l Assn. of Firefighters, etc. v. City of Cleveland*, 478 U.S. 501, 526 (1986) (the parties to a settlement agreement may not agree to take an action inconsistent with a controlling statute).

[2] All references to docket numbers herein refer to the proceedings in *Wilton Miwok Rancheria v. Salazar*, Case No. 07-cv-02681, unless otherwise stated.

granted him.[3]  The Court should therefore vacate these invalid judgments.

The Existing Parties have had several opportunities to submit evidence (if any existed) to try to show that the plaintiffs' did have a tribe under federal jurisdiction in 1934, most notably when the Proposed Intervenors raised this issue in support of their motion to vacate the judgments.  Tellingly, the Existing Parties provided no such evidence.  To the contrary, they have submitted evidence that undercuts any such claim.  Any belated attempt now by the Existing Parties to submit new evidence that might be regarded as supporting their position would not justify preserving the current judgments.  Rather, the submission of any new evidence would only serve to underscore the point already made by the Proposed Intervenors—that this is a substantial issue that warrants full factual development and legal briefing, including discovery by the local governments.

In this brief Proposed Intervenors also offer a method by which further costly, time-consuming proceedings regarding *Carcieri* can be avoided and judicial resources conserved.  If this Court were to certify an interlocutory appeal to the Ninth Circuit under 28 U.S.C. § 1292(b) regarding the question of whether the Court lacked subject matter jurisdiction to enter the stipulated judgments—due to the running of the applicable statute of limitations decades before these suits were filed—both the time and resources of the parties and the judiciary could be focused on a purely legal issue that is potentially dispositive of this case.  Indeed, few cases better meet the standard for an interlocutory appeal under that statute: that the case "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."  With such an appeal pending, further extensive factual proceedings on the *Carcieri* issue can and should be stayed.

///

---

[3] As discussed in earlier briefing, the effect of the Secretary taking land into trust would be to exempt the affected parcels from state and local taxation and regulatory land use authority.  25 U.S.C. § 465; *Cabazon Band of Mission Indians*, 480 U.S. 202 (1987).

**II.**

**UNDER THE SUPREME COURT'S HOLDING IN *CARCIERI V. SALAZAR*, THE SECRETARY OF INTERIOR LACKS THE AUTHORITY TO TAKE LAND INTO TRUST FOR TRIBES NOT "UNDER FEDERAL JURISDICTION" IN JUNE 1934; THE RECORD EVIDENCE IN THIS CASE SHOWS THE WILTON RANCHERIA DID NOT ORGANIZE AS A TRIBE UNTIL 1935 AT THE EARLIEST.**

Congress has "plenary and exclusive" authority over the United States' relations with Indians and Indian tribes. *United States v. Lara*, 541 U.S. 193, 200 (2004). In Section 5 of the Indian Reorganization Act of 1934 ("IRA" or "Act"), codified at 25 U.S.C. § 465, Congress delegated a portion of its power to the Secretary of Interior, authorizing the Secretary to "acquire land and hold it in trust 'for the purpose of providing land for Indians.' Ch. 576, § 5, 48 Stat. 985, 25 U.S.C. § 465." *Carcieri v. Salazar*, 555 U.S. ___, 129 S. Ct. 1058, 1060, 172 L. Ed. 2d 791, 796 (2009).[4]

That delegation is not unlimited, however. "The IRA defines the term 'Indian' to 'include all persons of Indian descent who are members of any recognized Indian tribe *now under Federal jurisdiction*.' § 479." *Id.* (emphasis added). The U.S. Supreme Court in *Carcieri*, held that the word "now" in the phrase "now under federal jurisdiction" refers to the time of the statute's enactment, in June 1934. Consequently, the Court held that 25 U.S.C. "§ 479 limits the Secretary [of Interior]'s authority to taking land into trust for the purpose of providing land to members of a <u>tribe</u> *that was under federal jurisdiction when the IRA was enacted in June 1934*." 129 S. Ct. at 1061 (italics and underline added). To the extent the Secretary proposes to take land into trust on behalf of members of a tribe that was *not* under federal jurisdiction in June 1934, the Secretary exceeds his delegated authority, and usurps power that may properly only be exercised by Congress.

