UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILTON MIWOK RANCHERIA, a formerly federally recognized Indian Tribe, ITS MEMBERS and DOROTHY ANDREWS,<br><br>    Plaintiffs,<br>  v.<br><br>KENNETH L. SALAZAR, et al.,<br><br>    Defendants. | Case No. C-07-02681-JF-PVT<br>Case No. C-07-05706-JF<br><br>ORDER[1] DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE |
| Me-Wuk INDIAN COMMUNITY OF THE WILTON RANCHERIA,<br><br>    Plaintiffs,<br>  v.<br><br>KENNETH L. SALAZAR, et al.,<br><br>    Defendants. | |

    The Historic Families of Wilton Rancheria ("Proposed Intervenors") move to intervene in the above-entitled actions. For the reasons discussed below, the motion will be denied without prejudice.

---

[1] This disposition is not designated for publication in the official reports.

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

# I. FACTUAL AND PROCEDURAL BACKGROUND

This case has an extensive factual and procedural history. The following background information is relevant to consideration of this motion.

### A. Commencement of Litigation

On February 28, 2007, the Me-Wuk Indian Community of the Wilton Rancheria filed suit against various federal officials in the United States District Court for the District of Columbia, alleging violations of the California Rancheria Act ("Rancheria Act" or "the Act"), Pub. L. 85-671, 72 Stat. 619, *amended by* Pub. L. 88-419, 78 Stat. 390. *See Me-Wuk Indian Community of the Wilton Rancheria v. Salazar et al.*, No. 07-412 (D.D.C). The Me-Wuk Plaintiffs sought federal recognition of the Wilton Rancheria and requested that certain land be taken into trust by the federal government on the tribe's behalf.

Less than two months later, on May 21, 2007, the Wilton Miwok Plaintiffs, who also claim to represent the Wilton Rancheria, filed an action in this Court that was substantially identical to the action pending in the District of Columbia. The Wilton Miwok Plaintiffs also moved to intervene in the Me-Wuk Plaintiffs' action. On October 24, 2007, Judge Lamberth granted the Wilton Miwok Plaintiffs' motion to intervene in the District of Columbia action and transferred that case to this Court. On November 27, 2007, this Court related the two cases.

Both actions subsequently were referred to mediation. Over the next eighteen months, Plaintiffs and the United States (collectively "the Existing Parties") participated in joint negotiations with the goal of reaching a settlement that would resolve both cases. On June 4, 2009, the Existing Parties filed a Stipulation for Entry of Judgment ("Stipulated Judgment"). The Court approved the stipulation on June 5, 2009, and final judgment was entered on July 16, 2009, nunc pro tunc to June 8, 2009. *Me-Wuk Indian Community of the Wilton Rancheria v. Salazar, et al.*, Dkt. Nos. 33, 34; *Wilton Miwok Rancheria et al. v. Salazar, et al.*, Dkt. Nos. 61, 62.

### B. Stipulated Judgment

In the Stipulated Judgment, the United States admits that it failed to comply with the Rancheria Act in terminating the Wilton Rancheria and distributing its assets. It agrees, among

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

other things, to restore federal recognition of the Wilton Rancheria and to accept in trust certain lands formerly belonging to the tribe. Plaintiffs agree, among other things, to release the federal government from liability arising out of violations of the Rancheria Act, to discharge the United States Department of Health and Human Services from any claims arising after the implementation of the Rancheria Act and before the restoration of recognition, and to dismiss their claims with prejudice. The Stipulated Judgment also provides that this Court will retain jurisdiction, upon motion by any party, to determine whether a party has "materially violated" the terms of the judgment. *See* Stipulated Judgment ¶ 14.

The Stipulated Judgment contains a number of specific provisions concerning the process for determining membership in the Wilton Rancheria. Of particular significance to the Proposed Intervenors is Paragraph 6, which states: "The Interim Tribal Council shall develop the Tribal Constitution that shall provide for membership criteria based on the Tribe's historical documentation, which may include the Census documents of 1933/1935 and 1941." *Id.* ¶ 6.

**C. Motions to Intervene**

On August 4, 2009, less than a month after the execution of the Stipulated Judgment, the County of Sacramento, California and the City of Elk Grove, California ("County and City") moved to intervene in the litigation. The County and City asserted an interest in the taxation and regulation of the land covered by the settlement. On February 23, 2010, following resolution of a jurisdictional challenge,[2] the Court granted the motion.