---

[4] In a few cases, Congress has enacted specific legislation authorizing trust applications on behalf of certain designated tribes outside of the IRA statutory framework. *See, e.g., City of Roseville v. Norton*, 348 F.3d 1020 (D.C. Cir. 2003) (interpreting the Auburn Indian Restoration Act (AIRA), 25 U.S.C.S. §§ 1300l-1300l-7). The Wilton Miwok Rancheria has not had special legislation enacted on its behalf.

1    All of the record evidence in this case—much of it authored by the federal

2    government, and all of it submitted by the Existing Parties—establishes that plaintiffs are

3    not members (or descendants of members) of a "recognized Indian tribe" that was "under

4    federal jurisdiction" in June 1934.   In fact, the record evidence in these cases uniformly

5    demonstrates that the Wilton Rancheria did not formally organize as a tribe until late

6    1935 or early 1936—a year or more after the critical date as identified by the Supreme

7    Court in *Carcieri*.   *See, e.g.,* Complaint, *Wilton Miwok Rancheria v. Kempthorne*, Case

8    No. 07-CV-02681-JF (N.D. Cal.) ("Wilton Complaint"), Exhibit J; Declaration of Little

9    Fawn Boland ("Boland Decl.") (Dkt. #83), ¶ 8 and Exhibit B.

10   For example, in September 2004, Dale Risling, Sr., Superintendent of the Bureau

11   of Indian Affairs, Central California Agency, wrote a letter—attached to the Wilton

12   Miwok's Complaint and to the Declaration of Little Fawn Boland—expressly stating:

13   > "The recognition of this band of Me-wuk Indians, as a tribe took place when

14   > they were provided the opportunity to vote as a tribe whether to accept or
     > reject the Indian Reorganization Act (IRA) of 1934, as the Statute with

15   > which to formally organize the tribe.  *Pursuant to Section 16 of the IRA,*
     > *the tribe did on November 6, 1935, ratify a Constitution and By-laws which*

16   > *effectively formally organized this tribe.*"

17   *Wilton Complaint*, Exhibit J (Dkt. #1-3), p. 9 (emphasis added); Boland Decl., Exhibit Q

18   (Dkt. #83-17), p. 2.  Mr. Risling's successor as Superintendent of the Bureau of Indian

19   Affairs, Central California Agency, made this same point in a letter dated June 14, 2006:

20   > "Federal recognition was extended to the Me-Wuk Indian Community of the

21   > Wilton Rancheria when the adult Indians were provided the opportunity to
     > vote as a tribe at a special election to accept or reject the terms of the [IRA].

22   > On June 15, 1935, the adult voters of the Wilton Rancheria voted to accept

23   > the provisions of the IRA.  Pursuant to section 16 of the IRA, the tribe
     > ratified a constitution and bylaws on *December 7, 1935*, and the Secretary of

24   > the Interior approved the constitution on *January 15, 1936*, which
     > effectively formally organized the tribe."

25

26   *Wilton Complaint*, Exhibit J (Dkt. #1-3), p. 11 (emphasis added); Boland Decl., Exhibit R

27   (Dkt. #83-18), p. 2.

28   Nor have the federal defendants contradicted these two letters in this litigation.

---

SUPPLEMENTAL *CARCIERI* BRIEF; CERTIFICATION REQUEST   CASE NOS. C-07-02681-JF-PVT & C-07-05706-JF
SACRAMENTO COUNTY & CITY OF ELK GROVE                                                   Page 4

Consistent with the foregoing, in the Case Management Statement submitted in the *Wilton Miwok* case (07-cv-02681) the federal defendants took the position that "[t]he Wilton Miwok Rancheria was *created* and defined by the constitution and bylaws adopted by the residents of the Rancheria pursuant to Section 16 of the [IRA][,]" which, again, occurred in 1935-36.  (Emphasis added.)