---

[2] The County and City argued that this Court lacked subject matter jurisdiction over the Plaintiffs' claims because the applicable statute of limitations had lapsed. *See* 28 U.S.C. § 2401(a) ("...every civil action commenced against the United States shall be barred unless the complaint is filed within six years..."). They contended that the Supreme Court's holding in *John R. Sand & Gravel Co. v. United States* that 28 U.S.C. § 2501, a provision similar to Section 2401(a), was "jurisdictional" and therefore could not be waived by the government, applied to bar the Plaintiffs' claims in this case. 552 U.S. 130, 132 (2008). This Court noted that the Ninth Circuit previously had held that Section 2401(a) was subject to waiver, *see Cedars-Sinai v. Shalala,* 125 F.3d 765 (9th Cir. 1997), and that the circuit court had yet to examine the continuing vitality of *Cedars-Sinai* in light of *John R. Sand.* Noting that all three district courts within the circuit to consider the issue had declined to apply *John R. Sand* to Section 2401(a),

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

3

The Existing Parties and the County and City then entered into negotiations for the purpose of modifying the Stipulated Judgment. On June 10, 2011, as the negotiations neared their successful completion,[3] the Proposed Intervenors filed the instant motion. Proposed Intervenors represent individuals formerly associated with the Plaintiffs who claim that they were "systematically excluded from the organization process" following approval of the Stipulated Judgment. Motion for Intervention ("Mot. for Inter.") at 6. They seek to protect their interest in "potential membership" in the Wilton Rancheria. *Id.* at 4. According to their moving papers, the census documents referenced in Paragraph 6 of the Stipulated Judgment "form the primary basis from which the rights to membership of the Historic Families would be derived." *Id*. They allege that the Interim Tribal Council, which has governed the Wilton Rancheria since its restoration, elected not to base membership determinations on the Census documents, the effect of which was to exclude the Proposed Intervenors from membership in the tribe. They argue that their exclusion violates the Stipulated Judgment, because "the interpretation of the word 'may' as permissive...is contrary to the purpose of that language." *Id.* at 5.

## II. DISCUSSION

**A.      Motions to Intervene Under Fed. R. Civ. P. 24**

Fed. R. Civ. P. 24 establishes two distinct grounds upon which a party may seek to intervene in pending litigation: intervention as of right under subsection (a)(2) and permissive intervention under subsection (b). *See* Fed. R. Civ. P. 24(a)-(b). In the Ninth Circuit, an applicant

---

this Court held that "for present purposes, the bar of § 2401(a) remains procedural rather than jurisdictional." Order, Feb. 23, 2010 at 9. Because the United States had waived § 2401(a) as a defense to Plaintiff's action, the Court concluded that it had jurisdiction to enter the Stipulated Judgment. *Id.* The Ninth Circuit thereafter declined to consider an interlocutory appeal. *See* Order, *County of Sacramento, California, et al. v. Wilton Miwok Rancheria, et al.*, No. 10-80062 (9th Cir. May 20, 2010).

[3] On June 23, 2011, the County and City filed a Notice of Settlement and Withdrawal of Motions to Vacate Judgments.

Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

4

for intervention as of right must demonstrate that (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Alternatively, a court may allow permissive intervention if there is an independent ground for jurisdiction, the motion to intervene is timely, and a common question of law or fact exists. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). Proposed Intervenors move only for intervention as of right under Fed. R. Civ. P. 24(a)(2).[4] However, the Court concludes that their motion lacks merit under either standard.

**1. Intervention as of Right**

      **a. Significant Protectable Interest**

A party seeking to intervene as of right must demonstrate that its interest in the litigation is "protected by law" and that "there is a relationship between the legally protected interest and the existing parties' claims." *Alisal Water Corp.*, 370 F.3d at 919. The "significant protectable interest" test is not a bright-line rule. *Id.* A party seeking to intervene need not show that the interest asserted is protected by the statute at the core of the lawsuit, only that it is protectable under any statute. *Sierra Club v. EPA,* 995 F.2d 1478, 1484 (9th Cir.1993).