Even more revealing is the fact that, when *Carcieri* was raised by Proposed Intervenors' motion to vacate, the government's response was to submit extensive documentation *further confirming* that the individual Indians on the Wilton Rancheria did not organize themselves as a tribe until 1935 or 1936.  *See, e.g.,* Defendants' Request for Judicial Notice, Exhibit 1 (Dkt. #74-1), p. 15 (Indians on the Wilton Rancheria held a vote to organize as a tribe on June 15, 1935) and p. 26 (noting that tribal constitution was approved by the Secretary in 1936).  Again, the Court may take judicial notice that 1935 and 1936 come *after* June 1934.  Thus, to the extent the government's evidence has any bearing on the question of whether the tribe was "under federal jurisdiction" a year earlier, in June 1934, it cuts *against* the plaintiffs in this case.  Recognition as a tribe in 1935 is close, but it is not good enough in light of *Carcieri*.  The Me-Wuk Community also submitted considerable evidence that the Wilton Miwok were organized as a tribe, and recognized as such by the federal government, in 1935.  Again, not good enough.[5]

There is *no* record evidence that the Wilton Miwok were organized as a tribe— federally-recognized or otherwise—before 1935.  Consequently, under the plain holding of *Carcieri* they are not entitled to have the Secretary take land into trust on their behalf.

In their opposition briefs, the plaintiffs sought to avoid this conclusion by pointing to the fact that the United States purchased land for certain "homeless Indians" or "landless Indians" in California in 1927.  *See, e.g.,* [Wilton Miwok Rancheria's] Memorandum In Opposition To Motion To Re-Open & Vacate Judgment And To Dismiss

---

[5] Even the Me-Wuk Indian Community's complaint alleges only that "[t]he Tribe was formally recognized as an Indian Tribe by the United States from at least 1936 until 1964...." Complaint, *Me-Wuk Indian Cmty.*, Case No. 07-cv-05706 (Dkt. #1), ¶ 5.

(Dkt. #77), p. 8; Kazhe Decl., Exhibit A (Dkt. #80-1); Boland Decl. (Dkt. #83), ¶ 2.  From this fact—that the United States bought some land and allowed a small number of individual Indians to live on it—the plaintiffs attempt to establish that there was a recognized *tribe* on the Wilton Rancheria prior to June 1934.  That is, however, a leap too far.  The record evidence—submitted by the plaintiffs themselves—is to the contrary.[6]

Status as a "tribe" requires something more than just an assorted group of Indians living on federally-purchased land.  The concept of a "tribe" requires evidence of a sovereign entity, exercising governmental authority over its members—the formation of "bodies politic to govern domestic relations, to punish wrongdoers, and otherwise to provide for the general welfare . . . ."  *Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 559 (9th Cir. 1991).  *See also* 25 C.F.R. § 83.7(c) (to be recognized as a "tribe" under the Secretary's regulations, the petitioner must demonstrate that it has "has maintained political influence or authority over its members as an autonomous entity from historical times until the present.").  "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17 (1831)).  As the Ninth Circuit has held, "To allow any group of persons to 'bootstrap' themselves into formal 'tribal' status— simply because they are all members of a larger aboriginal ethnic body would be to ignore the concept of 'tribe' as a distinct sovereignty set apart by historical and ethnological boundaries."  *Price v. Hawaii*, 764 F.2d 623, 627 (9th Cir. 1985), *cert. denied*, 475 U.S. 1055 (1986).  It is just such a "bootstrap" that plaintiffs are attempting.