Proposed Intervenors' asserted interest in "potential membership" in the Wilton Rancheria is not protected by federal statute or case law. Indeed, as the Supreme Court has noted, "a tribe's

---

[4] Proposed Intervenors also seek "intervention" under Fed. R. Civ. P. 19(a)(1)(B), which covers motions for joinder. Only a party may make a Rule 19 motion, although a court may join a party for good cause *sua sponte*. *Arrow v. Gambler's Supply, Inc.,* 55 F.3d 407, 409 (8th Cir. 1995), citing Fed. R. Civ. P. 21 (describing the procedure for joinder or dismissal of parties) and *Thompson v. Boggs,* 33 F.3d 847, 858 n.10 (7th Cir.1994) (noting the lack of any precedent granting a non-party's motion for joinder). The Court may treat a non-party's motion improperly brought under Rule 19 as a motion to intervene under Rule 24. *Gambler's Supply, Inc.*, 55 F.3d at 409.

right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 71 n.32 (1978) (finding no federal jurisdiction under the Indian Civil Rights Act to entertain a constitutional challenge to a tribal ordinance denying membership to certain individuals who married outside the tribe). Even if tribal membership were a legally protectable interest, *potential* membership is probably "too speculative to warrant intervention." *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993). Moreover, questions of tribal membership bear little relationship to the Existing Parties' claims. The present litigation concerns alleged violations of the California Rancheria Act and the restoration of federally protected status to the Wilton Rancheria, not the intricacies of the tribe's internal governance. The interest Proposed Intervenors seek to protect is tangential, at best, to the subject of the litigation.

Finally, the Stipulated Judgment itself clarifies the parties' intent that tribal membership issues be handled internally. *See* Stipulated Judgment at 4 ("The Tribe shall, consistent with federal law, have the right to determine its own membership and otherwise govern its internal and external affairs as a tribal entity."). This Court is loath to become embroiled in a dispute over tribal membership qualifications in the face of clearly established law and the explicit intent of the parties at the time of settlement.

### b. Impairment in the Absence of Intervention

Proposed Intervenors argue they will be "silenced" without intervention because "draft constitutions reject their right to apply for membership based on the...Census documents." Mot. for Inter. at 5. They do not dispute, however, that internal tribal procedures are available for addressing such concerns and that they still may apply for membership under the soon-to-be-developed Tribal Constitution. *See Alisal*, 370 F.3d at 921 (availability of alternative forums for vindicating a party's rights is relevant in considering whether an applicant's interests will be impaired in the absence of intervention). The Bureau of Indian Affairs ("BIA") also maintains a Tribal Enrollment procedure to facilitate tribal membership determinations. *See* U.S. Department

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

6

of the Interior, Division of Tribal Government Services *http://www.bia.gov/WhatWeDo/ ServiceOverview/TribalGov/index.htm* (last visited Sept. 19, 2011). While it may be true that Proposed Intervenors have "made attempts to reconcile the issue within the Tribe," it appears that they have not exhausted alternative remedies that are more appropriate than invoking the plenary jurisdiction of the federal courts. Mot. for Inter. at 6.

### c. Timeliness

Courts consider three factors in deciding whether a motion to intervene is timely: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *California Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).

#### *i. Stage of the Proceeding*

The present motion comes nearly two years after the initial entry of judgment and more than four years after the commencement of litigation. Proposed Intervenors point out that their motion was filed before entry of the modified judgment and thus should not be held to the stricter standard to which post-judgment motions to intervene are subjected. *See, e.g.*, *Calvert v. Hawkins*, 109 F.3d 636, 638 (9th Cir. 1997). However, while the modified judgment has not yet been entered formally, it represents the agreement of multiple parties after months of difficult negotiations, and an attempt to intervene after resolution of every significant issue in a lawsuit should be viewed with some skepticism.

#### *ii. Prejudice*

"In evaluating prejudice, courts are concerned when relief from long-standing inequities is delayed." *Alisal Water Corp.*, 370 F.3d at 915 (internal citations omitted). Courts have found prejudice sufficient to deny motions to intervene "where granting intervention might have compromised long-litigated settlement agreements or delicate consent decrees." *Id.*, citing *County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir.1986); *see also Cal. Dep't. of Toxic*

Case No. C-07-02681-JF-PVT
Case No. C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

*Substances Control*, 309 F.3d at 1119 (denying intervention in a long-litigated environmental action because it would, among other things, "unnecessarily prolong the litigation, threaten the parties' settlement, and further delay cleanup and development of the [Landfill]") (alteration in original). In this case, the Existing Parties have negotiated two hard-fought settlement agreements over four years, both of which would almost certainly have to be modified if intervention were allowed. Proposed Intervenors have not identified the legal claims they intend to assert if intervention is granted. It is true that the Stipulated Judgment gives the Court jurisdiction to reinstate the action if any *party* materially violates its terms, but Proposed Intervenors have not shown that the provision was intended to grant them any rights that would permit them to avoid exhaustion of their internal or administrative remedies.