The record in these cases, however, undermines plaintiffs' suggestion that a "tribe" existed prior to 1935/1936, and as the Supreme Court recognized in *Carcieri,* the IRA only provides authority for the Secretary to take land into trust for Indians who were

---

[6] Notably, when the federal defendants answered the complaint in the *Wilton Miwok Rancheria* case (07-cv-02681) they *expressly* denied that the Wilton Rancheria lands were taken into trust on behalf of the plaintiffs.  Defendants' Answer [to *Wilton Complaint*] (Dkt. #15), ¶ 13.

members of <u>tribes</u> under federal jurisdiction in June 1934.  Of significance are the express admissions of the federal government.  Exhibit B to the Boland Declaration (Dkt. #83-2) consists of a "August 15, 1934 letter ("Lipps Letter') from O.H. Lipps, then Superintendent of the Sacramento Indian Agency ("Superintendent Lipps"), to the Commissioner of Indian Affairs, listing the various rancherias under the Agency's auspices as of that date."  Boland Decl. (Dkt. #83), ¶ 3.  That letter specifically states that as of August 1934 (two months *after* the passage of the IRA), there were only two groups "under this jurisdiction who have organized tribal or group councils": the Tule River and Fort Bidwell Indians.  Boland Decl., Exhibit B (Dkt. #83-2), p. 2.  In other words, <u>not</u> the residents of the Wilton Rancheria.  Superintendent Lipps continued, "There is enclosed herewith, in triplicate, a list of the various rancherias under this Agency, given name of each, county in which located, size of tract and population.  [¶]  *None of these groups have any form of tribal government or community organization, each member acting for himself.*"  *Id.* (emphasis added).  <u>The Wilton Rancheria is included on this second list</u>.

The lack of governmental authority is fatal to plaintiffs' claim to have been a "tribe" under federal jurisdiction in and before June 1934.  As the evidence in this case plainly and without exception demonstrates, the Wilton Miwok did not become a "tribe"—a sovereign entity exercising governmental powers over its members—until 1935 at the earliest.  As such, it could not have been a tribe "under federal jurisdiction" in June 1934.  Under the plain holding of *Carcieri*, the Secretary lacks the authority he is seeking to exercise in the stipulated judgments to take land into trust for plaintiffs under the IRA.[7]

---

[7] The federal government's belated claim that plaintiffs are entitled to have land taken into trust on their behalf as "Indians residing on one reservation" before June 1934 is undermined by the contemporaneous acknowledgment of federal officials that there was no entity exercising tribal governmental authority on the Wilton Rancheria in 1934.  The Secretary's regulations governing *taking land into trust under Indian Reorganization Act*—by which the Secretary is bound while they are in force, *see Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986)—expressly define "Indian reservation" to mean "that area of land over which the tribe is recognized by the United States as *having governmental jurisdiction* . . . ." 25 C.F.R. § 151.2(f) (emphasis added).  The Wilton Rancheria would not have met this definition until at least 1935, when the Wilton Miwok organized themselves as a tribe and adopted a constitution and bylaws. The government's position implicitly rejects the Secretary's regulation.

## III.

### ANY ATTEMPT NOW BY THE EXISTING PARTIES TO SUBMIT ADDITIONAL EVIDENCE ONLY SUPPORTS THE PROPRIETY OF VACATING THE JUDGMENT TO ALLOW FURTHER PROCEEDINGS.

In their opposition to the motion to vacate, in apparent reliance on language in the concurrence and dissents in *Carcieri*,[8] the Wilton Miwok baldly asserted—without any supporting record evidence—that "[n]umerous other facts exist confirming the Tribe was under federal jurisdiction in 1934 including but not limited to signatories of un-ratified treaties, federally prepared census rolls, federal correspondence with the Tribe, use of federal funds for the Tribe's benefit, and the Bureau of Indian Affairs asserting jurisdiction over tribal members."   [Wilton Miwok Rancheria's] Memorandum In Opposition To Motion To Re-Open & Vacate Judgment And To Dismiss (Dkt. #77), p. 8. The Proposed Intervenors noted the lack of evidence to support this assertion in their Reply brief.  It is therefore possible that one or more of the Existing Parties may now seek to introduce additional evidence in an attempt to bolster their position.  Doing so would only *support* the request of the Proposed Intervenors that the judgment be vacated.