### *iii. Reason for Delay*

"A party seeking to intervene must act as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation." *California Dept. of Toxic Substances Control,* 309 F.3d at 1120 (emphasis in original, internal citations omitted). Proposed Intervenors argue they moved to intervene "promptly following the threat to the interests of the Historic Families." Mot. for Inter. at 6. However, as the Existing Parties point out, Proposed Intervenors long have been aware of the present litigation, which they apparently helped to initiate. *See id.* at 9 ("Linda Blue, [sic] and Sandra Taylor, Historic Family members...were both long time Board members of the Wilton Miwok Rancheria that pursued the current litigation to restore their federal status."). At oral argument, Proposed Intervenors admitted that they support the settlement between the Existing Parties; their concern is only that "the interpretation of the word 'may' as permissive is facilitating [their] exclusion...contrary to the purpose of that language." *Id.* at 5. While Proposed Intervenors may have believed that the word "may" would be interpreted to require the Interim Tribal Council to rely on the census documents to determine tribal membership, the use of "may" rather than "shall" obviously left open the possibility that the council would choose to rely upon other sources. As in *California Dept. of Toxic Substances Control*, while Proposed Intervenors "were not certain that the consent decree would be adverse to

Case No.  C-07-02681-JF-PVT
Case No.  C-07-05706-JF
ORDER DENYING MOTION FOR INTERVENTION WITHOUT PREJUDICE

their interests, they had reason to know that negotiations might produce a settlement decree to their detriment...[They] should have known that the risks of waiting included possible denial of their motions to intervene as untimely." 309 F.3d at 1120.

### *iv. Adequate Representation*

Proposed Intervenors argue that the Kahze Law Group, which represents Plaintiffs, does not adequately represent their interests because the attorneys have drafted a constitution from which Proposed Intervenors are excluded. *See* Mot. for Inter. at 7.  While at least one court has suggested that a complaint over implementation of a court-monitored consent decree could be a ground for intervention, that court's reasoning focused on the fact that the proposed intervenors' concern cut to the very heart of the settlement. *See Hines v. Rapides Parish School Board*, 479 F.2d 762, 765 (5th Cir. 1973) (parents' group could seek intervention to oppose pupil assignments made pursuant to a school desegregation order because the settlement's express "goal of a unitary system had allegedly been frustrated.").  On the other hand, Proposed Intervenors here do not claim that the purpose of the Stipulated Judgment - restoring the Wilton Rancheria to federally protected status - has been frustrated; they simply disagree with post-judgment decisions made by the tribe regarding membership qualifications.  Such "policy" determinations were expressly reserved to the tribe by the Stipulated Judgment, and as such are not "within the purview of the federal courts." *United States v. Perry County Bd. of Education*, 567 F.2d 277, 280 (5th Cir. 1978) (distinguishing *Hines* and denying intervention by a parents' group opposing a decision concerning the location of a new school made by the Board of Education and a bi-racial advisory committee pursuant to a school desegregation order).

**2. Permissive Intervention**

Proposed Intervenors do not meet the threshold requirements for permissive intervention because their claims do not share a common question of law or fact with the main action.  The present actions sought restoration of the Wilton Rancheria to federally protected status, not a determination of which individuals were entitled to tribal membership.  In essence, Proposed Intervenors claim that they are aggrieved third-party beneficiaries of the Stipulated Judgment.  As

discussed above, there are a number of internal and administrative vehicles for addressing their concerns, and they even may be able to maintain an action for breach of contract. However, "the intervention rule is … not intended to allow the creation of whole new lawsuits by the intervenors." *S. Cal. Edison Co.*, 307 F.3d at 803 (internal citations omitted).

### III.  ORDER

Good cause therefor appearing, the motion for intervention is DENIED without prejudice.

**IT IS SO ORDERED.**

DATED: 9/20/2011

 JEREMY FOGEL
 United States District Judge