Again, the local governments face real prejudice to their interests due to the Existing Parties' decision to conduct this case without the local governments' involvement or to notify the local governments of the suits' existence.  It would therefore be a further grave injustice to allow the Existing Parties to protect their unsupported, ill-gotten judgment by submitting entirely new evidence that the local governments will have had

---

[8] The concurrence and dissents in *Carcieri* suggest that the phrase "under federal jurisdiction" may mean more than formal federal recognition, but those opinions offer little substantive guidance and are plainly not binding precedent.  Moreover, none of these examples is applicable in the instant matter. For example, there is no evidence of a federal treaty with Plaintiffs or of enrollment with the Indian Office.  Indeed, there is no record evidence establishing any federal superintendence over the Wilton Rancheria in 1934.  Finally, even the concurring and dissenting opinions do not change the fact that the evidence is to the effect that there was simply no "tribe" in existence in 1934, whatever relationship the individual residents of the Wilton Rancheria might have had with the federal government.  Federal jurisdiction over a <u>tribe</u> is the *sine qua non* of the *Carcieri* decision.

no chance to respond to, and to prevent Proposed Intervenors from adequately contesting this issue. Any new evidence would only establish a contested issue of fact that should be resolved on a fully-briefed motion to the court following an opportunity to conduct proper discovery. To uphold the judgment without permitting a vigorous contest on the merits of *Carcieri* would reward the Existing Parties' decision to cut the local governments out of this litigation, and unfairly prejudice the local governments' interests.

**IV.**

**REQUEST THAT THE COURT CERTIFY THE JURISDICTIONAL/ STATUTE OF LIMITATION ISSUE TO THE NINTH CIRCUIT UNDER 28 U.S.C. § 1292(b) & STAY IMPLEMENTATION OF THE JUDGMENTS INSOFAR AS THEY AUTHORIZE THE SECRETARY TO TAKE LAND INTO TRUST FOR PLAINTIFFS.**

Further proceedings in this action can be avoided, however, and judicial and party resources conserved, by certification of the statute of limitations issue to the Ninth Circuit under 28 U.S.C. § 1292(b).

The Proposed Intervenors have contended throughout these proceedings that the judgments in these actions were granted based on claims that are barred by the statute of limitations in 28 U.S.C. § 2401(a), which is not subject to waiver by the federal defendants, and which deprives this court of subject matter jurisdiction over the action. Consequently, the Court has a *non-discretionary duty* to vacate the judgment under Rule 60(b)(4), and to dismiss these actions with prejudice under Rule 12(h)(3).[9]

In opposing the Proposed Intervenor's motion to vacate the judgment and dismiss the action, two of the three Existing Parties—including, conspicuously, the federal government—made no effort whatsoever to dispute the fact that § 2401(a) is jurisdictional and not subject to waiver. Indeed, neither the federal defendants nor the Me-Wuk Community even <u>cited</u> the primary cases relied upon by the County and City: *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S. Ct. 750 (2008) ("*John R. Sand*")

---

[9] This issue was extensively briefed by the Proposed Intervenors in their moving papers and in their reply papers. That briefing is incorporated herein by this reference.

(holding that 28 U.S.C. § 2501—which has virtually identical language to the statute of limitations applicable here, 28 U.S.C. § 2401(a), is jurisdictional and cannot be waived), and *Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008), *modified & reh'g en banc den.*, 567 F.3d 1030 (9th Cir. 2009) (holding § 2401(b) is jurisdictional and cannot be waived, and recognizing that *John R. Sand* may compel the same conclusion with respect to § 2401(a)).  The Wilton Miwok made only a cursory effort to address this issue, relying on an opinion that pre-dated *John R. Sand* and was effectively overruled by it, *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997).

The Ninth Circuit has held that a district court is not bound by a circuit opinion that is inconsistent by the reasoning of an intervening Supreme Court opinion.  *Phelps v. Alameida*, 569 F.3d 1120, 1134 (9th Cir. 2009); *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002).  *See also LG Elecs., Inc. v. Hitachi Am. Ltd.*, 2009 U.S. Dist. LEXIS 20457 (N.D. Cal. Mar. 13, 2009) (declining to follow Federal Circuit precedent in a patent case because it was irreconcilable with a subsequently-decided Supreme Court case); *Okray v. Dennis (In re Okray)*, 2009 U.S. Dist. LEXIS 69853 (D. Alaska Aug. 7, 2009) (declining to follow Ninth Circuit precedent as inconsistent with subsequent Supreme Court case law); *Rikard v. Harrington*, 2009 U.S. Dist. LEXIS 96959 (E.D. Cal. Oct. 19, 2009) (same).

Nevertheless, the Court suggested at oral argument that the Ninth Circuit, and not the district court, should declare *Cedars-Sinai* overruled.  Consistent with those statements, the Court's December 9, 2009, order indicated that "[a]fter reviewing the moving papers and considering oral argument from all of the parties, the Court is not inclined to dismiss the actions for lack of subject matter jurisdiction." (pp. 1-2.)

The continuing vitality of *Cedars-Sinai* is a pure question of law that is potentially dispositive of all issues in this case.  If, as Proposed Intervenors have contended, *John R. Sand* overrules *Cedars-Sinai*, then vacation of the judgments and dismissal of these actions with prejudice is mandatory.  Further factual and legal development of the *Carcieri* and "restored lands" issues would become moot.  As such, this issue presents an

ideal candidate for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

The County and City therefore ask that this Court (1) deny the motion to dismiss for lack of subject matter jurisdiction and permit them to pursue an interlocutory appeal of that denial pursuant to 28 U.S.C. § 1292(b); (2) stay further proceedings on the *Carcieri* issue pending resolution of the interlocutory appeal, and (3) either stay further execution of the judgments under FRCP 62(b) or enjoin the United States from taking land into trust on plaintiffs' behalf until the appeal is resolved, pursuant to FRCP 62(c).[10]

## A.   The Jurisdictional Issue Presents An Ideal Candidate For An Interlocutory Appeal Under 28 U.S.C. § 1292(b).

28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Few cases better meet the standard for a discretionary interlocutory appeal found in 28 U.S.C. § 1292(b).  There can be little question that the case "involves a controlling question of law[.]"  A jurisdictional statute of limitations is "absolute" and requires dismissal of any action brought after it runs.  *John R. Sand*, 128 S. Ct. 753-54.

Nor can there be any question that—at the very least—this is an issue "as to which there is substantial ground for difference of opinion" in light of the following facts:

- Several federal courts have already interpreted *John R. Sand*'s holding regarding § 2501 as compelling the conclusion that § 2401(a) is also jurisdictional and non-waivable, given the nearly identical language and

---

[10] Obviously we ask that the Court grant intervention at least for the purpose of participating in such an appeal.

purposes of the two statutes.[11]

- The Ninth Circuit itself has already *twice* signaled its doubts as to the continuing vitality of *Cedars-Sinai*.[12]

- The Ninth Circuit in *Marley* rejected one recent case—holding § 2401(b) is not jurisdictional—and returned to earlier circuit precedent holding it was.

- Prior to *Cedars-Sinai*, the Ninth Circuit had repeatedly held that § 2401(a) is jurisdictional and non-waivable, just like the facts in *Marley*.[13]

- The federal defendants and the Me-Wuk Community made *no* effort to address *John R. Sand* or *Marley*; the Wilton Miwok did so only in cursory terms, relying on *Cedars-Sinai* without making any effort on the merits to defend the continuing vitality of that case's reasoning.

And finally, there can be no question "that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." Again, if this issue is resolved in the local governments' favor, that will be the end of the case.

Consistent with the foregoing, statute of limitations issues are a common source of interlocutory appeals under § 1292(b). For example, in *S.R. v. United States*, 555 F. Supp. 2d 1350 (S.D. Fla. 2008), the district court agreed that the question of whether § 2401(b) is subject to equitable tolling or whether it is jurisdictional and therefore not subject to waiver—*an issue virtually identical to that posed here*—meets the standards for interlocutory appeal under § 1292(b). *See also Cadwalder v. United States*, 45 F.3d 297 (9th Cir. 1995) (deciding interlocutory appeal regarding application of statute of

---

[11] *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 142 (D.D.C. 2008), *appeal dismissed*, 2009 U.S. App. LEXIS 1822 (D.C. Cir. 2009); *Georgalis v. U.S.P.T.O.*, 296 Fed. Appx. 14 (Fed. Cir. 2008).

[12] *Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008), *modified & reh'g en banc denied*, 567 F.3d 1030 (9th Cir. 2009); *Aloe Vera of Am., Inc. v. United States*, 574 F.3d 1176, 1180-81 (9th Cir.), *amended by* 580 F.3d 867 (9th Cir. 2009).

[13] *See, e.g., UOP v. United States*, 99 F.3d 344, 347 (9th Cir. 1996); *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 592 (9th Cir.), *cert. den.*, 498 U.S. 824 (1990); *Big Spring v. United States*, 767 F.2d 614, 616 (9th Cir. 1985), *cert. den.*, 476 U.S. 1181 (1986); *Loring v. United States*, 610 F.2d 649, 650 (9th Cir. 1979).

limitations in § 2401(b); *Free v. United States*, 885 F.2d 840 (11th Cir. 1989) (same); *Willis v. United States*, 719 F.2d 608 (2d Cir. 1983) (same); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir. 1987) (deciding statute of limitations issue in interlocutory appeal);   *Rauch v. Rauch*, 446 F. Supp. 2d 432, 435 (D.S.C. 2006) (certifying for interlocutory appeal the question of whether a one-year statute of limitations is jurisdictional, or whether it "may be waived in favor of equity."); *Brewton v. City of Harvey*, 319 F. Supp. 2d 890 (N.D. Ill. 2004) (certifying for interlocutory appeal question of whether statute of limitations is properly subject to equitable tolling); *Equity Hernando Woods, Inc. v. United States*, 910 F. Supp. 574 (M.D. Fla. 1995) (certifying decision regarding statute of limitations to 11th Circuit for interlocutory appeal); *Pruet Production Co. v. Ayles*, 573 F. Supp. 895 (S.D. Miss. 1983) (certifying question of whether statute of limitations under ADEA is jurisdictional for interlocutory appeal).

**B.     Further Proceedings On *Carcieri* & The Motion To Vacate Should Be Stayed Pending Resolution Of the Interlocutory Appeal.**

Section 1292(b) authorizes this court to stay further proceedings pending an interlocutory appeal.  That would be appropriate here.  If the appeal were resolved in the local governments' favor, it would avoid the need for protracted discovery and briefing on the *Carcieri* issue.  Staying proceedings would conserve judicial resources and potentially avoid unnecessary expenditure of time and resources by the parties.

**C.     The Court Should Stay The Acceptance Of Land Into Trust On Plaintiffs' Behalf Pending Resolution Of The Interlocutory Appeal.**

As previously noted by Proposed Intervenors, numerous courts have held that that Quiet Title Act, 28 U.S.C. § 2409a, entirely precludes a plaintiff's suit to the extent it seeks to nullify an Indian trust acquisition.  *See, e.g., Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975).  Thus, further execution of the judgments while an appeal is pending threatens to *severely* prejudice the interests of the local governments.  To date the local governments have declined to seek a stay of the judgments based upon representations by the United States to the Court that "there is no pending application to

place the subject lands in trust on behalf of Plaintiffs and that the governing body of the Tribe will not be reconstituted until 2010."  Order Enlarging Time (Dkt. #71), p. 2:14-15. However, there is currently nothing to prevent the United States from accepting land into trust while an interlocutory appeal, or even further proceedings on the *Carcieri* issue, are pending.   Therefore a stay is appropriate (though if the United States is willing to affirmatively represent to the Court that it will voluntarily decline to take the parcels into trust pending the appeal, consistent with the Department standard practice under the previous administration,[14] that representation will be sufficient).

The Court has not yet ruled on the Proposed Intervenors' motion to vacate under Rule 60.  Rule 62(b) authorizes this Court to stay execution of a judgment pending the resolution of such a motion.  Thus, this Court could simply deny the motion to dismiss on the jurisdictional ground and stay execution of the judgments pending resolution of an interlocutory appeal.  Alternatively, the Court could vacate the judgments under Rule 60(b)(6)—in the interests of justice—and enter amended judgments.

The purpose of this request is not to preclude the plaintiffs from conducting necessary proceedings to determine tribal membership and leadership, so that in the event the plaintiffs were to prevail they would be prepared to move forward immediately. The only purpose of this request is to prevent the acceptance of land into trust, thereby preventing further action by the local governments on the merits of their position.[15]

---

[14] *See County of Amador v. United States Dep't of Interior*, 2007 U.S. Dist. LEXIS 95715, *21 (E.D. Cal. Dec 13, 2007) ("[T]he general policy of the Interior Department is to self-stay acquisition of tribal land into trust until challenges to acquisition decisions have been reviewed by courts." (quoting Federal Defs.' Reply at 7)).

[15] This does not constitute an admission that plaintiffs' recognition as a tribe pursuant to the judgment is lawful, but is merely a recognition that issue can be dealt with in future proceedings, *see Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997) (overturning dismissal of a suit challenging the Delaware Tribe's recognition by the Secretary for lack of indispensable tribal party (the Delawares), because tribal immunity "is available only when a group of Indians has been recognized as a sovereign by Congress, the Executive Branch, or the courts, *and it is thus inappropriately invoked when tribal sovereignty is the ultimate issue. Cf. Native Village of Tyonek v. Puckett*, 957 F.2d 631, 635 (9th Cir. 1992)."), *as modified by*, 1997 U.S. App. LEXIS 26575 (D.C. Cir. 1997), whereas the same may not be true with respect to trust lands in light of the Quiet Title Act.

# V.

## **CONCLUSION.**

Based upon the record in the cases, the Secretary of the Interior exceeded the authority delegated to him by Congress in agreeing to take land into trust on behalf of the plaintiffs. There is currently no evidence to the contrary, but to the extent the Existing Parties try to present such evidence now, that fact merely confirms the need for the judgment in these actions to be vacated so that sufficient discovery and briefing can be conducted to present this issue to the Court for full resolution on the merits. The Existing Parties ought not to be permitted to defend a judgment that—based on the record in these actions—exceeds the Secretary's authority by submitting a modicum of evidence that Proposed Intervenors cannot contest and preventing full investigation of the plaintiffs' status in June 1934 using the discovery methods sanctioned by the Federal Rules.

Alternatively, it would be appropriate for this Court to stay further proceedings in this Court on *Carcieri* and instead permit an interlocutory appeal on the issue of whether the statute of limitations at issue in this case, 28 U.S.C. § 2401(a), bars plaintiffs' claims and compels vacation of the judgments and dismissal of these actions with prejudice. It would also be appropriate for the Court to block the execution of the judgments—only insofar as they authorize the Secretary to take land into trust on Plaintiffs' behalf—so that the interests of Proposed Intervenors are not unduly prejudiced.

Respectfully submitted,

Dated: January 13, 2010

NIELSEN, MERKSAMER, PARRINELLO,
MUELLER & NAYLOR, LLP
By:/s/ Christopher E. Skinnell
Christopher E. Skinnell
*Attorneys for Intervenor-Defendant*
CITY OF ELK GROVE, CALIFORNIA

Dated: January 13, 2010

OFFICE OF SACRAMENTO COUNTY COUNSEL

By:
Michele Bach
*Attorneys for Intervenor-Defendant*
COUNTY OF SACRAMENTO, CALIFORNIA